RON BENDER (SBN 143364)
PHILIP A. GASTEIER (SBN 130043)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; pag@lnbyb.com;
myk@lnbyb.com; kjm@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>RDIO, INC.,<br><br>        Debtor and Debtor in Possession. | ) Case No. 15-31430<br>)<br>) Chapter 11 Case<br>)<br>) **DEBTOR'S EMERGENCY MOTION**<br>) **FOR ENTRY OF AN ORDER**<br>) **AUTHORIZING DEBTOR TO PROVIDE**<br>) **ADEQUATE ASSURANCE OF FUTURE**<br>) **PAYMENT TO UTILITY COMPANIES**<br>) **PURSUANT TO SECTION 366(c) OF THE**<br>) **BANKRUPTCY CODE; MEMORANDUM**<br>) **OF POINTS AND AUTHORITIES**<br>)<br>)<br>) Date: November 18, 2015<br>) Time: 10:00 a.m.<br>) Place: U.S. Bankruptcy Court<br>)          Courtroom 22<br>)          235 Pine St.<br>)          San Francisco, CA 94104<br>) Judge: The Hon. Dennis Montali<br>) |

1

Rdio, Inc., chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), hereby moves, pursuant to 11 U.S.C. § 366 (the "Motion"), for entry of an order, in substantially the same form and substance as the proposed form of order attached hereto as **Exhibit "1"** (the "Order") authorizing the Debtor to provide adequate assurance of future payment to certain utility companies pursuant to Section 366(c) of the Bankruptcy Code. This Motion is supported by the *Declaration of Maikao Grare in Support of Certain First-Day Motions* (the "Grare Declaration") which the Debtor is filing concurrently with this Motion.

As discussed further below and in the Grare Declaration, the Debtor was founded in 2008 as a digital music service. The Debtor's business operations were launched in 2010 after the Debtor secured requisite licenses from the applicable holders of music rights. Since that time, the Debtor has strived to grow into a world wide music service, ultimately culminating today in being in approximately 86 countries. Additional information regarding the Debtor's business operations are set forth in the Debtor's cash collateral and debtor-in-possession financing motion, and below.

The Debtor's headquarters are located at 1550 Bryant Street, San Francisco, CA (Suites 200, 220 and 360) which the Debtor occupies pursuant to a lease agreement with DP 1550 Bryant, LLC (the "Landlord"). The Debtor receives utility services at its headquarters. Pursuant to the Debtor's lease, the Landlord pays for all utilities and janitorial services, and then charges the Debtor for the Debtor's share of the usage of utilities and janitorial services. As such, utility services such as water, electricity, gas, trash disposal, and the like, are not in the name of the Debtor and are not separately metered for the Debtor. The only utility services received by the Debtor which are contracted for directly by the Debtor, are telephone, cable and internet services. Specifically, Comcast provides internet and cable services to the Debtor, and Mosaic Networx provides telephone services to the Debtor (each a "Utility Company", and together, the "Utility Companies").

The service provided by the Utility Companies are crucial to the Debtor's operations, ability to conduct business, ability to preserve assets, and ability to communicate and send/receive information, both internally and externally. Without such services, the Debtor's employees would

be unable to carry out their job responsibilities, and the Debtor would be unable to function as a business entity or as a debtor in possession. Given the importance of the services provided by the Utility Companies to the Debtor's assets/business, it is crucial that the means of providing adequate assurance to the Utility Companies which provide utility services to the Debtor be determined immediately so that there is no interruption in the services provided. An interruption in the services provided would lead to an inability to conduct business, which may result in business disruption.

Attached as Exhibit 3 to the Grare Declaration is a list which sets forth, to the extent possible, on an account-by-account basis, the names and addresses of the Utility Companies that are currently providing utility services to the Debtor, the type of utility services provided by the Utility Company, and the average monthly payment to each Utility Company based on the total amount incurred by NAHC during the past approximately three months.

