RON BENDER (SBN 143364)
PHILIP A. GASTEIER (SBN 130043)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; pag@lnbyb.com;
myk@lnbyb.com; kjm@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>RDIO, INC.,<br><br>    Debtor and Debtor in Possession. | Case No. 15-31430<br><br>Chapter 11 Case<br><br>**DEBTOR'S MOTION FOR AUTHORITY TO FILE PORTIONS OF A DOCUMENT UNDER SEAL, AND TO FILE REDACTED DOCUMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Declaration Of Elliott Peters Filed Concurrently Herewith]**<br><br>Date: November 23, 2015<br>Time: 9:30 a.m.<br>Place: U.S. Bankruptcy Court<br>        Courtroom 22<br>        235 Pine St.<br>        San Francisco, CA 94104<br>Judge: The Hon. Dennis Montali |

Pursuant to Section 107(b) of the Bankruptcy Code, Civ. L.R. 79-5, Federal Rule of Bankruptcy Procedure ("FRBP") 9018, and order of the Court, Rdio, Inc., debtor and debtor in possession herein (the "Debtor"), hereby files its motion (the "Motion") for entry of an order, in substantially the form attached hereto as **Exhibit 1** (the "Order"), authorizing the Debtor to: (1) file under seal two (2) Schedules, **Schedule 2.2(c) and Schedule 1.1(ss) (collectively, the "Sealed Schedules")**, which are to be appended to the "*Asset Purchase Agreement*" dated November 16, 2015 ("APA") between the Debtor and Pandora Media, Inc. ("Pandora"), and (2) file a redacted APA (which excludes only the Sealed Schedules) with the Court in connection with the Debtor's motion for approval of the sale as contemplated under the APA.

Pursuant to Civil L.R. 79-5(d), this Motion is supported by (A) Declaration of Elliott Peters ("Peters Declaration"), (B) the proposed Order (attached hereto as **Exhibit 1**), (C) the redacted version of the Sealed Schedules that are sought to be filed under seal (attached hereto as **Exhibit 2**), and (D) unredacted versions of the Sealed Schedules sought to be filed under seal (attached hereto as **Exhibit 3**).

As discussed below, the Sealed Schedules are entitled to be sealed because they disclose highly confidential and critical deal points of the APA which, if publicly disclosed, could significantly impair the consideration to be received by the estate under the APA and/or allow for Pandora to terminate the sale. In support of the Motion, the Debtor hereby represents as follows:

## BACKGROUND FACTS

1. The Debtor filed its Chapter 11 bankruptcy case on November 16, 2015 ("Petition Date"), and is continuing to operate its business as a debtor in possession. An Official Committee of Unsecured Creditors ("Committee") was formed on November 19, 2015.

2. The Debtor is engaged in the business of providing digital music service, primarily in the form of an unlimited, on demand music streaming service which is purchased on a monthly subscription basis.

3. Contemporaneously with its bankruptcy filing, the Debtor and Pandora entered into the APA, which contemplates the sale of certain designated assets of the Debtor to Pandora, or to a successful overbidder. The APA incorporates various Exhibits and Schedules which are to be

attached to the APA and which set forth critical provisions of the proposed sale transaction.

4. On November 18, 2015, the Court held hearings in this case relating to various "first day motions" as well as emergency motions relating to the Debtor's use of cash collateral, debtor-in-possession financing, proposed bidding procedures, and authority to enter into a "Master Services Agreement" with Pandora. At this hearing, the Debtor advised the Court of its intention to seek prompt approval of the APA, subject to a competitive bidding process, and, based thereon, the Court scheduled a hearing for December 21, 2015 to consider the proposed sale to Pandora or to a successful overbidder. Pursuant to an order of the Court, the Debtor will be filing its motion for approval of the proposed sale by not later than November 24, 2015 ("<u>Sale Motion</u>").

5. Attached as **Exhibit A** to the accompanying Peters Declaration is a copy of the APA which does not include any of the Exhibits and Schedules which are contemplated to be annexed thereto. As part of its Sale Motion, which is expected to be filed and served by not later than November 24, 2015, the Debtor plans to include all of the Exhibits and Schedules, <u>except, that</u>, by this Motion, the Debtor is requesting authority to (1) file under seal the Sealed Schedules to the APA ( **<u>Schedule 2.2(c) and Schedule 1.1(ss))</u>**; and (2) file a redacted APA (which excludes only the Sealed Schedules) with the Court in connection with the Debtor's Sale Motion.