The Debtor intends to provide adequate "assurance of payment" by providing their respective Utility Companies with cash deposits, as authorized by Section 366(c)(1)(A)(i) of the Bankruptcy Code. For each account that the Debtor has with a Utility Company, the Debtor is proposing to provide each of its respective Utility Companies with cash deposits in an amount equal to the average monthly payment based on the amount incurred on the account during the past three billing cycles.

The total amount of the cash deposits proposed to be paid by the Debtor to its Utility Companies is $4,245.46. Specifically, during the past three billing cycles, Comcast charged the Debtor $354.45 - $354.46 per month. Accordingly, the deposit the Debtor proposes to pay to Comcast is $354.46. During the past three billing cycles, Mosaic Networx charged the Debtor $3,900 per month for telephone services. This amount does not include any taxes or surcharges, and this amount does not include "bandwidth" services which the Debtor does not consider to be a utility service.

In addition to paying the foregoing cash deposits, the Debtor will bring the Utility Company current on all post-petition debts owed to such Utility Companies.

The source of the funds to be used to pay the cash deposits to the Utility Companies will be the cash described in the Debtor's cash collateral motion and motion to approve development

services agreement. The Debtor submits that approval to pay the proposed cash deposits to the Utility Companies will not render the Debtor's bankruptcy estate administratively insolvent.

## ADDITIONAL INFORMATION

This Motion is based upon applicable Bankruptcy Local Rules and 11 U.S.C. § 366, this Motion, the supporting Memorandum of Points and Authorities, the Grare Declaration filed concurrently herewith, the arguments and statements of counsel to be made at the hearing on the Motion, and other admissible evidence properly brought before the Court.

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court (on November 16, 2015), the Debtor will serve a copy of this Motion and all supportive papers (including notice of the hearing) upon the Office of the United States Trustee, all secured creditors in each of the Debtors' cases and their counsel (if known), each of the Debtors' twenty (20) largest unsecured creditors, on those parties who have requested special notice, and on the Utility Companies, via overnight mail.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

4

**WHEREFORE**, the Debtor respectfully requests that this Court hold a hearing on the Motion and issue the Order:

      (a)    granting the Motion;

      (b)    affirming the adequacy of the notice given;

      (c)    authorizing the Debtor to provide adequate "assurance of payment" to the Utility Companies via cash deposits in the amounts set forth in Exhibit 3 to the Grare Declaration filed concurrently herewith;

      (d)    deeming the cash deposits paid by the Debtors to the Utility Companies in the amounts set forth in the Grare Declaration as constituting adequate "assurance of payment" pursuant to Section 366(c) of the Bankruptcy Code;

      (e)    requiring each Utility Company that receives a cash deposit under an order of the Court granting the Motions to return cash deposits in its possession to the Debtors within ten (10) days if, and when, the Utility Company's services are terminated by the Debtors; and

      (f)    granting such other and further relief as the Court deems just and proper.

Dated: November 16, 2015          RDIO, INC.

                      By: _____ */s/ Krikor J. Meshefejian* _____
                            RON BENDER
                            PHILIP A. GASTEIER
                            MONICA Y. KIM
                            KRIKOR J. MESHEFEJIAN
                            LEVENE, NEALE, BENDER, YOO
                                & BRILL L.L.P.
                            Proposed Attorneys for Chapter 11 Debtor
                            and Debtor in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     STATEMENT OF FACTS

**A.     Background Information Regarding The Debtors, Their Businesses, And Reasons For Filing Bankruptcy.** [1]

**D.     Adequate Assurance Of Payment To The Utility Companies.**

The Debtor's headquarters are located at 1550 Bryant Street, San Francisco, CA (Suites 200, 220 and 360) which the Debtor occupies pursuant to a lease agreement with DP 1550 Bryant, LLC (the "Landlord").  The Debtor receives utility services at its headquarters.  Pursuant to the Debtor's lease, the Landlord pays for all utilities and janitorial services, and then charges the Debtor for the Debtor's share of the usage of utilities and janitorial services.  As such, utility services such as water, electricity, gas, trash disposal, and the like, are not in the name of the Debtor and are not separately metered for the Debtor.  The only utility services received by the Debtor which are contracted for directly by the Debtor, are telephone, cable and internet services.  Specifically, Comcast provides internet and cable services to the Debtor, and Mosaic Networx provides telephone services to the Debtor (each a "Utility Company", and together, the "Utility Companies").