6. <u>Recital C of the APA</u> provides that, "… Prior to or concurrently with the execution and delivery of this Agreement, and as a condition and material inducement to Purchaser to enter into this Agreement, certain Employees, as set forth on **Schedule 2.2(c)**, have entered into "at will" employment arrangements with Purchaser or a Subsidiary thereof to be effective immediately after the Closing pursuant to the execution and delivery by such Employees of offer letters, in a form acceptable to Purchaser (each, an "<u>Employee Offer Letter</u>" and, collectively, the "<u>Employee Offer Letters</u>"), and a proprietary information and inventions assignment agreement, in a form acceptable to Purchaser (each, a "<u>Proprietary Information and Inventions Assignment Agreement</u>" and collectively, the "<u>Proprietary Information and Inventions Assignment Agreements</u>"). All capitalized terms used herein which are not otherwise defined shall have the meanings given in the APA.

7. Under the APA, if a certain threshold number of Employees listed on **Schedule**

**2.2(c)** do not deliver Employee Offer Letters and Proprietary Information and Inventions Assignment Agreements, then Pandora, as Purchaser, has the right to terminate the transaction.

8. Additionally, <u>Section 2.2(c) of the APA</u> requires that the Debtor deliver, prior to Closing, countersigned Employee Offer Letters and Proprietary Information and Invention Assignment Agreements from a certain threshold number of the Employees who are listed on **Schedule 1.1(ss)**. In the event the Debtor is unable to meet such threshold, then Pandora, as Purchaser is entitled to a downward adjustment of the purchase price which is to be calculated based on the actual shortfall from the threshold requirement. More specifically, Section 2.2(c) of the APA provides: "In the event that at or prior to the Closing Seller shall not have delivered, or caused to be delivered, to Purchaser countersigned Employee Offer Letters and Proprietary Information and Invention Assignment Agreements that are effective as of the Closing, as further set forth in **Schedule 2.2(c)**, Purchaser shall be entitled to withhold from the Aggregate Consideration (and shall have no further obligation to pay to Seller) an amount up to $15,000,000 in accordance with the adjustment provisions set forth in **Schedule 2.2(c)**.

9. It is without question that revealing the identities of the Employees who are the targets of countersigned Employee Offer Letters and Proprietary Information and Invention Assignment Agreements (collectively, the "<u>Employee Agreements</u>") could significantly impair the value realized from the proposed sale, and potentially derail the sale altogether. If the names of these Employees are publicly disclosed, these Employees would effectively be given veto powers and/or unfair leverage and bargaining powers with regard to their Employee Agreements, and could unilaterally and significantly impact the economics of the transaction (by as much as $15,000,000) and possibly the viability of the transaction itself.

10. Having to divulge the names of the Employees affected by the Sealed Schedules would also result in unfair advantage to the Debtor's competitors which may attempt to divert these key Employees from the Debtor, and, in the process, destroy the prospects of a sale, and the chances of the Debtor realizing market value under the sale. The affected Employees are well respected, and high caliber employees in the Silicon Valley who are also highly coveted by other technology based businesses and competitors. As recognized by Pandora, losing these Employees will be

detrimental to the sale and reorganization and will cause severe prejudice to the estate and its stakeholders.

11. Moreover, these key Employees have developed and have been involved in the development and implementation of the Debtor's products, and thus, have knowledge of the Debtor's confidential research, development and commercial information. Thus, the Debtor submits that these Employees are equivalent to "trade secrets" of the Debtor's business and to the sale efforts, which should not and cannot be divulged in connection with the sale transaction.

## **BASIS FOR RELIEF REQUESTED**

Section 107(b) of the Bankruptcy Code provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may,
>
> (1) Protect an entity with respect to a trade secret or confidential research, development, or commercial information…."

11 U.S.C. § 107(b). FRBP 9018 provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity with respect of a trade secret or other confidential research, development, or commercial information…."

Fed.R. Bankr. P. 9018.

The protection afforded by section 107(b) and Rule 9018 is mandatory. *In re Orion Pictures Corp.,* 21 F.3d 24 (2d Cir. 1994). As one court has held,

> If the information for which protection is sought fits into any of the categories specified in § 107(b), the court is required to protect a requesting party, and has no discretion to deny the application for a protective order. Good cause is not an element of Section 107. When Congress addressed the secrecy problem in § 107(b) of the Bankruptcy Code it imposed no requirement to show "good cause" as a condition to sealing confidential commercial information. The only requirement is that the information the parties seek to have sealed be "confidential and commercial in nature."

*In re Handy Andy Home Improvement Centers, Inc.,* 199 B.R. 376, 381 (Bankr. N.D.Ill. 1996).