The service provided by the Utility Companies are crucial to the Debtor's operations, ability to conduct business, ability to preserve assets, and ability to communicate and send/receive information, both internally and externally. Without such services, the Debtor's employees would be unable to carry out their job responsibilities, and the Debtor would be unable to function as a business entity or as a debtor in possession.  Given the importance of the services provided by the Utility Companies to the Debtor's assets/business, it is crucial that the means of providing adequate assurance to the Utility Companies which provide utility services to the Debtor be determined

---

[1] In order to avoid unnecessary repetition, the Debtor will not repeat the Background Facts herein. The Debtor incorporates by this reference: (1) the Background Facts set forth in the Debtor's emergency motion for an interim order authorizing the use of cash collateral (the "Cash Collateral Motion") (Sections A through C); (2) the entirety of the Grare Declaration filed concurrently herewith; and (3) the entirety of the Declaration of Elliott Peters (the "Peters Declaration") filed in support of the Cash Collateral Motion.  For Utility Companies that do not get served with the Cash Collateral Motion, the Background Facts referenced herein may be reviewed in the Grare Declaration filed concurrently herewith.

immediately so that there is no interruption in the services provided. An interruption in the services provided would lead to an inability to conduct business, which may result in business disruption.

Attached as Exhibit 3 to the Grare Declaration is a list which sets forth, to the extent possible, on an account-by-account basis, the names and addresses of the Utility Companies that are currently providing utility services to the Debtor, the type of utility services provided by the Utility Company, and the average monthly payment to each Utility Company based on the total amount incurred by NAHC during the past approximately three months.

The Debtor intends to provide adequate "assurance of payment" by providing their respective Utility Companies with cash deposits, as authorized by Section 366(c)(1)(A)(i) of the Bankruptcy Code. For each account that the Debtor has with a Utility Company, the Debtor is proposing to provide each of its respective Utility Companies with cash deposits in an amount equal to the average monthly payment based on the amount incurred on the account during the past three billing cycles.

The total amount of the cash deposits proposed to be paid by the Debtor to its Utility Companies is $4,245.46. Specifically, during the past three billing cycles, Comcast charged the Debtor $354.45 - $354.46 per month . Accordingly, the deposit the Debtor proposes to pay to Comcast is $354.46. During the past three billing cycles, Mosaic Networx charged the Debtor $3,900 per month for telephone services. This amount does not include any taxes or surcharges, and this amount does not include "bandwidth" services which the Debtor does not consider to be a utility service.

In addition to paying the foregoing cash deposits, the Debtor will bring the Utility Company current on all post-petition debts owed to such Utility Companies.

The source of the funds to be used to pay the cash deposits to the Utility Companies will be the cash described in the Debtor's cash collateral motion and motion to approve development services agreement. The Debtor submits that approval to pay the proposed cash deposits to the Utility Companies will not render the Debtor's bankruptcy estate administratively insolvent.

///

///

## II. DISCUSSION

Section 366 of the Bankruptcy Code, as amended by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and applicable herein, provides, in pertinent part, as follows:

> "(a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, . . . the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for services rendered before the order for relief was not paid when due.
>
> . . .
>
> (c)(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor . . . adequate assurance of payment for the utility service that is satisfactory to the utility.
>
> (3)(A) On request of a party in interest[2] and after notice and a hearing, the court may order the modification of the amount of an assurance of payment under paragraph (2)."