For purposes of section 107(b), "commercial information" includes information which could negatively impact a debtor or its creditors. *See Orion Pictures*, 21 F.3d at 27 (affirming the

protection of information which could negatively impact the debtor's ability to negotiate favorable promotional agreements in the future); *In re Georgetown Steel Co., LLC*, 306 B.R. 542, 547 (Bankr. D.S.C. 2004 (protecting information which could negatively impact employee retention and morale); *In re Global Crossing, Ltd.,* 295 B.R. 720, 726 (Bankr. S.D.N.Y. 2003) (protecting information which could "injure the Debtors or thwart a transaction that the debtor and their unsecured creditors desire"). One court has observed:

> [C]ommercial information that is entitled to protection under Code section 107(b) and Bankuptcy Rule 9018 must be viewed from the practical perspective of damage to the estate or its creditors, and squarely include information that could prejudice either of them as part of a sale process.

*Global Crossing, Ltd.,* 295 B.R. at 725 (discussing *In re Farmland Industries*, 290 B.R. 364 (Bankr. D. Mo. 2003). In this context, courts have protected information, which if publicly disclosed, could injure the debtor's ability to retain employees and could impact employee morale. *Georgetown Steel,* 360 B.R. at 547 (protecting documents disclosing the identity of key employees who received incentives to remain with the debtor).

The Sealed Schedules, which lists the names of the key Employees from whom Employee Agreements must be obtained in order to keep the sale, and/or the current purchase price of the sale, must be sealed and redacted from the APA in order to preserve the estate's ability to pursue a sale process for the maximum price achievable under the circumstances of this case. If the identities of the key Employees and the financial impact of failing to receive Employee Agreements from these Employees are revealed, the Employees and other third parties (including competitors) would wield broad powers and control over the sale process. It is absolutely in the best interests of the estate that the Motion be granted.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that this Court issue an order authorizing the Debtor to file the Sealed scheduled under seal, to file the APA as part of the Sale Motion redacted for the Sealed Schedules, and granting such other and further relief as the Court deems just and proper.

Dated: November 19, 2015					RDIO, INC.

						By:   */s/ Monica Y. Kim*
							RON BENDER
							PHILIP A. GASTEIER
							MONICA Y. KIM
							KRIKOR J. MESHEFEJIAN
							LEVENE, NEALE, BENDER, YOO
								& BRILL L.L.P.
							Proposed Attorneys for Chapter 11 Debtor
							and Debtor in Possession

# EXHIBIT "1"

[Proposed Order]

RON BENDER (SBN 143364)
PHILIP A. GASTEIER (SBN 130043)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; pag@lnbyb.com;
myk@lnbyb.com; kjm@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 15-31430 |
| RDIO, INC., | Chapter 11 Case |
| Debtor and Debtor in Possession. | **ORDER AUTHORIZING DEBTOR TO FILE PORTIONS OF A DOCUMENT UNDER SEAL, AND TO FILE REDACTED DOCUMENT** |
| | Date: November 23, 2015 |
| | Time: 9:30 a.m. |
| | Place: U.S. Bankruptcy Court |
| | Courtroom 22 |
| | 235 Pine St. |
| | San Francisco, CA 94104 |
| | Judge: The Hon. Dennis Montali |

On November 23, 2015, commencing at 9:30 a.m., the Court held a hearing to consider the motion (Docket No. ____) ("Motion") filed by Rdio, Inc., chapter 11 debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case ("Debtor"), pursuant to Section 107(b) of the Bankruptcy Code, Civ. L.R. 79-5, Federal Rule of Bankruptcy Procedure ("FRBP") 9018, and order of the Court, for entry of an order authorizing the Debtor to: (1) file under seal two (2) Schedules, **Schedule 2.2(c) and Schedule 1.1(ss) (collectively, the "Sealed Schedules")**, which are to be appended to the "*Asset Purchase Agreement*" dated November 16, 2015 ("APA") between the Debtor and Pandora Media, Inc. ("Pandora"), and (2) file a redacted APA (with excludes only the Sealed Schedules) with the Court in connection with the Debtor's motion for approval of the sale as contemplated under the APA. Capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Motion.

The Court, having considered the Motion, the declaration of Elliott Peters (Docket No. __) filed in support of the Motion, all documents filed in support of the Motion, the statements and arguments made on the record at the hearing, and the entire record in this case, and the Court, having found that notice of the Motion was proper under the Local Bankruptcy Rules, the Federal Rules of Bankruptcy Procedure, and the Bankruptcy Code, as may have been modified by the Court under the circumstances, and having determined that the approval of the Motion on an emergency basis is necessary and proper under the circumstances of this case, and for other good cause appearing,

**HEREBY ORDERS AS FOLLOWS:**

1. The Motion is granted;

2. The Debtor is hereby authorized and instructed to file under seal **Schedule 2.2(c) and Schedule 1.1(ss)** (collectively, the "Sealed Schedules"), which are to be appended to the APA between the Debtor and Pandora; and

3. The Debtor is hereby authorized and instructed to file a redacted APA (with excludes only the Sealed Schedules) with the Court in connection with the Debtor's motion for approval of the sale as contemplated under the APA.

4. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

*** End of Order ***