11 U.S.C. § 366.

Whether a utility is subject to an unreasonable risk of nonpayment must be determined from the facts and circumstances of each case. *See, Massachusetts Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (1st Cir. B.A.P. 1981). Prior to the enactment of BAPCPA, where a debtor has, with few exceptions, timely paid its utility bills prior to the commencement of its chapter 11 case, the administrative expense priority provided in sections 503(b) and 507(a)(1) of the Bankruptcy Code often constituted adequate assurance of payment, and no deposit or other security was required. *See, Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 651 (2d Cir. 1997); *see, also Demp v. Philadelphia Elec. Co. (In re Demp)*, 22 B.R. 331, 332 (Bankr. E.D. Pa. 1982).

---

[2] The Debtor is a party in interest.  11 U.S.C. § 1109(b).

Case: 15-31430   Doc# 7   Filed: 11/16/15   Entered: 11/16/15 19:42:35   Page 8 of 14

Now, pursuant to BAPCPA, the administrative expense priority provided by Sections 503(b) and 507(a)(1) of the Bankruptcy Code specifically is not a means of providing "assurance of payment" under Section 366(c)(2) of the Bankruptcy Code. 11 U.S.C. § 366(c)(1)(B). Instead, a Chapter 11 debtor must provide "assurance of payment" pursuant to Section 366(c)(1)(A) of the Bankruptcy Code, which states that "assurance of payment" means: a cash deposit, a letter of credit, a certificate of deposit, a surety bond, a prepayment of utility consumption, or another form of security that is mutually agreed on between the utility and the debtor. 11 U.S.C. § 366(c)(1)(A).

Based on the foregoing, during the first thirty (30) days following the commencement of a voluntary Chapter 11 bankruptcy case, a utility may not alter, refuse, or discontinue service to, or discriminate against, a debtor solely on the basis of the commencement of the case or the failure of the debtor to pay a pre-petition debt for utility services provided. Following the foregoing 30-day period, however, utility companies may alter, refuse or discontinue service if the debtor does not furnish adequate "assurance of payment" of post-petition utility service obligations that is satisfactory to the relevant utility.

Under Section 366(c) of the Bankruptcy Code, this Court has exclusive responsibility for determining what constitutes adequate assurance of payment of post-petition utility charges and is not bound by local or state regulations. *See, e.g. Begley v. Philadelphia Elec. Co. (In re Begley)*, 41 B.R. 402, 405-06 (Bankr. E.D. Pa. 1984), *aff'd*, 760 F.2d 46 (3d Cir. 1985) (pre-BAPCPA); *Marion Steel Co. v. Ohio Edison Co. (In re Marion Steel Co.)*, 35 B.R. 188, 195 (Bankr. D. Ohio 1983) (pre-BAPCPA case finding that determinations of adequate assurance under section 366 are fully within the Court's discretion).

In these cases, the Debtor intends to provide adequate "assurance of payment" by providing its Utility Companies with cash deposits, as authorized by Section 366(c)(1)(A)(i) of the Bankruptcy Code, in the amounts proposed in Exhibit 3 to the Grare Declaration. The total amount of the cash deposits proposed to be paid by the Debtor is $4,245.46. For each account that the Debtor has with a Utility Company, the Debtor is proposing to provide its Utility Company with a cash deposit in an amount equal to the average monthly payment based on the

9

amount incurred on the account during the past three months.  In addition to the foregoing, the Debtor will bring its foregoing Utility Companies current on all post-petition debts owed to such Utility Companies and will remain current with them.

The source of the funds to be used to pay the cash deposits to the Utility Companies is described in the Cash Collateral Motion concurrently filed herewith.  Approval to pay the proposed cash deposits to the Utility Companies will not render the Debtor's bankruptcy estate administratively insolvent.

## III. <u>CONCLUSION</u>

**WHEREFORE**, the Debtor respectfully requests that this Court hold a hearing on the Motion and issue the Order:

(a)      granting the Motion;

(b)      affirming the adequacy of the notice given;

(c)      authorizing the Debtor to provide adequate "assurance of payment" to the Utility Companies via cash deposits in the amounts set forth in Exhibit 3 to the Grare Declaration filed concurrently herewith;

(d)      deeming the cash deposits paid by the Debtors to the Utility Companies in the amounts set forth in the Grare Declaration as constituting adequate "assurance of payment" pursuant to Section 366(c) of the Bankruptcy Code;

(e)      requiring each Utility Company that receives a cash deposit under an order of the Court granting the Motions to return cash deposits in its possession to the Debtors within ten (10) days if, and when, the Utility Company's services are terminated by the Debtors; and

///

///

///

///

///

///

///

1    (f)     granting such other and further relief as the Court deems just and proper.

2

3   Dated: November 16, 2015              RDIO, INC.

4                                         By:  _/s/ Krikor J. Meshefejian_____
                                              RON BENDER
5                                             PHILIP A. GASTEIER
                                              MONICA Y. KIM
6                                             KRIKOR J. MESHEFEJIAN
                                              LEVENE, NEALE, BENDER, YOO
7                                                  & BRILL L.L.P.
                                              Proposed Attorneys for Chapter 11 Debtor
8                                             and Debtor in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

# EXHIBIT "1"

RON BENDER (SBN 143364)
PHILIP A. GASTEIER (SBN 130043)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; pag@lnbyb.com;
myk@lnbyb.com; kjm@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | ) Case No. 15-31430 |
| | ) |
| RDIO, INC., | ) Chapter 11 Case |
| | ) |
|        Debtor and Debtor in Possession. | ) **ORDER GRANTING DEBTOR'S** |
| | ) **EMERGENCY MOTION FOR ENTRY** |
| | ) **OF AN ORDER AUTHORIZING** |
| | ) **DEBTOR TO PROVIDE ADEQUATE** |
| | ) **ASSURANCE OF FUTURE PAYMENT** |
| | ) **TO UTILITY COMPANIES PURSUANT** |
| | ) **TO SECTION 366(c) OF THE** |
| | ) **BANKRUPTCY CODE** |
| | ) |
| | ) |
| | ) Date: November 18, 2015 |
| | ) Time: 10:00 a.m. |
| | ) Place: U.S. Bankruptcy Court |
| | )       Courtroom 22 |
| | )       235 Pine St. |
| | )       Sa Francisco, CA 94104 |
| | ) Judge: The Hon. Dennis Montali |
| | ) |

On November 18, 2015, the Court held a hearing to consider the emergency motion ("Motion") filed by Rdio, Inc., debtor and debtor in possession in the above-referenced chapter 11 case ("Debtor"), pursuant to 11 U.S.C. § 366, for entry of an order authorizing the Debtor to provide adequate assurance of future payment to certain utility companies pursuant to Section 366(c) of the Bankruptcy Code. This Motion is supported by the *Declaration of Maikao Grare in Support of Certain First-Day Motions* (the "Grare Declaration") which the Debtor is filing concurrently with this Motion.

The Court has considered the Motion, the Declaration of Maikao Grare (the "Declaration") filed in support of the Motion, all papers filed by the Debtor in support of the Motion, and the oral arguments and statements of counsel made at the hearing on the Motion. The Court has found that proper notice of the Motion and the hearing on the Motion have been provided under the circumstances, and the Court has concluded that approval of the Motion on an emergency basis is necessary to avoid immediate and irreparable harm. The Court orders as follows:

1. The Motion is granted.

2. The Debtor is authorized to provide adequate "assurance of payment" to the Utility Companies (as defined in the Motion) via cash deposits in the amounts set forth in the Motion and the Declaration filed in support of the Motion.

3. The cash deposits paid by the Debtor to the Utility Companies in the amounts set forth in the Motion and Declaration shall be, and are hereby, deemed to constitute adequate "assurance of payment" pursuant to Section 366(c) of the Bankruptcy Code.

4. Each Utility Company that receives a cash deposit under this order is required to return such cash deposit to the Debtor within ten (10) business days if, and when, the Utility Company's services are terminated by the Debtor.

**\*End of Order\***