RON BENDER (SBN 143364)
PHILIP A. GASTEIER (SBN 130043)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & B[...]
10250 Constellation Boulevard, Suite 170[...]
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; pag@lnbyb.com; myk@lnbyb.com; kjm@lnbyb.com

Signed and Filed: November 24, 2015

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>RDIO, INC.,<br><br>    Debtor and Debtor in Possession. | ) Case No. 15-31430<br>)<br>) Chapter 11 Case<br>)<br>) **ORDER (A) APPROVING BIDDING AND BIDDING PROCEDURES WITH RESPECT TO THE TRANSFER AND SALE OF CERTAIN ASSETS, (B) APPROVING BIDDING PROTECTIONS FOR THE STALKING HORSE BIDDER, (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) APPROVING THE FORM AND MANNER OF NOTICES RELATED TO THE AUCTION AND SALE, (E) SCHEDULING THE SALE HEARING, AND (F) GRANTING RELATED RELIEF**<br>)<br>) Date: November 23, 2015<br>) Time: 9:30 a.m.<br>) Place: U.S. Bankruptcy Court<br>)       Courtroom 22<br>)       235 Pine St.<br>)       San Francisco, CA 94104<br>) Judge: The Hon. Dennis Montali<br>) |

1

Upon the emergency motion (the "Motion")[1] of Rdio, Inc., chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), for, among other things, entry of an order (this "Bidding Procedures Order"): (a) approving (i) bidding and bidding procedures (the "Bidding Procedures"), which is annexed hereto as **Exhibit "1"**, with respect to the following: (x) the sale, assignment and transfer of certain assets and (y) the assumption and assignment of certain executory contracts and unexpired leases related thereto (the assets described in clauses "(x)" and "(y)", collectively, the "Transferred Assets"); (ii) the payment of the Break-Up Fee and Expense Reimbursement (collectively, the "Stalking Horse Bidder Fee") to Pandora Media, Inc. ("Purchaser"), which serves as the "stalking horse bidder" (in such capacity, the "Stalking Horse Bidder") pursuant to that certain Asset Purchase Agreement dated as of November 16, 2015, by and among the Debtor and Purchaser, attached as **Exhibit "1"** to the Declaration of Elliott Peters filed by the Debtor in support of the Motion as Docket Number 14 (as further described below, the "Asset Purchase Agreement"); (iii) approving procedures governing assumption and assignment (the "Assignment Procedures") of certain executory contracts and unexpired leases (as further described below, the "Designated Contracts"); (iv) approving the form and manner of certain notices related to the Auction and sale of the Transferred Assets; (b) scheduling the Auction and a hearing (the "Sale Hearing") to approve the transfer and sale of the Transferred Assets, and the other transactions contemplated under the Asset Purchase Agreement (such transactions, the "Asset Purchase Transaction"); and (c) granting related relief, all as more fully set forth in the Motion; and the Court, having reviewed the Motion and other papers and pleadings filed in connection therewith and having heard the statements in support of the relief requested therein at a continued hearing held before this Court on November

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

23, 2015, at 9:30 a.m. (the "Hearing"); and due, proper and sufficient notice of the Motion having been given; and the Court, having determined that the legal and factual bases set forth in the Motion, the Declarations of Elliott Peters, Carlos Jimenez and Jeremy Liegl filed in support of the Motion as Docket Numbers 14, 15 and 16, respectively, and proffered at the Hearing establish just cause for the relief granted herein, and that such relief is in the best interests of the Debtor, its bankruptcy estate and its creditors; and upon all of the pleadings and proceedings before the Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]**

A. <u>Jurisdiction and Venue.</u> The Court has jurisdiction over the Motion and the transactions contemplated by the Asset[3] Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. <u>Statutory Predicates.</u> The statutory bases for the relief requested in the Motion are (i) sections 105(a), 363(b), (f), and (m), 365, 503, and 507 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f), and (h), 6006(a) and (c), 9007, and 9014; and (iii) Local Bankruptcy Rules 9006-1 and 9014-1.

C. <u>Notice.</u> Good and sufficient notice of the Motion and the relief sought therein has been provided to notice parties specified in the Motion, and no other or further notice is required

---

[2] The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014. To the extent any of the following findings constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

except as set forth herein. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D. <u>Justification for Relief.</u> The Debtor has articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures; (ii) approve the Stalking Horse Bidder Fee; (iii) approve the manner and form of notice of certain matters related to the transfer and sale of the Transferred Assets; (iv) approve the procedures for the assumption and assignment of the Designated Contracts and the form of the Assignment Notice; (v) set the date for the Sale Hearing; and (vi) grant such additional relief as requested in the Motion as related to the foregoing. The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate and creditors of its estate and other parties-in-interest.

E. <u>Bidding Procedures.</u> The Debtor's proposed Bidding Procedures, attached hereto as **Exhibit "1"**, (i) are designed to maximize the value to be achieved for the Transferred Assets; (ii) will ensure a competitive and efficient bidding process; and (iii) are fair and reasonable under the circumstances.

F. <u>Stalking Horse Bidder Fee.</u> The Stalking Horse Bidder Fee set forth in Section 9.3 of the Asset Purchase Agreement, and described in the Motion, shall be paid in accordance with the Asset Purchase Agreement, and (i) if triggered, will be an actual and necessary cost and administrative expense of preserving the Debtor's estate, within the meaning of section 503(b)(1) of the Bankruptcy Code, (ii) is reasonable and appropriate, particularly in light of the size and nature of the Asset Purchase Transaction and the efforts and costs and expenses that have been, and are continuing to be, expended by the Stalking Horse Bidder notwithstanding that the proposed transaction is subject to higher and/or better offers for the Transferred Assets, (iii) was negotiated by the parties at arms-length and in good faith, and the Stalking Horse Bidder would not have entered into the Asset Purchase Agreement in the absence of the Debtor's obligation to

pay such Stalking Horse Bidder Fee if triggered, and (iv) is necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed transaction on the terms set forth in the Asset Purchase Agreement.

G. <u>Auction and Sale Hearing Notice.</u> The Debtor's proposed Auction and Sale Hearing Notice, attached hereto as **Exhibit "2"** , as approved and served in accordance herewith, is appropriate and reasonably calculated to provide all interested parties with timely and sufficient information that they may require about the Auction process, including: (a) announcement that the Court has approved the bidding and Auction process pursuant to the Bidding Procedures; (b) information on how to obtain a copy of the Bidding Procedures and the Bidding Procedures Order; (c) the Bid Deadline; (d) the time, date, and location of the Auction; (e) the time, date, and location of the Sale Hearing; and (f) procedures for objecting to the Auction and the transfer and sale contemplated by the Motion. The proposed Auction and Sale Hearing Notice complies with the requirements of the Bankruptcy Rules and the Local Bankruptcy Rules.

H. <u>Notice of Successful Bidder.</u> The Notice of Successful Bidder, attached hereto as **Exhibit "3"** (the "<u>Notice of Successful Bidder</u>"), as approved and served in accordance herewith, is reasonably calculated to provide to the Special Notice Parties (as defined below) sufficient notice of (i) the Auction results, including the identity of the Successful Bidder, and (ii) if the Successful Bidder is not the Stalking Horse Bidder, any material differences between the terms of the Alternative Acquisition Agreement and the Asset Purchase Agreement. The Notice of Successful Bidder will include the Supplemental Assignment Notice, if one is required pursuant to the Bidding Procedures.

I. <u>Assumption and Assignment Procedures.</u> The Debtor's proposed procedures for assumption and assignment of the Designated Contracts are designed to ensure that the Debtor

assumes and assigns the Designated Contracts in accordance with section 365 of the Bankruptcy Code.

J. <u>Assignment Notice.</u> The Debtor's proposed Assignment Notice, attached as **Exhibit "4"** hereto, as approved and served in accordance herewith, is reasonably calculated to provide all third-party counterparties (the "<u>Counterparties</u>") to the Designated Contracts with proper notice of the potential assumption and assignment of such Designated Contracts and any cure amounts relating thereto (the "<u>Cure Amount</u>") and will be served on such Counterparties in accordance with paragraph 14 hereof.

K. <u>Compliance with Bankruptcy Law.</u> The Motion and this Bidding Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

**NOW THEREORE, IT IS HEREBY ORDERED THAT:**

1. The relief requested in the Motion relating to the matters covered in this Bidding Procedures Order, is GRANTED and APPROVED as provided herein.

2. Any and all objections and responses to the Motion relating to the matters covered in this Bidding Procedures Order that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are overruled and denied.

**Bidding Procedures**

3. The Bidding Procedures are hereby authorized and approved in the form annexed hereto as <u>**Exhibit "1"**</u>. The Bidding Procedures shall govern the bidding process and the Auction with respect to the Transferred Assets or the sale of assets of the Debtor in addition to the Transferred Assets. The Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures.

4.  On or before November 24, 2015, the Debtor will cause the Auction and Sale Hearing Notice to be served by first-class mail (postage prepaid) to the following parties: (i) all potential purchasers identified by the Debtor or its professionals; (ii) the Office of the United States Trustee (the "U.S. Trustee"); (iii) Pachulski Stang Ziehl & Jones LLP (Attn: John D. Fiero, jfiero@pszjlaw.com and Debra I. Grassgreen, dgrassgreen@pszjlaw.com), counsel to the Official Committee of Unsecured Creditors (the "Committee"), (iv) all known creditors of the Debtor ; (v) the applicable taxing authorities; (vi) the Counterparties; (vii) any party in interest who has requested notice pursuant to Bankruptcy Rule 2002; and (viii) Purchaser and its counsel, (ix) counsel to Iconical Investments II, LP, Skadden, Arps, Slate, Meagher & Flom LLP, Attn: Van Durrer II (van.durrer@skadden.com) and Ron E. Meisler (ron.meisler@skadden.com), (the entities listed in (i) through (ix) are hereby collectively referred to as the "Special Notice Parties").

5.  If, by the Bid Deadline (i.e., December 15, 2015), the only timely Qualified Bid received by the Debtor is from the Stalking Horse Bidder, the Debtor shall not conduct an Auction, and the Stalking Horse Bidder will be deemed the Successful Bidder and its bid the Successful Bid. If this occurs, the Debtor shall proceed to request at the Sale Hearing that the Court approve the transfer and sale of the Transferred Assets to the Stalking Horse Bidder in accordance with the Asset Purchase Agreement and the assumption and assignment of the Designated Contracts, and request that the Sale Order be entered by the Court and that the Sale Order shall become effectively immediately upon entry, notwithstanding the provisions of Rules 6004(h) and 6006(d) of the Bankruptcy Rules and Rule 62(g) of the Federal Rules of Civil Procedure.

**Stalking Horse Bidder and Stalking Horse Bidder Fee**

6.  Purchaser is approved as the Stalking Horse Bidder with respect to the Auction and the Asset Purchase Transaction pursuant to the Asset Purchase Agreement.

7. Section 9.3 of the Asset Purchase Agreement, the Stalking Horse Bidder Fee and the other amounts payable in accordance with Section 9.3 of the Asset Purchase Agreement are approved, authorized, and binding upon the Debtor and its estate as an administrative expense pursuant to section 503(b)(1) of the Bankruptcy Code.

8. The Debtor's obligations (i) to pay the Stalking Horse Bidder Fee and (ii) repay any Transition Services Fees shall survive termination of the Asset Purchase Agreement (in accordance with the terms thereof) and shall be payable as provided herein and in the Asset Purchase Agreement. The Debtor is authorized and directed, without further order of this Court, (i) to pay the Stalking Horse Bidder Fee to the Stalking Horse Bidder in full in cash (by wire transfer) in conjunction with the closing of an Alternative Transaction and (ii) to repay any Transition Services Fees to Purchaser in accordance with Section 9.3 of the Asset Purchase Agreement, which payments shall be indefeasible and free and clear of all liens and encumbrances.

**Notice of Successful Bidder**

9. Within one business day following the Debtor's selection of the Successful Bid — either following the Bid Deadline (if the only Qualified Bid received by the Bid Deadline is that of Purchaser) or at the conclusion of the Auction (if more than one Qualified Bid has been received by the Bid Deadline) — the Debtor shall file with the Court and send to the Special Notice Parties (other than the Qualified Bidders) by first-class mail (postage prepaid) the Notice of Successful Bidder. If the Successful Bidder is not the Stalking Horse Bidder, the Notice of Successful Bidder shall annex copies of the Alternative Acquisition Agreement and any Supplemental Assignment Notice of the Successful Bidder.

**Objections**

10. If there is no Auction, objections, if any, to the transfer and sale of the Transferred Assets as contemplated by the Motion, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; and (c) be filed with the clerk of the Court for the Northern District of California (or filed electronically via CM/ECF with the Court) and actually received by the following parties (collectively, the "Notice Parties"): (i) the Debtor's counsel, Levene, Neale, Bender, Yoo & Brill L.L.P., Attn: Ron Bender (rb@lnbyb.com) and Elliott Peters (elliott.peters@rd.io); (ii) counsel to the Stalking Horse Bidder, Wilson Sonsini Goodrich & Rosati PC, Attn: Benjamin Hoch (bhoch@wsgr.com) and Dorsey, Attn: Stephen O'Neill (oneill.stephen@dorsey.com); (iii) counsel to Iconical, Skadden, Arps, Slate, Meagher & Flom LLP, Attn: Van Durrer II (van.durrer@skadden.com) and Ron E. Meisler (Ron.Meisler@skadden.com), (iv) the US Trustee, Attn: Julie M. Glosson (Julie.M.Glosson@usdoj.gov); and (v) counsel to the Committee Pachulski Stang Ziehl & Jones LLP (Attn: John D. Fiero, jfiero@pszjlaw.com and Debra I. Grassgreen, dgrassgreen@pszjlaw.com), **on or before 5:00 p.m. PST on December 14, 2015** (the "Sale Objection Deadline"). If there is an Auction, the Sale Objection Deadline is extended to December 20, 2015, 12:00 p.m. PST, for just the Committee and the U.S. Trustee.

11. The following objections may be raised orally at the Sale Hearing: (a) objections to the conduct of the Auction; (b) objections to the selection of the Successful Bidder; and (c) objections to the terms of the Alternative Acquisition Agreement, provided, that such objection may only be raised with respect to those terms of the Alternative Acquisition Agreement that are materially different from the terms of the Asset Purchase Agreement.

**Sale Hearing**

12. The Sale Hearing shall be held before the Court on December 21, 2015, commencing at 9:30 a.m. PST.[4] The Sale Hearing may be adjourned without need for any further notice by announcement of the adjourned Sale Hearing date in open Court or by filing a notice thereof as soon as reasonably practicable before the Sale Hearing date with the Court.

13. At the Sale Hearing, the Debtor will request that the Court (a) approve the Asset Purchase Transaction, or, if the Successful Bidder is not the Stalking Horse Bidder, the sale transaction contemplated by such Successful Bid; (b) approve the Successful Bid; and (c) enter the Sale Order providing for this relief.

**Assignment Procedures**

14. On or before November 24, 2015, the Debtor shall file with the Court and serve, by first-class mail (postage prepaid), on the Counterparties (and such party's attorney, if such attorney has filed a notice of appearance in the Debtor's Chapter 11 case), the initial Assignment Notice (the "Initial Assignment Notice") for the Designated Contracts (as defined in the Asset Purchase Agreement) to be assumed and assigned in accordance with the Asset Purchase Agreement.

15. If the Successful Bid includes (i) a different list of Designated Contracts to be assumed and assigned, or (ii) different Cure Amount(s) than those listed in the Initial Assignment Notice, then the Notice of Successful Bidder shall include an exhibit identifying changes to the Initial Assignment Notice (the "Supplemental Assignment Notice"). The Supplemental Assignment Notice shall include, to the extent the Successful Bidder is not the Stalking Horse Bidder, a description of the Successful Bidder and a statement as to its ability to

---

[4] The Sale Hearing will be held before the Honorable Dennis Montali in Courtroom 201 located at 1300 Clay Street, #300, Oakland, California 94612.

10

perform the Debtor's obligations thereunder in accordance with section 365 of the Bankruptcy Code.

16. For the avoidance of doubt, the listing of any Designated Contracts on any Assignment Notice does not require or guarantee that such agreements will be assumed and assigned, and all rights of the Debtor with respect to such agreements are reserved.

17. Objections to any matter pertaining to the assumption and assignment of the Designated Contracts, including without limitation the adequate assurance or the Cure Amount, must be filed with the Court no later than (a) December 14, 2015 (the "Initial Objection Deadline"), with respect to the Initial Assignment Notice, and (b) up until the time of the Sale Hearing (the "Supplemental Objection Deadline"), with respect to the Supplemental Assignment Notice. Any such objections must be served so as to be actually received by the Notice Parties and the Successful Bidder no later than the Initial Objection Deadline or the Supplemental Objection Deadline (as applicable).

18. To the extent that any Counterparty or other party in interest does not timely serve an objection to the Assignment Notice as set forth above, such party will be deemed to have (i) consented to the assumption and assignment of the applicable Designated Contracts; (ii) agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) consented to the relevant Cure Amount; (iv) agreed to the terms of the Sale Order; and (v) waived any and all objections in connection with items (i) through (iv) hereof.

19. Upon the filing of an objection by a Counterparty, the Debtor will contact the objecting party to attempt to consensually resolve any timely filed objection. The Debtor will work with the Successful Bidder in this regard. If the Debtor is unable to resolve such an objection in response to the Assignment Notice, such objection will be heard at the Sale Hearing

(as may be adjourned by the Debtor without the Counterparty's consent); provided, further, that in the event an objection relates solely to a Cure Amount (a "Cure Objection"), then such objecting party will be deemed to consent to the assumption of its Designated Contract, notwithstanding such objection. In the event the Debtor or the Successful Bidder is unable to resolve a Cure Objection prior to the Sale Hearing, the Successful Bidder may elect not to request assumption and assignment of the underlying Designated Contract.

**Other Matters**

20. The Debtor's obligations under this Bidding Procedures Order, the provisions of this Bidding Procedures Order, and the portions of the Asset Purchase Agreement pertaining to the obligations to pay the Stalking Horse Bidder Fee, or repay the Transition Services Fees shall survive confirmation of any chapter 11 plan or discharge of claims thereunder and shall be binding upon the Debtor, the reorganized or reconstituted Debtor, the Debtor's estate, any successor to the Debtor, and any trustee that may be appointed in this case (including any chapter 7 trustee).

21. The DIP Lender and the Prepetition Secured Parties (as such terms are defined in the Interim DIP Order) shall have standing to be heard on all matters relating to the sale of the Transferred Assets, including the conduct of the Auction and the interpretation of the Bidding Procedures.

22. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived, and this Bidding Procedures Order shall be effective immediately upon its entry.

23. All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24. The Debtor is authorized to take any and all actions necessary to effectuate and implement the relief granted pursuant to this Bidding Procedures Order.

Case: 15-31430   Doc# 82   Filed: 11/24/15   Entered: 11/25/15 11:45:26   Page 12 of 52

1

2       25. The Court retains exclusive jurisdiction with respect to all matters arising from or
related to the implementation of this Bidding Procedures Order.

3                                    **\* End of Order \***

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

# EXHIBIT "1"

## BIDDING PROCEDURES[5]

Set forth below are the bidding procedures (the "Bidding Procedures") that will govern the bidding and auction (the "Auction") for the following: (i) the transfer and sale by the Rdio, Inc. (the "Debtor") of certain assets, and (ii) the assumption and assignment of certain contracts and leases related thereto (the assets identified in the preceding clauses (i) and (ii) being, collectively, the "Transferred Assets").

These Bidding Procedures have been approved by an order of the United States Bankruptcy Court for the Northern District of California (the "Court"), entered by the Court on November 24, 2015 (the "Bidding Procedures Order") in Bankruptcy Case No. 15-31430, the chapter 11 case of the Debtor.

The Debtor has entered into that certain Asset Purchase Agreement dated November 16, 2015 (the "Asset Purchase Agreement"), by and among the Debtor and Pandora Media, Inc. ("Purchaser" or the "Stalking Horse Bidder") pursuant to which the Debtor shall, among other things, transfer and sell to Purchaser the Transferred Assets as set forth set forth in the Asset Purchase Agreement. A copy of the Asset Purchase Agreement is attached as Exhibit "1" to the Declaration of Elliott Peters filed as Docket Number 14 in support of the Debtor's motion to approve the Bidding Procedures. The transaction contemplated by the Asset Purchase Agreement (the "Sale Transaction") is subject to higher and better offers as set forth in these Bidding Procedures.

**Below are important dates relating to the bidding, the Auction and the transfer and sale of the Transferred Assets:**

| | |
|---|---|
| **Bid Deadline** | **December 15, 2015** |
| **Auction** | **December 18, 2015[6]** |
| **Sale Hearing** | **December 21, 2015[7]** |

### 1. Assets to be Transferred and Sold

The Debtor is offering for sale the Transferred Assets. Except as otherwise agreed to in the definitive sale documents, all of the Debtor's rights, title and interest in and to the Transferred Assets shall be sold, transferred and assigned free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and any other interests thereon and therein (collectively, the "Encumbrances").

### 2. Stalking Horse Bidder

The Asset Purchase Agreement provides and the Court has authorized Purchaser (a) to act as the Stalking Horse Bidder in the Auction (if any) for the Transferred Assets, and (b) to receive, in

---

[5] All capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order

[6] In the event of any qualified overbid(s), the time and location of the Auction will be determined and all bidders will be notified.

[7] The Sale Hearing will be held before the Honorable Dennis Montali in Courtroom 201 located at 1300 Clay Street, #300, Oakland, California 94612, and will commence at 9:30 a.m. PST.

the event that Purchaser is not the winning bidder at the Auction and subject to the Asset Purchase Agreement, the Expense Reimbursement (as defined in the Asset Purchase Agreement) subject to a cap of $500,000 plus the Break-Up Fee of $2,250,000 plus the Master Services Fee (as defined in the Asset Purchase Agreement), with all of the foregoing collectively defined here as the "<u>Stalking Horse Bidder Fee</u>".

### 3.      <u>Confidentiality Agreement/Due Diligence</u>

Prior to the Bid Deadline of December 15, 2015, the Debtor shall afford any potential bidder whom the Debtor (with input from Moelis & Company ("<u>Moelis</u>") – the Debtor's financial advisor) reasonably determines has the financial wherewithal to submit a Qualified Bid the opportunity to conduct a reasonable due diligence review, in the manner determined by the Debtor, in its discretion (subject to input from Moelis and the timing of the Auction), of the Transferred Assets in order to make a bid. The Debtor may, but shall not be obligated to, furnish any due diligence information after the Bid Deadline.

In order to receive any due diligence from the Debtor or from Moelis, a potential bidder must submit to the Debtor and/or to Moelis an executed confidentiality agreement (which shall inure to the benefit of the Successful Bidder and otherwise be in form and substance consistent with Section 6.3 of the Asset Purchase Agreement), such agreement to be provided to such bidder by the Debtor or Moelis, and submitted in electronic form by the potential bidder to Moelis, Attn: Carlos Jimenez (carlos.jimenez@moelis.com), with a copy to the Debtor's counsel, Ron Bender of Levene, Neale, Bender, Yoo & Brill L.L.P. (rb@lnbyb.com) and Elliott Peters (elliott.peters@rd.io). Parties interested in bidding should contact Carlos Jimenez (carlos.jimenez@moelis.com) of Moelis to request a copy of the confidentiality agreement.

Information relevant to the Debtor and the Transferred Assets shall be made available to financial qualified potential bidders as soon as practicable following the execution by such financial qualified potential bidders of the confidentiality agreement; provided, however that the Debtor may, in its discretion (with input from Moelis), require that the potential bidder also provide information set forth in section 4 hereof before receiving any due diligence information.

### 4.      <u>Participation Requirements</u>

To be qualified to submit an initial bid, a potential bidder must submit to Moelis, no later than five (5) days before the Bid Deadline (i.e., by December 10, 2015), current audited financial statements and the latest unaudited financial statements of the potential bidder or, if such potential bidder is an entity formed for the purpose of acquiring the Transferred Assets, evidence of the potential bidder's financial ability to submit a qualifying overbid and to demonstrate adequate assurance of future performance with respect to any executory contracts and unexpired leases that the potential bidder wishes to have assigned to it, including any current audited financial statements and the latest unaudited financial statements of any equity holders or sponsors of such potential bidder who intend to guarantee the obligations of such potential bidder, or such other form of financial disclosure and/or credit quality support or enhancement, if any, that will allow Moelis to make a reasonable determination as to such potential bidder's financial and other capabilities to consummate the Sale Transaction.

The Debtor (with input from Moelis) shall determine whether any potential bidder that has timely submitted these materials qualifies to submit a bid (such bidder, an "Overbidder," which term, for the avoidance of doubt, does not include Purchaser).

/ / /

/ / /

## 5.   **Bid Deadline**

The Overbidders' bid packages must be delivered in electronic form[8] to the parties listed below so as to be concurrently received by them no later than 5:00 p.m. (prevailing Pacific Standard Time) on December 15, 2015 (the "Bid Deadline"):

(i)   the Debtor, Attn: Elliott Peters (elliott.peters@rd.io);

(ii)   financial advisor to the Debtor, Moelis, Attn: Carlos Jimenez (carlos.jimenez@moelis.com);

(iii)   counsel to the Debtor, Levene, Neale, Bender, Yoo & Brill L.L.P. Attn: Ron Bender (rb@lnbyb.com);

(iv)   counsel to Iconical, Skadden, Arps, Slate, Meagher & Flom LLP, Attn: Ron E. Meisler (Ron.Meisler@skadden.com),

(v)   counsel to the Stalking Horse Bidder, Wilson Sonsini Goodrich & Rosati PC, Attn: Benjamin Hoch (bhoch@wsgr.com); and

(vi)   counsel to the official committee of unsecured creditors (the "Committee"), Pachulski Stang Ziehl & Jones LLP, Attn: John D. Fiero (jfiero@pszjlaw.com) and Debra I. Grassgreen (dgrassgreen@pszjlaw.com).

## 6.   **Qualified Bid Requirements**

In order to participate at the Auction, each Overbidder must submit, by the Bid Deadline, a bid satisfying the following criteria:

(a)   Alternative Acquisition Agreement. The bid shall include an executed Asset Purchase Agreement, as modified by the Overbidder (the "Alternative Acquisition Agreement"), along with an electronic mark-up showing all changes to the Asset Purchase Agreement, which Alternative Acquisition Agreement is on substantially the same terms as the Asset Purchase Agreement.

(b)   Minimum Overbid. The proposed purchase price to be paid for the Transferred Assets must be in an amount (i) at least $1,000,000 more than the maximum "Aggregate Consideration" contained in the Asset Purchase Agreement, plus (ii) the amount of the Stalking Horse Bidder Fee (for purposes hereof, the amount of the Expense Reimbursement included in the Stalking Horse Bidder Fee shall be deemed to be $500,000, the maximum amount set forth in Section 9.3(a)(i) of the Asset Purchase Agreement), plus an amount equal to the Master Services Fees (as defined in the Asset Purchase Agreement) paid by Purchaser which shall be estimated in good faith by the Debtor (with input from Moelis and the Committee) two days prior to the Bid Deadline.

(c)   Closing Deadline. The bid shall contain a proposed closing date that is no later than the Closing Date as defined in the Asset Purchase Agreement (the "Closing Deadline").

---

[8] The Debtor may also request physical copies of any such documents.

Case: 15-31430   Doc# 82   Filed: 11/24/15   Entered: 11/25/15 11:45:26   Page 17 of 52

(d)    Bid Irrevocable. The bids shall remain binding and irrevocable until the Sale Hearing or, if the bid is the Successful Bid, until the earlier of the closing of the sale or the Closing Deadline.

(e)    No Breakup Fee. The bid must not request or entitle the Overbidder to receive any fee analogous to the Stalking Horse Bidder Fee, any transaction or breakup fee, expense reimbursement or similar fee or payment. **For the avoidance of doubt, by submitting a bid, the Overbidder agrees that it shall not be entitled to any such fee.**

(f)    Deposit. An Overbidder must provide a cashier's check payable to the Debtor, or a wire transfer to the Debtor, in either case, to be deposited into a separate debtor-in-possession account or into a segregated trust account maintained by the Debtor's bankruptcy counsel, in an amount equal to the sum of: (i) the Stalking Horse Bidder Fee (defined above) and (ii) $7,500,000, (the sum of (i) and (ii), the "Deposit"). The Overbidder shall forfeit the Deposit if (A) it is determined to be a Qualified Bidder (defined below) and withdraws or modifies its bid at any time (other than as provided herein) before the conclusion of the Auction, or (B) the Overbidder is the Successful Bidder and (x) modifies or withdraws the bid without the Debtor's consent before the consummation of the sale contemplated by the bid, or (y) breaches the Alternative Acquisition Agreement. The Deposit shall be returned to the Overbidder (1) as soon as practicable if the bidder is not determined to be a Qualified Bidder or (2) no later than five business days following Court approval of the Sale Transaction to the Successful Bidder if the Overbidder is determined to be a Qualified Bidder but is not deemed to be the Successful Bidder. The Debtor (or its bankruptcy counsel, as the case may be) will not be required to maintain any Deposit in an interest bearing account, but any interest earned on any Deposit will be remitted to the appropriate Qualified Bidder if the Deposit is returned to the Qualified Bidder pursuant to the above.

(g)    Due Diligence. The bid must not contain any due diligence or financing contingencies, and must acknowledge and represent that (i) the Overbidder has had an opportunity to conduct any and all due diligence regarding the Debtor and the Transferred Assets before making any bids; (ii) it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Debtor and/or the Transferred Assets in making its bid; (iii) it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtor and the Transferred Assets, or the completeness of any information provided in connection therewith (in all cases, other than as set forth in the Alternative Acquisition Agreement) and (iv) it consents to be bound by the terms of these Bidding Procedures.

(h)    Identity of Bidders. The Overbidder must fully disclose the identity of each entity that will be bidding for the Transferred Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, as well as disclose the organization form and the business conducted by each entity.

(i)    Consents. The Overbidder must represent that it obtained all necessary organizational approvals to make its bid and to enter into and perform the Alternative Acquisition Agreement and include evidence of authorization and approval from the Overbidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Alternative Acquisition Agreement.

(j)   <u>Contracts.</u> The Overbidder shall designate an initial list of executory contracts and unexpired leases that it wishes to have assumed and assigned.

(k)   <u>Additional Information.</u> The Overbidder must furnish (i) information sufficient to establish that the Overbidder is capable and qualified, legally, and otherwise, of (A) unconditionally (except as set forth in the Alternative Acquisition Agreement) performing all obligations under the Alternative Acquisition Agreement, including to pay the purchase price, and (B) obtaining all required regulatory approvals to perform all of its obligations under the Alternative Acquisition Agreement and closing the transactions contemplated thereby not later than the Closing Deadline; and (ii) such other information as the Debtor or the Committee may request.

Each Person that submits a bid shall be deemed to have consented to the Debtor making the contents of such bid public, including in filings in the Court.

To be a "<u>Qualified Bid</u>," a bid received from an Overbidder must meet the requirements set forth above. The Debtor (with input from Moelis and the Committee) shall have the right to determine whether a bid received from an Overbidder (and any bid submitted at the Auction by an Overbidder) meets such requirements if, in the good faith opinion of the Debtor, after consulting with Moelis and the Committee, (i) the requirements set forth above are met; (ii) such bid is determined not to be materially more burdensome or conditional than the terms of the Asset Purchase Agreement; and (iii) such bid can be consummated before the Closing Deadline if selected as a Successful Bid (defined below). The Debtor (through Moelis) will notify each of the Overbidders whether its bid is a Qualified Bid as soon as practical after the Bid Deadline and before the Auction. For the avoidance of doubt, Purchaser's bid, as set forth in the Asset Purchase Agreement, and each bid received from Purchaser at the Auction that complies with the Bidding Procedures shall be a Qualified Bid. Purchaser and any entity that is determined by the Debtor to have submitted a Qualified Bid shall each be deemed a "<u>Qualified Bidder</u>."

Any entity that is not a Qualified Bidder shall not be permitted to attend and shall be disqualified from bidding for the Transferred Assets at the Auction. The Debtor (through Moelis) shall, as soon as reasonably practical after receipt of a bid that is determined to be a Qualified Bid, provide copies of such Qualified Bid to Purchaser.

## 7.   <u>No Auction if Only One Qualified Bid</u>

If, by the Bid Deadline, the only timely Qualified Bid received by the Debtor is from the Stalking Horse Bidder, the Debtor shall not conduct an Auction and the Stalking Horse Bidder will be deemed the Successful Bidder and its bid the Successful Bid. If this occurs, the Debtor shall proceed to request at the Sale Hearing (defined below) that the Court approve the transfer and sale of the Transferred Assets to the Stalking Horse Bidder in accordance with the Asset Purchase Agreement and request that the Sale Order be entered by the Court and that the Sale Order shall be made immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) and 6006(d) of the Bankruptcy Rules and Rule 62(g) of the Federal Rules of Civil Procedure.

///

## 8. Auction

If by the Bid Deadline, more than one timely Qualified Bid has been received by the Debtor, the Debtor will conduct the Auction with all Qualified Bidders. The Auction will be held on December 18, 2015, at a location selected by the Debtor, which location will be provided to all Qualified Bidders and filed with the Court. Counsel to the Committee and members of the Committee will be invited to attend the Auction.

## 9. Bidding Procedures

(a)     The following procedures will govern the Auction:

(i)     Bankruptcy Court Jurisdiction. All Qualified Bidders shall be deemed to have consented to the exclusive and core jurisdiction of the Court and to have waived any right to jury trial in connection with any disputes relating to the bidding process, the Auction, the transfer and sale of the Transferred Assets, and any other matter relating to, or contemplated by, the Asset Purchase Agreement and any Alternative Acquisition Agreement. Any and all disputes related to the Auction shall be determined solely by the Court with no right to appeal.

(ii)     Anti-Collusion. At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with any other bidder or prospective bidder, or with the Debtor with respect to the bidding process, the Auction, or the sale transaction.

(iii)     Bids. The bidding at the Auction shall commence at the amount of the highest or otherwise best Qualified Bid submitted by the Bid Deadline, as determined by the Debtor (with input from Moelis and the Committee). Each subsequent bid shall be in increments of no less than $500,000 and by figures which are wholly divisible by $500,000.

(iv)     Calculating Bids. In valuing bids, and for purposes of calculating each successive overbid by Purchaser, the Debtor shall deem each bid by an Overbidder to have been automatically reduced by the amount of the Stalking Horse Bidder Fee.

(v)     Successful Bidder. The Auction shall continue until there is only one offer that the Debtor (with input from Moelis and the Committee) determines, subject to Court approval, is the highest or otherwise best offer (the "Successful Bid") from among the bids submitted by the Qualified Bidders at the Auction. The bidder submitting such Successful Bid shall become the "Successful Bidder" and shall have such rights and responsibilities of the purchaser, as set forth in the Alternative Acquisition Agreement, or the Asset Purchase Agreement, as applicable. If, at the Auction's conclusion, and consistent with these Bidding Procedures, Purchaser's final bid is greater than the highest bid made by any other Qualified Bidder, the amount of Purchaser's final bid shall constitute the "Aggregate Consideration" under section 2.2(a) of the Asset Purchase Agreement.

(vi)     Other Procedures. In addition to the procedures outlined above, the Debtor (with input from Moelis and the Committee) may announce and

employ at the Auction other procedural rules that are reasonable under the circumstances for conducting the Auction; *provided, however,* that such rules are (i) not materially inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Court and (ii) disclosed to each Qualified Bidder prior to the commencement of the Auction.

(b)     Within one (1) business day after the conclusion of the Auction, the Debtor shall file with the Court and serve upon all Qualified Bidders and other entities set forth in the Bidding Procedures Order a notice identifying the Successful Bidder.  If the Successful Bidder is not the Stalking Horse Bidder, the notice will summarize any material differences between the terms of the Alternative Acquisition Agreement and the Asset Purchase Agreement, and will annex a copy of the Alternative Acquisition Agreement. The notice will include the supplemental Assignment Notice, if one is required pursuant to the Bidding Procedures.

(c)     Under no circumstances shall the Debtor consider any bid made after the conclusion of the Auction.

**10.**     <u>**Sale Hearing**</u>

(a)     The Successful Bid will be subject to approval of the Court, through entry of a sale order (substantially in the form annexed to the Debtor's sale motion as Exhibit A) (the "<u>Sale Order</u>"), at a hearing that will take place at 9:30 a.m. PST on December 21, 2015, before the Honorable Dennis Montali in Courtroom 201, 1300 Clay Street #300, Oakland, California 94612 (the "<u>Sale Hearing</u>").   The closing of the transfer and sale of the Transferred Assets to the Successful Bidder shall occur on the date as provided in, and otherwise in accordance with, the Asset Purchase Agreement or the Alternative Acquisition Agreement of the Successful Bidder, as applicable.

(b)     Purchaser, and any other entity that becomes the Successful Bidder, shall have standing and are deemed to be parties in interest with standing to be heard on any motion, hearing or other matter related to the Auction, the Asset Purchase Agreement or any bid, or other transfer and sale of the Transferred Assets.

**11.**     <u>**Objections**</u>

Objections, if any, to the transfer and sale of the Transferred Assets as contemplated by the Motion (whether under the Asset Purchase Agreement or in general), must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; and (c) be filed with the clerk of the Court for the Northern District of California (or filed electronically via CM/ECF with the Court) and actually received by all of the parties entitled to receive the bid packages as set forth in section 5 above as well as counsel to  the United States Trustee, Attn: Julie M. Glosson (Julie.M.Glosson@usdoj.gov), **on or before 5:00 p.m. (Pacific Standard Time) on December 14, 2015 (the "<u>Sale Objection Deadline</u>"), except that, if there is an Auction, the Sale Objection Deadline is extended to December 20, 2015 at 12:00 p.m. (Pacific Standard Time) for just the Committee and the United States Trustee.**

The following objections may be raised orally at the Sale Hearing: (a) objections to the conduct of the Auction; (b) objections to the selection of the Successful Bidder; and (c) objections to the terms of the Alternative Acquisition Agreement, *provided, that* objections with respect to the terms of the Alternative Acquisition Agreement may only be raised with respect to terms that are

Case: 15-31430   Doc# 82   Filed: 11/24/15   Entered: 11/25/15 11:45:26   Page 21 of 52

materially different from the terms of the Asset Purchase Agreement.

### 12.     <u>Application of the Deposit</u>

If the Successful Bidder is not the Purchaser, then in conjunction with the closing of the Alternative Acquisition Agreement with the Successful Bidder, the Debtor shall pay to Purchaser the Stalking Horse Bidder Fee. If the transfer and sale to such Successful Bidder does not close on or before the Closing Deadline, the amount of such Successful Bidder's Deposit shall, unless otherwise agreed to by the Debtor, be forfeited to and retained by the Debtor.

### 13.     <u>Jurisdiction</u>

The Court shall retain exclusive jurisdiction over any matter or dispute relating to the transfer and sale of the Transferred Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Successful Bid, and/or any other matter that in any way relates to the foregoing.

# EXHIBIT "2"

1  RON BENDER (SBN 143364)
   PHILIP A. GASTEIER (SBN 130043)
2  MONICA Y. KIM (SBN 180139)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
3  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
4  Los Angeles, California 90067
   Telephone:  (310) 229-1234
5  Facsimile:  (310) 229-1244
   Email: rb@lnbyb.com; pag@lnbyb.com; myk@lnbyb.com; kjm@lnbyb.com
6
7  Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

8              UNITED STATES BANKRUPTCY COURT
             NORTHERN DISTRICT OF CALIFORNIA
9                SAN FRANCISCO DIVISION

10 In re:                           ) Case No. 15-31430
                                    )
11 RDIO, INC.,                      ) Chapter 11 Case
                                    )
12          Debtor and Debtor in Possession.  ) **NOTICE OF (1) AUCTION SALE OF**
                                    ) **DEBTOR'S ASSETS AND**
13                                  ) **OPPORTUNITY TO OVERBID, AND (2)**
                                    ) **HEARING FOR THE BANKRUPTCY**
14                                  ) **COURT TO CONSIDER APPROVAL OF**
                                    ) **THE DEBTOR'S MOTION TO SELL ITS**
15                                  ) **ASSETS AND ASSUME AND ASSIGN**
                                    ) **EXECUTORY CONTRACTS AND**
16                                  ) **UNEXPIRED LEASES TO THE**
                                    ) **SUCCESSFUL BIDDER FROM THE**
17                                  ) **AUCTION SALE**
                                    )
18                                  )
19                                  )
                                    )
20                                  ) Date:   December 21, 2015
                                    ) Time:   9:30 a.m.
21                                  ) Place:  U.S. Bankruptcy Court
                                    )         Courtroom 201
22                                  )         1300 Clay Street, #300
                                    )         Oakland, CA 94612
23                                  ) Judge:  The Hon. Dennis Montali
                                    )
24                                  )
                                    )
25 _____ )
26
27
28

1

PLEASE TAKE NOTICE that in accordance with the Bidding Procedures Order entered by the Court on November 24, 2015, Rdio, Inc., chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), will conduct an auction (the "Auction") on December 18, 2015, with the respect to the sale, assignment and transfer of certain of the Debtor's assets and the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases (collectively, the "Transferred Assets"). All capitalized terms which are not defined in this Notice shall have the same definitions as such terms have in the Bidding Procedures Order.

PLEASE TAKE FURTHER NOTICE that on December 21, 2015, commencing at 9:30 a.m., at the above-referenced Court, a hearing will be held for the Bankruptcy Court to consider approval of (i) the Debtor's motion for a sale of the Transferred Assets to the Successful Bidder at the Auction, and (ii) the Debtor's motion to assume and assign to the Successful Bidder all of the Debtor's executory contracts and unexpired leases that the Successful Bidder wishes to assume.

PLEASE TAKE FURTHER NOTICE that the purchase offer made by the Stalking Horse Bidder is subject to overbid, and the Successful Bidder will be determined at the Auction. Attached hereto as Exhibit "1" is a copy of the Bidding Procedures that have been approved by the Bankruptcy Court for Qualified Bidders to use if they wish to submit a Qualified Bid. The

///

///

///

///

2

Debtor has retained Moelis & Company as its financial advisor. Parties desiring additional information about the Auction and the steps that must be taken to become a Qualified Bidder and to submit a Qualified Bid should contact Carlos R. Jimenez, Managing Director of Moelis & Company (carlos.jimenez@moelis.com); office phone number is (310) 443-2338.

Dated: November 24, 2015

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

By: _/s/ Ron Bender_
  Ron Bender
  Philip A. Gasteier
  Monica Y. Kim
  Krikor J. Meshefejian
  Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**EXHIBIT "1"**

**BIDDING PROCEDURES[1]**

Set forth below are the bidding procedures (the "Bidding Procedures") that will govern the bidding and auction (the "Auction") for the following: (i) the transfer and sale by the Rdio, Inc. (the "Debtor") of certain assets, and (ii) the assumption and assignment of certain contracts and leases related thereto (the assets identified in the preceding clauses (i) and (ii) being, collectively, the "Transferred Assets").

These Bidding Procedures have been approved by an order of the United States Bankruptcy Court for the Northern District of California (the "Court"), entered by the Court on November 24, 2015 (the "Bidding Procedures Order") in Bankruptcy Case No. 15-31430, the chapter 11 case of the Debtor.

The Debtor has entered into that certain Asset Purchase Agreement dated November 16, 2015 (the "Asset Purchase Agreement"), by and among the Debtor and Pandora Media, Inc. ("Purchaser" or the "Stalking Horse Bidder") pursuant to which the Debtor shall, among other things, transfer and sell to Purchaser the Transferred Assets as set forth set forth in the Asset Purchase Agreement. A copy of the Asset Purchase Agreement is attached as Exhibit "1" to the Declaration of Elliott Peters filed as Docket Number 14 in support of the Debtor's motion to approve the Bidding Procedures. The transaction contemplated by the Asset Purchase Agreement (the "Sale Transaction") is subject to higher and better offers as set forth in these Bidding Procedures.

**Below are important dates relating to the bidding, the Auction and the transfer and sale of the Transferred Assets:**

| | |
|---|---|
| **Bid Deadline** | **December 15, 2015** |
| **Auction** | **December 18, 2015[2]** |
| **Sale Hearing** | **December 21, 2015[3]** |

1.      **Assets to be Transferred and Sold**

The Debtor is offering for sale the Transferred Assets. Except as otherwise agreed to in the definitive sale documents, all of the Debtor's rights, title and interest in and to the Transferred Assets shall be sold, transferred and assigned free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and any other interests thereon and therein (collectively, the "Encumbrances").

2.      **Stalking Horse Bidder**

The Asset Purchase Agreement provides and the Court has authorized Purchaser (a) to act as the Stalking Horse Bidder in the Auction (if any) for the Transferred Assets, and (b) to receive, in the event that Purchaser is not the winning bidder at the Auction and subject to the Asset Purchase

---

[1] All capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order

[2] In the event of any qualified overbid(s), the time and location of the Auction will be determined and all bidders will be notified.

[3] The Sale Hearing will be held before the Honorable Dennis Montali in Courtroom 201 located at 1300 Clay Street, #300, Oakland, California 94612, and will commence at 9:30 a.m. PST.

Agreement, the Expense Reimbursement (as defined in the Asset Purchase Agreement) subject to a cap of $500,000 plus the Break-Up Fee of $2,250,000 plus the Master Services Fee (as defined in the Asset Purchase Agreement), with all of the foregoing collectively defined here as the "Stalking Horse Bidder Fee".

### 3. Confidentiality Agreement/Due Diligence

Prior to the Bid Deadline of December 15, 2015, the Debtor shall afford any potential bidder whom the Debtor (with input from Moelis & Company ("Moelis") – the Debtor's financial advisor) reasonably determines has the financial wherewithal to submit a Qualified Bid the opportunity to conduct a reasonable due diligence review, in the manner determined by the Debtor, in its discretion (subject to input from Moelis and the timing of the Auction), of the Transferred Assets in order to make a bid. The Debtor may, but shall not be obligated to, furnish any due diligence information after the Bid Deadline.

In order to receive any due diligence from the Debtor or from Moelis, a potential bidder must submit to the Debtor and/or to Moelis an executed confidentiality agreement (which shall inure to the benefit of the Successful Bidder and otherwise be in form and substance consistent with Section 6.3 of the Asset Purchase Agreement), such agreement to be provided to such bidder by the Debtor or Moelis, and submitted in electronic form by the potential bidder to Moelis, Attn: Carlos Jimenez (carlos.jimenez@moelis.com), with a copy to the Debtor's counsel, Ron Bender of Levene, Neale, Bender, Yoo & Brill L.L.P. (rb@lnbyb.com) and Elliott Peters (elliott.peters@rd.io). Parties interested in bidding should contact Carlos Jimenez (carlos.jimenez@moelis.com) of Moelis to request a copy of the confidentiality agreement.

Information relevant to the Debtor and the Transferred Assets shall be made available to financial qualified potential bidders as soon as practicable following the execution by such financial qualified potential bidders of the confidentiality agreement; provided, however that the Debtor may, in its discretion (with input from Moelis), require that the potential bidder also provide information set forth in section 4 hereof before receiving any due diligence information.

### 4. Participation Requirements

To be qualified to submit an initial bid, a potential bidder must submit to Moelis, no later than five (5) days before the Bid Deadline (i.e., by December 10, 2015), current audited financial statements and the latest unaudited financial statements of the potential bidder or, if such potential bidder is an entity formed for the purpose of acquiring the Transferred Assets, evidence of the potential bidder's financial ability to submit a qualifying overbid and to demonstrate adequate assurance of future performance with respect to any executory contracts and unexpired leases that the potential bidder wishes to have assigned to it, including any current audited financial statements and the latest unaudited financial statements of any equity holders or sponsors of such potential bidder who intend to guarantee the obligations of such potential bidder, or such other form of financial disclosure and/or credit quality support or enhancement, if any, that will allow Moelis to make a reasonable determination as to such potential bidder's financial and other capabilities to consummate the Sale Transaction.

The Debtor (with input from Moelis) shall determine whether any potential bidder that has timely submitted these materials qualifies to submit a bid (such bidder, an "Overbidder," which term, for the avoidance of doubt, does not include Purchaser).

/ / /

/ / /

5

**5.** **Bid Deadline**

The Overbidders' bid packages must be delivered in electronic form[4] to the parties listed below so as to be concurrently received by them no later than 5:00 p.m. (prevailing Pacific Standard Time) on December 15, 2015 (the "Bid Deadline"):

(i)    the Debtor, Attn: Elliott Peters (elliott.peters@rd.io);

(ii)    financial advisor to the Debtor, Moelis, Attn: Carlos Jimenez (carlos.jimenez@moelis.com);

(iii)    counsel to the Debtor, Levene, Neale, Bender, Yoo & Brill L.L.P. Attn: Ron Bender (rb@lnbyb.com);

(iv)    counsel to Iconical, Skadden, Arps, Slate, Meagher & Flom LLP, Attn: Ron E. Meisler (Ron.Meisler@skadden.com),

(v)    counsel to the Stalking Horse Bidder, Wilson Sonsini Goodrich & Rosati PC, Attn: Benjamin Hoch (bhoch@wsgr.com); and

(vi)    counsel to the official committee of unsecured creditors (the "Committee"), Pachulski Stang Ziehl & Jones LLP, Attn: John D. Fiero (jfiero@pszjlaw.com) and Debra I. Grassgreen (dgrassgreen@pszjlaw.com).

**6.** **Qualified Bid Requirements**

In order to participate at the Auction, each Overbidder must submit, by the Bid Deadline, a bid satisfying the following criteria:

(a)    Alternative Acquisition Agreement. The bid shall include an executed Asset Purchase Agreement, as modified by the Overbidder (the "Alternative Acquisition Agreement"), along with an electronic mark-up showing all changes to the Asset Purchase Agreement, which Alternative Acquisition Agreement is on substantially the same terms as the Asset Purchase Agreement.

(b)    Minimum Overbid. The proposed purchase price to be paid for the Transferred Assets must be in an amount (i) at least $1,000,000 more than the maximum "Aggregate Consideration" contained in the Asset Purchase Agreement, plus (ii) the amount of the Stalking Horse Bidder Fee (for purposes hereof, the amount of the Expense Reimbursement included in the Stalking Horse Bidder Fee shall be deemed to be $500,000, the maximum amount set forth in Section 9.3(a)(i) of the Asset Purchase Agreement), plus an amount equal to the Master Services Fees (as defined in the Asset Purchase Agreement) paid by Purchaser which shall be estimated in good faith by the Debtor (with input from Moelis and the Committee) two days prior to the Bid Deadline.

(c)    Closing Deadline. The bid shall contain a proposed closing date that is no later than the Closing Date as defined in the Asset Purchase Agreement (the "Closing Deadline").

---

[4] The Debtor may also request physical copies of any such documents.

(d)   Bid Irrevocable. The bids shall remain binding and irrevocable until the Sale Hearing or, if the bid is the Successful Bid, until the earlier of the closing of the sale or the Closing Deadline.

(e)   No Breakup Fee. The bid must not request or entitle the Overbidder to receive any fee analogous to the Stalking Horse Bidder Fee, any transaction or breakup fee, expense reimbursement or similar fee or payment. **For the avoidance of doubt, by submitting a bid, the Overbidder agrees that it shall not be entitled to any such fee.**

(f)   Deposit. An Overbidder must provide a cashier's check payable to the Debtor, or a wire transfer to the Debtor, in either case, to be deposited into a separate debtor-in-possession account or into a segregated trust account maintained by the Debtor's bankruptcy counsel, in an amount equal to the sum of: (i) the Stalking Horse Bidder Fee (defined above) and (ii) $7,500,000, (the sum of (i) and (ii), the "Deposit"). The Overbidder shall forfeit the Deposit if (A) it is determined to be a Qualified Bidder (defined below) and withdraws or modifies its bid at any time (other than as provided herein) before the conclusion of the Auction, or (B) the Overbidder is the Successful Bidder and (x) modifies or withdraws the bid without the Debtor's consent before the consummation of the sale contemplated by the bid, or (y) breaches the Alternative Acquisition Agreement.  The Deposit shall be returned to the Overbidder (1) as soon as practicable if the bidder is not determined to be a Qualified Bidder or (2) no later than five business days following Court approval of the Sale Transaction to the Successful Bidder if the Overbidder is determined to be a Qualified Bidder but is not deemed to be the Successful Bidder. The Debtor (or its bankruptcy counsel, as the case may be) will not be required to maintain any Deposit in an interest bearing account, but any interest earned on any Deposit will be remitted to the appropriate Qualified Bidder if the Deposit is returned to the Qualified Bidder pursuant to the above.

(g)   Due Diligence. The bid must not contain any due diligence or financing contingencies, and must acknowledge and represent that (i) the Overbidder has had an opportunity to conduct any and all due diligence regarding the Debtor and the Transferred Assets before making any bids; (ii) it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Debtor and/or the Transferred Assets in making its bid; (iii) it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtor and the Transferred Assets, or the completeness of any information provided in connection therewith (in all cases, other than as set forth in the Alternative Acquisition Agreement) and (iv) it consents to be bound by the terms of these Bidding Procedures.

(h)   Identity of Bidders. The Overbidder must fully disclose the identity of each entity that will be bidding for the Transferred Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, as well as disclose the organization form and the business conducted by each entity.

(i)   Consents. The Overbidder must represent that it obtained all necessary organizational approvals to make its bid and to enter into and perform the Alternative Acquisition Agreement and include evidence of authorization and approval from the Overbidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Alternative Acquisition Agreement.

(j)   Contracts. The Overbidder shall designate an initial list of executory contracts and unexpired leases that it wishes to have assumed and assigned.

(k)    Additional Information. The Overbidder must furnish (i) information sufficient to establish that the Overbidder is capable and qualified, legally, and otherwise, of (A) unconditionally (except as set forth in the Alternative Acquisition Agreement) performing all obligations under the Alternative Acquisition Agreement, including to pay the purchase price, and (B) obtaining all required regulatory approvals to perform all of its obligations under the Alternative Acquisition Agreement and closing the transactions contemplated thereby not later than the Closing Deadline; and (ii) such other information as the Debtor or the Committee may request.

Each Person that submits a bid shall be deemed to have consented to the Debtor making the contents of such bid public, including in filings in the Court.

To be a "Qualified Bid," a bid received from an Overbidder must meet the requirements set forth above. The Debtor (with input from Moelis and the Committee) shall have the right to determine whether a bid received from an Overbidder (and any bid submitted at the Auction by an Overbidder) meets such requirements if, in the good faith opinion of the Debtor, after consulting with Moelis and the Committee, (i) the requirements set forth above are met; (ii) such bid is determined not to be materially more burdensome or conditional than the terms of the Asset Purchase Agreement; and (iii) such bid can be consummated before the Closing Deadline if selected as a Successful Bid (defined below). The Debtor (through Moelis) will notify each of the Overbidders whether its bid is a Qualified Bid as soon as practical after the Bid Deadline and before the Auction.  For the avoidance of doubt, Purchaser's bid, as set forth in the Asset Purchase Agreement, and each bid received from Purchaser at the Auction that complies with the Bidding Procedures shall be a Qualified Bid.  Purchaser and any entity that is determined by the Debtor to have submitted a Qualified Bid shall each be deemed a "Qualified Bidder."

Any entity that is not a Qualified Bidder shall not be permitted to attend and shall be disqualified from bidding for the Transferred Assets at the Auction. The Debtor (through Moelis) shall, as soon as reasonably practical after receipt of a bid that is determined to be a Qualified Bid, provide copies of such Qualified Bid to Purchaser.

### 7.    No Auction if Only One Qualified Bid

If, by the Bid Deadline, the only timely Qualified Bid received by the Debtor is from the Stalking Horse Bidder, the Debtor shall not conduct an Auction and the Stalking Horse Bidder will be deemed the Successful Bidder and its bid the Successful Bid. If this occurs, the Debtor shall proceed to request at the Sale Hearing (defined below) that the Court approve the transfer and sale of the Transferred Assets to the Stalking Horse Bidder in accordance with the Asset Purchase Agreement and request that the Sale Order be entered by the Court and that the Sale Order shall be made immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) and 6006(d) of the Bankruptcy Rules and Rule 62(g) of the Federal Rules of Civil Procedure.

### 8.    Auction

If by the Bid Deadline, more than one timely Qualified Bid has been received by the Debtor, the Debtor will conduct the Auction with all Qualified Bidders. The Auction will be held on December 18, 2015, at a location selected by the Debtor, which location will be

8

provided to all Qualified Bidders and filed with the Court. Counsel to the Committee and members of the Committee will be invited to attend the Auction.

9. **Bidding Procedures**

(a)     The following procedures will govern the Auction:

(i)     <u>Bankruptcy Court Jurisdiction.</u> All Qualified Bidders shall be deemed to have consented to the exclusive and core jurisdiction of the Court and to have waived any right to jury trial in connection with any disputes relating to the bidding process, the Auction, the transfer and sale of the Transferred Assets, and any other matter relating to, or contemplated by, the Asset Purchase Agreement and any Alternative Acquisition Agreement. Any and all disputes related to the Auction shall be determined solely by the Court with no right to appeal.

(ii)     <u>Anti-Collusion.</u> At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with any other bidder or prospective bidder, or with the Debtor with respect to the bidding process, the Auction, or the sale transaction.

(iii)     <u>Bids</u>. The bidding at the Auction shall commence at the amount of the highest or otherwise best Qualified Bid submitted by the Bid Deadline, as determined by the Debtor (with input from Moelis and the Committee). Each subsequent bid shall be in increments of no less than $500,000 and by figures which are wholly divisible by $500,000.

(iv)     <u>Calculating Bids.</u> In valuing bids, and for purposes of calculating each successive overbid by Purchaser, the Debtor shall deem each bid by an Overbidder to have been automatically reduced by the amount of the Stalking Horse Bidder Fee.

(v)     <u>Successful Bidder.</u> The Auction shall continue until there is only one offer that the Debtor (with input from Moelis and the Committee) determines, subject to Court approval, is the highest or otherwise best offer (the "<u>Successful Bid</u>") from among the bids submitted by the Qualified Bidders at the Auction. The bidder submitting such Successful Bid shall become the "<u>Successful Bidder</u>" and shall have such rights and responsibilities of the purchaser, as set forth in the Alternative Acquisition Agreement, or the Asset Purchase Agreement, as applicable. If, at the Auction's conclusion, and consistent with these Bidding Procedures, Purchaser's final bid is greater than the highest bid made by any other Qualified Bidder, the amount of Purchaser's final bid shall constitute the "<u>Aggregate Consideration</u>" under section 2.2(a) of the Asset Purchase Agreement.

(vi)     <u>Other Procedures.</u> In addition to the procedures outlined above, the Debtor (with input from Moelis and the Committee) may announce and employ at the Auction other procedural rules that are reasonable under the circumstances for conducting the Auction; *provided, however,* that such rules are (i) not materially inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Court and (ii) disclosed to each Qualified Bidder prior to the commencement of the Auction.

(b)     Within one (1) business day after the conclusion of the Auction, the Debtor shall file with the Court and serve upon all Qualified Bidders and other entities set forth in the Bidding Procedures Order a notice identifying the Successful Bidder.  If the Successful Bidder is not the Stalking Horse Bidder, the notice will summarize any material differences between the terms of the Alternative Acquisition Agreement and the Asset Purchase Agreement, and will annex a copy of the Alternative Acquisition Agreement. The notice will include the supplemental Assignment Notice, if one is required pursuant to the Bidding Procedures.

(c)     Under no circumstances shall the Debtor consider any bid made after the conclusion of the Auction.

**10.     <u>Sale Hearing</u>**

(a)     The Successful Bid will be subject to approval of the Court, through entry of a sale order (substantially in the form annexed to the Debtor's sale motion as Exhibit A) (the "<u>Sale Order</u>"), at a hearing that will take place at 9:30 a.m. PST on December 21, 2015, before the Honorable Dennis Montali in Courtroom 201, 1300 Clay Street #300, Oakland, California 94612 (the "<u>Sale Hearing</u>").  The closing of the transfer and sale of the Transferred Assets to the Successful Bidder shall occur on the date as provided in, and otherwise in accordance with, the Asset Purchase Agreement or the Alternative Acquisition Agreement of the Successful Bidder, as applicable.

(b)     Purchaser, and any other entity that becomes the Successful Bidder, shall have standing and are deemed to be parties in interest with standing to be heard on any motion, hearing or other matter related to the Auction, the Asset Purchase Agreement or any bid, or other transfer and sale of the Transferred Assets.

**11.     <u>Objections</u>**

Objections, if any, to the transfer and sale of the Transferred Assets as contemplated by the Motion (whether under the Asset Purchase Agreement or in general), must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; and (c) be filed with the clerk of the Court for the Northern District of California (or filed electronically via CM/ECF with the Court) and actually received by all of the parties entitled to receive the bid packages as set forth in section 5 above as well as counsel to  the United States Trustee, Attn: Julie M. Glosson (Julie.M.Glosson@usdoj.gov), **on or before 5:00 p.m. (Pacific Standard Time) on December 14, 2015 (the "<u>Sale Objection Deadline</u>"), except that, if there is an Auction, the Sale Objection Deadline is extended to December 20, 2015 at 12:00 p.m. (Pacific Standard Time) for just the Committee and the United States Trustee.**

The following objections may be raised orally at the Sale Hearing: (a) objections to the conduct of the Auction; (b) objections to the selection of the Successful Bidder; and (c) objections to the terms of the Alternative Acquisition Agreement, *provided, that* objections with respect to the terms of the Alternative Acquisition Agreement may only be raised with respect to terms that are materially different from the terms of the Asset Purchase Agreement.

**12.     <u>Application of the Deposit</u>**

If the Successful Bidder is not the Purchaser, then in conjunction with the closing of the Alternative Acquisition Agreement with the Successful Bidder, the Debtor shall pay to

Purchaser the Stalking Horse Bidder Fee. If the transfer and sale to such Successful Bidder does not close on or before the Closing Deadline, the amount of such Successful Bidder's Deposit shall, unless otherwise agreed to by the Debtor, be forfeited to and retained by the Debtor.

### 13. __Jurisdiction__

The Court shall retain exclusive jurisdiction over any matter or dispute relating to the transfer and sale of the Transferred Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Successful Bid, and/or any other matter that in any way relates to the foregoing.

# EXHIBIT "3"

Case: 15-31430   Doc# 82   Filed: 11/24/15   Entered: 11/25/15 11:45:26   Page 35 of 52

RON BENDER (SBN 143364)
PHILIP A. GASTEIER (SBN 130043)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; pag@lnbyb.com; myk@lnbyb.com; kjm@lnbyb.com
Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | ) Case No. 15-31430 |
| | ) |
| RDIO, INC., | ) Chapter 11 Case |
| | ) |
| Debtor and Debtor in Possession. | ) **NOTICE OF SUCCESSFUL BIDDER** |
| | ) **FROM AUCTION SALE HELD ON** |
| | ) **DECEMBER 18, 2015** |
| | ) |

PLEASE TAKE NOTICE that in accordance with the Bidding Procedures Order entered by the Court on November 24, 2015 as Docket Number ___, Rdio, Inc., chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), conducted an auction (the "Auction") on December 18, 2015, with the respect to the sale, assignment and transfer of certain of the Debtor's assets and the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases (collectively, the "Transferred Assets").  All capitalized terms which are not defined in this Notice shall have the same definitions as such terms have in the Bidding Procedures Order.

A total of ___ Qualified Bids were received by the Debtor, and a total of ___ Qualified Bidders (inclusive of the Stalking Horse Bidder) appeared at the Auction.  The identity of the Successful Bidder at the Auction is _____.  The results of the Auction were as follows:

The following is a description of the material differences between the terms of the Alternative Acquisition Agreement and the Asset Purchase Agreement.

Attached hereto is a copy of the Supplemental Assignment Notice from the Successful Bidder.

Dated: December 18, 2015     LEVENE, NEALE, BENDER, YOO &
                BRILL L.L.P.


             By: */s/ Ron Bender*
                Ron Bender
                Philip A. Gasteier
                Monica Y. Kim
                Krikor J. Meshefejian
                Levene, Neale, Bender, Yoo & Brill L.L.P.
                Proposed Attorneys for Chapter 11 Debtor
                and Debtor in Possession

# EXHIBIT "4"

RON BENDER (SBN 143364)
PHILIP A. GASTEIER (SBN 130043)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; pag@lnbyb.com; myk@lnbyb.com; kjm@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

In re:

RDIO, INC.,

       Debtor and Debtor in Possession.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 15-31430

Chapter 11 Case

**NOTICE OF DEBTOR'S PROPOSED
ASSUMPTION AND ASSIGNMENT TO
SUCCESSFUL BIDDER FROM
AUCTION SALE OF EXECUTORY
CONTRACTS AND UNEXPIRED
LEASES AND ESTABLISHING CURE
AMOUNTS**

Date: December 21, 2015
Time: 9:30 a.m.
Place: U.S. Bankruptcy Court
       Courtroom 201
       1300 Clay Street, #300
       Oakland, CA 94612
Judge: The Hon. Dennis Montali

1

PLEASE TAKE NOTICE that in accordance with the Bidding Procedures Order entered by the Court on November 24, 2015, Rdio, Inc., chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), will conduct an auction (the "Auction") on December 18, 2015, with the respect to the sale, assignment and transfer of certain of the Debtor's assets and the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases (collectively, the "Transferred Assets"). All capitalized terms which are not defined in this Notice shall have the same definitions as such terms have in the Bidding Procedures Order.

PLEASE TAKE FURTHER NOTICE that on December 21, 2015, commencing at 9:30 a.m. PST, at the above-referenced Court, a hearing will be held for the Bankruptcy Court to consider approval of (i) the Debtor's sale of the Transferred Assets to the Successful Bidder at the Auction, and (ii) the Debtor's assumption and assignment to the Successful Bidder of all of the Debtor's executory contracts and unexpired leases that the Successful Bidder wishes to assume.

PLEASE TAKE FURTHER NOTICE that attached hereto as Exhibit "1" is a schedule (the "Executory Contract/Unexpired Lease Schedule") of all of the Debtor's known executory contracts and unexpired leases and the amount of each (i) cure, if any, the Debtor believes needs to be paid to the other party to such executory contract or unexpired lease to enable the Debtor to assume and assign such particular executory contract and unexpired lease to the Successful Bidder to comply with the provisions of Section 365(b)(1)(A) of the Bankruptcy Code ("Cure Amount"), and (ii) actual pecuniary loss, if any, incurred by the other party to such executory contract or unexpired lease to enable the Debtor to assume and assign such particular executory contract and unexpired lease to the Successful Bidder to comply with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code ("Pecuniary Loss Amount").

PLEASE TAKE FURTHER NOTICE that the Executory Contract/Unexpired Lease Schedule is marked to show which executory contracts and unexpired leases the Stalking Horse Bidder has preliminarily indicated it intends to cause the Debtor to assume and assign to it if the Stalking Horse Bidder is the Successful Bidder. The Stalking Horse Bidder reserves the right to add to or delete from the Executory Contract/Unexpired Lease Schedule, and, if the Successful Bidder is someone other than the Stalking Horse Bidder, that Successful Bidder also reserves the right to add to or delete from the Executory Contract/Unexpired Lease Schedule. The Debtor will file with the Court and serve any affected counter-parties to any executory contracts and/or unexpired leases in the event of any change(s) to the Executory Contract/Unexpired Lease Schedule.

PLEASE TAKE FURTHER NOTICE that if you (i) oppose the Debtor's assumption and assignment to the Successful Bidder of your executory contract or unexpired lease, (ii) dispute the Debtor's belief as to the Cure Amount existing under your executory contract or unexpired lease, or (iii) dispute the Debtor's belief as to the Pecuniary Loss Amount existing under your executory contract or unexpired lease, you must, not later than December 14, 2015, file a written objection with the Clerk of the Bankruptcy Court for the Northern District of California, San Francisco Division, setting forth all of the bases for your objection, and you must serve your objection upon all of the following parties: (i) the Debtor's counsel, Levene, Neale, Bender, Yoo & Brill L.L.P., Attn: Ron Bender (rb@lnbyb.com) and Elliott Peters (elliott.peters@rd.io); (ii) counsel to the Stalking Horse Bidder, Wilson Sonsini Goodrich & Rosati PC, Attn: Benjamin Hoch (bhoch@wsgr.com) and Dorsey, Attn: Stephen O'Neill (oneill.stephen@dorsey.com); (iii) counsel to Iconical, Skadden, Arps, Slate, Meagher & Flom LLP, Attn: Van Durrer II (van.durrer@skadden.com) and Ron E. Meisler (Ron.Meisler@skadden.com), (iv) the U.S. Trustee, Attn: Julie M. Glosson (Julie.M.Glosson@usdoj.gov); and (v) counsel to the Committee

Pachulski Stang Ziehl & Jones LLP (Attn: John D. Fiero, jfiero@pszjlaw.com and Debra I. Grassgreen, dgrassgreen@pszjlaw.com), **on or before 5:00 p.m. PST on December 14, 2015** (the "Sale Objection Deadline").

PLEASE TAKE FURTHER NOTICE that your failure to file and serve a timely objection to the Debtor's proposed assumption and assignment to the Successful Bidder of your executory contract or unexpired lease may be deemed by the Court to constitute your consent to (i) the Debtor's assumption and assignment to the Successful Bidder of your executory contract or unexpired lease may be deemed by the Court to constitute, (ii) the Debtor's asserted Cure Amount with respect to your executory contract or unexpired lease, and (iii) the Debtor's asserted Pecuniary Loss Amount with respect to your executory contract or unexpired lease.

Dated: November 24, 2015

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

By: _/s/ Ron Bender_
Ron Bender
Philip A. Gasteier
Monica Y. Kim
Krikor J. Meshefejian
Levene, Neale, Bender, Yoo & Brill L.L.P.
Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

4

# EXHIBIT "1"

Case: 15-31430    Doc# 82    Filed: 11/24/15    Entered: 11/25/15 11:45:26    Page 44 of 52

| | Counterparty | Rdio Entity | Agreement Title | Date | Cure Amount | To Be Assumed by Pandora |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | **Advertising-Networks** | | | | | |
| 3 | Amazon | Rdio, Inc. | Master Terms and Conditions for Internet Advertising | 8/21/2014 | | |
| 4 | Amazon | Rdio, Inc. | Insertion Order | 8/19/2014 | | |
| 5 | Ampush | Rdio, Inc. | Insertion Order | 7/1/2015 | $80,692.10 | |
| 6 | Ando Media, LLC - Triton Digital | Rdio, Inc. | Services Agreement, as amended | 11/7/2013 | $124,433.74 | |
| 7 | Blackberry Corporation | Rdio, Inc. | BBM4Paid Media Customer Engagement Form | 8/7/2014 | | |
| 8 | Global Radio Services Ltd | Rdio S.à r.l. | Advertising Sales Representation Agreement | 11/17/2014 | | |
| 9 | Operative Media | Rdio, Inc. | Managed Services Schedule for Publishers | 5/2/2014 | | |
| 10 | Operative Media | Rdio, Inc. | Managed Services Schedule for Publishers | 12/1/2014 | $14,220.00 | |
| 11 | Snak Media d/b/a Represent Media | Rdio S.à r.l. | Advertising Representation Agreement | 6/3/2015 | | |
| 12 | TargetSpot, Inc. | Rdio S.à r.l. | TargetSpot Master Services Agreement | 8/12/2015 | | |
| 13 | | | | | | |
| 14 | **Partnership Agreements** | | | | | |
| 15 | Aether Things (Morse Project, Inc.) | Rdio, Inc. | API Evaluation Agreement | 11/19/2012 | | |
| 16 | Aether Things, Inc. | Rdio, Inc. | API License Agreement | 5/6/2014 | | |
| 17 | Aether Things, Inc. | Rdio, Inc. | License Agreement | 5/8/2014 | | |
| 18 | AT&T Cellular Dealership CC (a/a AG Mobile) | Rdio S.à r.l. | Pre-load, Marketing and Bundle, Distribution Agreement | 7/29/2014 | | |
| 19 | AirSmart System Co., Ltd | Rdio, Inc. | API Evaluation Agreement | 10/29/2014 | | |
| 20 | AirSmart System Co., Ltd | Rdio, Inc. | API License Agreement | 9/22/2014 | | |
| 21 | Allplay (Qualcomm/ Atheros, Inc.) | Rdio, Inc. | Allplay-Capable SAM Evaluation Agreement | 6/6/2014 | | |
| 22 | Amazon Digital Services, Inc. | Rdio, Inc. | Amazon Mobile App Distribution Agreement (as amended) | 7/18/2013 | | |
| 23 | Amazon Payments, Inc. | Rdio, Inc. | Amazon Payments Agreement (as amended) | 4/22/2013 | | |
| 24 | Apple Inc. | Rdio, Inc. | Apple Developer Agreement (Brazil) | 6/10/2014 | | |
| 25 | Apple Inc. | Rdio, Inc. | Apple Developer Program License Agreement (as amended) | 9/9/2015 | | |
| 26 | Apple Inc. | Rdio, Inc. | iOS Developer Program License Agreement (as amended) | 12/9/2012 | | Yes |
| 27 | Apple Inc. | Rdio, Inc. | CarPlay APIs Addendum to iOS Developer Program License | 10/6/2014 | | Yes |
| 28 | Apple Inc. | Rdio, Inc. | iOS Developer Program Enterprise License Agreement | 4/10/2011 | | |
| 29 | Australian Broadcasting Co. | Rdio, Inc. | API License Agreement | 3/25/2013 | | |
| 30 | AXS Digital, LLC | Rdio, Inc. | Partner Agreement | 8/26/2014 | $1,250,410.00 | |
| 31 | BandPage, Inc. | Rdio, Inc. | API Access Agreement (as amended by Side Letter Agreement dated | 5/5/2014 | | |
| 32 | Bang & Olufsen | Rdio, Inc. | API Evaluation Agreement | 12/7/2013 | | |
| 33 | Barnesandnoble.com LLC | Rdio, Inc. | NookColor Application Distribution Agreement (as amended) | 5/2/2012 | | |
| 34 | Bosch Soft Tech GmbH | Rdio, Inc. | API Evaluation Agreement | 7/1/2015 | | |
| 35 | Bosch Soft Tech GmbH | Rdio, Inc. | mySPIN Application Development and Distribution Agreement | 1/6/2015 | | |
| 36 | Bose Corporation | Rdio, Inc. | API Evaluation Agreement | 4/4/2014 | | |
| 37 | Band (Radio e Televisao Bancirantes Ltda.) | Rdio Music (Brazil) Ltda. | Advertising Sales and Platform Integration Agreement | 4/16/2014 | | |
| 38 | Caton Corp. | Rdio, Inc. | API Evaluation Agreement | 6/17/2014 | | |
| 39 | Google, Inc. (Chromecast) | Rdio, Inc. | Confidential Chromecast Development and Marketing Agreement | 3/28/2014 | | |
| 40 | Clarion Corporation of America | Rdio, Inc. | Agreement for Use of In-Vehicle Devices Application Services | 10/10/2015 | | |
| 41 | BandPage (Crowd Surge) | Rdio, Inc. | API License Agreement | 7/23/2015 | | |
| 42 | Cerus Radio Interactive (a division of Cerus | Pulser Technical Services | Integration and Support Agreement | 9/22/2015 | | |
| 43 | Cerus Radio Interactive (a division of Cerus | Rdio, Inc. | Advertising Purchase Agreement | 9/22/2015 | | |
| 44 | Cumulus Media Holdings Inc. | Pulser Media, Inc. | Advertising Sales and Platform Integration Agreement | 9/13/2013 | | |
| 45 | Cumulus Media Holdings Inc. | Rdio, Inc. | Agreement (LIVE) | 8/11/2015 | | |
| 46 | Cumulus Media Holdings Inc. | Rdio Singapore Pte. Ltd. | Integration and Support Agreement | 8/11/2015 | | |
| 47 | D&M Holdings Inc. (Denon) | Rdio, Inc. | API License Agreement | 4/17/2015 | | |
| 48 | DiGi Telecommunications Sdn Bhd | Rdio S.à r.l. | Co-Marketing Agreement | 3/13/2015 | | |
| 49 | Digicel Caribbean Limited | Rdio, Inc. | Pre-load, Marketing and Bundle, Distribution Agreement | 1/20/2015 | | |
| 50 | Discovery Vitality Pty Limited | Rdio S.à r.l. | Memorandum of Agreement - (Marketing Partnership) | 2/25/2015 | | |
| 51 | DTS, Inc. (DTS-Phones) | Rdio, Inc. | API Evaluation Agreement | 12/16/2014 | | |
| 52 | DTS, Inc. (DTS-Phones) | Rdio, Inc. | API License Agreement | 12/16/2014 | | |
| 53 | Electronic Arts | Rdio, Inc. | API License Agreement | 12/21/2012 | | |
| 54 | Facebook, Inc. (initially Karma Science, Inc.) | Rdio, Inc. | Supply Agreement (as amended) | 10/25/2012 | | |
| 55 | Fon Wireless Limited | Rdio, Inc. | API Evaluation Agreement | 6/7/2013 | | |
| 56 | Google, Inc. | Rdio, Inc. | Release (for marketing in connection with Chrome OS) | Undated | | |
| 57 | Google, Inc. | Rdio, Inc. | Device & Software Evaluation License - (Durable Deep Links) | 9/10/2013 | | |
| 58 | Google Inc. | Rdio, Inc. | Developer Distribution Agreement (Google Play) | 5/5/2015 | | |
| 59 | Harman International Industries, Incorporated | Rdio, Inc. | API Evaluation Agreement | 2/29/2012 | | |
| 60 | Harman International Industries, Incorporated | Rdio, Inc. | API License Agreement - (Aha) | 6/29/2012 | | |
| 61 | Harman International Industries, Incorporated | Rdio, Inc. | API License Agreement - (Harman Kardon) | 6/1/2015 | | |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 62 | Hisense USA Corporation | Rdio, Inc. | Licensing, Distribution and Services Agreement | 4/24/2015 | | |
| 63 | Huawei Device (Dongguan) Co., Ltd. | Rdio, Inc. | API Evaluation Agreement | 12/17/2014 | | |
| 64 | iHeartMedia + Entertainment | Rdio, Inc. | API Evaluation Agreement | 10/13/2014 | | |
| 65 | Huawei Technologies London Ltd | Rdio, Inc. | API Evaluation Agreement | 10/3/2014 | | |
| 66 | Insound USA, S.A. de C.V. | Rdio S.á.r.l | Reseller Agreement (as amended) | 3/6/2013 | | |
| 67 | JamBase | Pulser Music Services, Inc. | JamBase Feed Agreement (as amended) | 4/7/2009 | | |
| 68 | Jawbone | Rdio, Inc. | API Evaluation Agreement | 12/14/2012 | | |
| 69 | Kobo Inc. | Rdio, Inc. | Co-Marketing and License Agreement | 10/28/2011 | | |
| 70 | Last.fm Limited | Rdio, Inc. | Linking Agreement | 10/25/2010 | | |
| 71 | Lenbrook Industries Limited (Bluesound) | Rdio, Inc. | API License Agreement | 11/30/2012 | | |
| 72 | LG | Rdio, Inc. | Legally Binding Agreement (Re: LG Smart World - Click-Through | 7/23/2013 | | |
| 73 | LG | Rdio, Inc. | LG Web Application Developer Agreement (Click-Through Agreement) | Undated | | |
| 74 | Myine Electronics Inc. (d/b/a/ Livio) | Rdio, Inc. | Demonstration Agreement for App Partner | 5/5/2013 | | |
| 75 | Media Works Holdings Limited | Rdio S.á.r.l | Investment and Distribution Agreement (as amended) | 9/1/2015 | | |
| 76 | Microsoft Corporation | Rdio, Inc. | Microsoft Xbox 360 Development Kit License | 3/18/2013 | | |
| 77 | Microsoft Corporation (Ericsson) | Rdio, Inc. | Microsoft Xbox Platform Application Provider Agreement | 4/11/2013 | | |
| 78 | Microsoft Corporation | Rdio, Inc. | Microsoft Mediaroom Products Agreement | 9/30/2014 | | |
| 79 | Microsoft Corporation (Ericsson) | Rdio, Inc. | Microsoft Mediaroom Personal Server Product Use Rights to the Microsoft | 1/23/2013 | | |
| 80 | Minutrade S/A | Rdio Music (Brazil) Ltda. | Partnership Agreement | 8/10/2012 | | Yes |
| 81 | Mozilla Corporation | Rdio, Inc. | Firefox Marketplace Content Agreement | 10/13/2014 | | |
| 82 | Music Reports Inc. | Rdio, Inc. | Letter Agreement (as amended) - (MRI-w-Rdio/Agreement for Services) | 11/17/2009 | $339,235.63 | |
| 83 | MVS Radio (Stereorey Mexico, S.A.) | Rdio S.á.r.l | API License Agreement | 11/12/2014 | | |
| 84 | MVS Radio (Stereorey Mexico, S.A.) | Rdio S.á.r.l | Deal Summary | 11/12/2012 | | |
| 85 | Namec Communications | Rdio, Inc. | API License Agreement | 9/30/2014 | | |
| 86 | Parrot, S.A. | Rdio, Inc. | API License Agreement | 8/1/2014 | | |
| 87 | Parrot, S.A. | Rdio, Inc. | Distribution and License Agreement | 11/6/2013 | | |
| 88 | Pioneer Corporation | Rdio, Inc. | API License Agreement | 9/24/2014 | | |
| 89 | Pioneer Corporation | Rdio, Inc. | Co-Marketing and License Agreement (as amended) | 5/2/2011 | | |
| 90 | Pictfra, LLC | Rdio, Inc. | API License Agreement | 6/9/2014 | | |
| 91 | Prisa Radio, S.L. | Rdio, Inc. | API Evaluation Agreement | 11/18/2014 | | |
| 92 | Red Bull Media House GmbH | Rdio S.á.r.l | Digital Radio Channel Service, Ad Sales, Marketing & Promotion Agreement | 7/15/2014 | | |
| 93 | ROCKI Technology Inc | Rdio, Inc. | Marketing and License Agreement | 11/17/2014 | | |
| 94 | Roku, Inc. | Rdio, Inc. | API Evaluation Agreement | 10/20/2014 | $2,759,423.00 | Yes |
| 95 | Rovi Corporation | Rdio, Inc. | Channel Application Upgrade and Distribution Agreement (as amended) | 7/30/2014 | $93,200.00 | |
| 96 | Samsung Electronics Co., Ltd | Rdio, Inc. | API License Agreement | 3/1/2012 | | |
| 97 | Samsung Electronics Co., Ltd | Rdio, Inc. | API License Agreement (Samsung Shape) | 11/29/2013 | | |
| 98 | Shazam Media Services, Inc. | Rdio, Inc. | Insertion Order | 3/20/2014 | $1,171,118.76 | |
| 99 | Songkick.com Limited | Rdio, Inc. | Rdio <> Songkick Commercial Agreement | 9/29/2015 | | |
| 100 | Sonos, Inc. | Rdio, Inc. | Content Integration Agreement | 2/24/2015 | | |
| 101 | Sonos, Inc. | Rdio, Inc. | API Evaluation and Development License Agreement | 7/23/2015 | | |
| 102 | Sonos, Inc. | Rdio, Inc. | Insertion Order | 9/1/2015 | | |
| 103 | Sprint/United Management Company | Rdio, Inc. | Music Wholesaling Program Agreement | 8/26/2015 | $103,843.00 | |
| 104 | Stream Unlimited Engineering GmbH | Rdio, Inc. | API Evaluation Agreement | 7/12/2013 | | |
| 105 | T-Mobile USA, Inc. | Rdio, Inc. | License to Promote Streaming Music Service | 10/23/2014 | | |
| 106 | Telemar Internet Ltda (Oi) | Rdio Music (Brazil) Ltda | Co-Marketing Agreement | 3/13/2013 | | |
| 107 | Telus Communications Company | Rdio, Inc. | Application Distribution and Billing Services Agreement | 7/20/2011 | | |
| 108 | Tesla Motors Netherlands B.V. | Rdio S.á.r.l | Rdio'/esla API License, Development and Co-Operation Agreement | 1/21/2014 | | |
| 109 | Toshiba America Information Systems, Inc. | Rdio, Inc. | Software Licensing, Distribution and Revenue Share Agreement | 3/1/2012 | | |
| 110 | Twitter, Inc. | Rdio, Inc. | Rdio API Terms of Use Agreement | 4/3/2013 | | |
| 111 | Uber Technologies, Inc. | Rdio, Inc. | Uber Integration Services and Promotion Agreement | 11/11/2014 | | |
| 112 | Challenge | Rdio, Inc. | API Evaluation Agreement | 11/7/2014 | | |
| 113 | Verizon Corporate Services Group Inc. | Rdio, Inc. | Verizon Developer Community App License Agreement (as amended) | 10/13/2010 | | |
| 114 | Videotron G.P. | Rdio, Inc. | Object: Videotron's Unlimited Music Program | 7/31/2015 | | |
| 115 | ViewEquity, LLC | Rdio, Inc. | API Evaluation Agreement | 2/12/2015 | | |
| 116 | Vizio, Inc. | Rdio, Inc. | API Evaluation Agreement | 3/4/2015 | | |
| 117 | Volvo Car Corporation | Rdio, Inc. | Master Infotainment Service Agreement | 5/8/2014 | | |
| 118 | | | | | | |
| 119 | Software | | | | | |
| 120 | Compus Technology | Rdio, Inc. | Master Services Agreement | 7/25/2014 | $5,400.00 | |
| 121 | Hoefler & Frere-Jones | Rdio, Inc. | Mobile Application Agreement | 9/6/2012 | $5,499.00 | |
| 122 | Hoefler & Frere-Jones | Rdio, Inc. | Webfont Beta Terms of Service | 9/6/2012 | | |

| # | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 123 | Hoefler & Frere-Jones | Rdio, Inc. | Self-Hosted Cloud.Typography License Agreement | 5/8/2013 | | |
| 124 | Hoefler & Frere-Jones | Rdio, Inc. | Software Distribution Agreement | 8/19/2015 | | |
| 125 | Neon, LLC | Rdio, Inc. | Software License Agreement (as amended) | 9/5/2012 | | |
| 126 | Nuzira, LLC | Rdio, Inc. | Software License Master Agreement | 6/12/2014 | | Yes |
| 127 | New Relic, Inc. | Rdio, Inc. | Software License Agreement | 3/18/2014 | | |
| 128 | New Relic, Inc. | Rdio, Inc. | Trademark License Agreement | 6/12/2014 | $18,800.00 | |
| 129 | New Relic, Inc. | Rdio, Inc. | Additional Subsequent Purchase(s) Order Form | 6/25/2014 | | |
| 130 | New Relic, Inc. | Rdio, Inc. | Stand-Alone Renewal Order Form | 6/30/2015 | | |
| 131 | Pinnacle Solutions, Inc. | Rdio, Inc. | Master Services Agreement #001 | 6/18/2015 | $5,696.90 | |
| 132 | Pinnacle Solutions, Inc. | Rdio, Inc. | Pinnacle Solutions Work Order 001 | 6/22/2015 | | |
| 133 | SAS Institute Inc. | Rdio, Inc. | Master License Agreement | 12/23/2014 | $15,750.00 | |
| 134 | Solium Plan Managers LLC | Rdio, Inc. | Solium Subscription Agreement | Undated | | |
| 135 | Synacor, Inc. | Rdio, Inc. | Content Provider Agreement (as amended) | 7/21/2011 | | |
| 136 | **Data Analysis** | | | | | |
| 137 | Amplitude | Rdio, Inc. | Sonalight, Inc. (DBA Amplitude) License & Master Services Agreement Order | 5/12/2014 | $30,000.00 | Yes |
| 138 | Amprotion A.C. (Mexico) | Rdio, Inc. | Data Supply Agreement | 11/1/2014 | | |
| 139 | BMAT Licensing S.L.U. (Spain) | Rdio, Inc. | Data Supply Agreement | 7/1/2015 | | |
| 140 | Crowley Broadcast Analysis do Brasil Ltda | Rdio, Inc. | Data Supply Agreement | 10/24/2013 | | |
| 141 | GfK Chart-Track Ltd (Ireland) | Rdio, Inc. | Data Supply Agreement | 6/4/2013 | | |
| 142 | The Nielsen Company (US) LLC | Rdio, Inc. | Nielsen Media Products Data Supply Agreement (as amended) | 10/16/2011 | | |
| 143 | The Official UK Charts Company Limited | Rdio S.à.r.l. | Data Supply Agreement | 7/11/2014 | | |
| 144 | comScore | Rdio, Inc. | Letter of Confirmation | 5/30/2013 | | |
| 145 | TUNE, Inc. (MobileAppTracking Research and Strategy) | Rdio, Inc. | MobileAppTracking ("MAT") Pricing Statement | 2/5/2015 | $6,579.79 | |
| 146 | TUNE, Inc. | Rdio, Inc. | Tune Master Services Agreement (as amended) | 2/1/2015 | | |
| 147 | | | | | | |
| 148 | **Engineering** | | | | | |
| 149 | LVL Studio Inc. | Rdio, Inc. | General Service Agreement (as amended) | 10/6/2014 | $84,587.53 | Yes |
| 150 | Rovi | Rdio, Inc. | Amended and Restated Data License and Service Agreement (as amended) | 3/8/2013 | | |
| 151 | | | | | | |
| 152 | **Operations** | | | | | |
| 153 | 10gen (now MongoDB) | Rdio, Inc. | MongoDB (10gen) Terms of Service Definitions | 5/14/2013 | | |
| 154 | 10gen (now MongoDB) | Rdio, Inc. | MongoDB Documentation Release 3.0.7 | 11/15/2015 | | |
| 155 | 10gen (now MongoDB) | Rdio, Inc. | Creative Commons Attribution-NonCommercial-ShareAlike 3.0 | 11/10/2015 | | |
| 156 | Adler Shine LLP | Rdio UK Ltd. | Letter of Engagement - Non Audit Accounting Services | 11/12/2012 | | |
| 157 | Adyen B.V. | Rdio, Inc. | Merchant Agreement | 8/10/2015 | | |
| 158 | Adyen do Brasil Ltda | Rdio - Band Música Ltda. | Local Affiliate Merchant Agreement - Brazil | 8/10/2015 | | |
| 159 | American Registry for Internet Numbers, Ltd. | Rdio, Inc. | American Registry for Internet Numbers, Ltd. Service Agreement | 3/10/2011 | | |
| 160 | Baker & McKenzie LLP | Rdio, Inc. | Letter Agreement (Representation) by Baker & McKenzie LLP | 1/22/2013 | $32,973.14 | |
| 161 | Bilkom | Rdio S.à.r.l. | Application for Membership | 4/15/2012 | € 7,105.00 | |
| 162 | Bluebeak Global, Inc. | Rdio, Inc. | Letter Agreement | 8/18/2015 | | |
| 163 | Chase (Paymentech, LLC) | Rdio, Inc. | Select Merchant Payment Instrument Processing Agreement (U.S. Agreement) | 11/10/2013 | | |
| 164 | Chase (Paymentech Europe Limited) | Rdio S.à.r.l. | Select Merchant Payment Processing Agreement (European Processing) | 1/10/2012 | | |
| 165 | Cxvaalli, Swaine & Moore LLP | Rdio, Inc. | Letter Agreement (Rdio, Inc.) | 7/10/2015 | | |
| 166 | CyberSource Corporation | Pulser Music, Inc. | CyberSource Payment Solutions Agreement | 9/9/2009 | $14,641.68 | Yes |
| 167 | Fortis Partners | Rdio, Inc. | Agreement | 2/26/2014 | $38,000.00 | |
| 168 | K&J Search Consultants Pvt. Ltd. | Dhingana Ent. Pvt. Ltd. | K&J Search - Terms of Business Amended (Rdio-01.07.15) | 7/1/2015 | | |
| 169 | Lombfridge | Rdio, Inc. | Terms and Conditions | undated | | |
| 170 | Lombfridge | Rdio, Inc. | Statement of Work | 3/14/2013 | $18,672.75 | |
| 171 | Media Arts Lawyers | Rdio, Inc. | Letter Agreement (Rdio Ltd - Instructions to Act) | 3/14/2012 | | |
| 172 | Michael Simkins LLP | Rdio, Inc. | Letter Agreement (Terms of Engagement) | 4/28/2014 | $7,175.94 | |
| 173 | National Student Clearinghouse | Rdio, Inc. | National Student Clearinghouse Verification Services Agreement | 6/17/2013 | | |
| 174 | NetSource, Inc. | Rdio, Inc. | Fee Agreement | 3/16/2012 | | |
| 175 | Pachulski Stang Ziehl & Jones LLP | Pulser Media, Inc. | Retention Agreement | 12/1/2013 | | |
| 176 | Red Shed Business Advisors | Rdio Australia | Engagement Proposal | 12/4/2014 | | |
| 177 | Simfgky Law, PLLC | Rdio, Inc. | Letter Agreement (Confirmation of Engagement Agreement) | 3/24/2014 | $805.00 | |
| 178 | The Artemis Group Ltd. | Rdio, Inc. | Letter Agreement | 3/24/2014 | | |
| 179 | Vindicia, Inc. | Rdio, Inc. | Trail Agreement | 9/11/2015 | | |
| 180 | | | | | | |
| 181 | **Tech Operations (Back End)** | | | | | |
| 182 | Akamai Technologies, Inc. | Rdio, Inc. | Service Order Form | 9/1/2014 | $38,456.88 | |
| 183 | Amazon Web Services | Rdio, Inc. | AWS Customer Services Agreement | undated | $91,511.38 | |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 184 | BitJy Inc. | Rdio, Inc. | Order Form | 7/15/2015 | $5,970.00 | |
| 185 | BitJy Inc. | Rdio, Inc. | Bitly Enterprise Agreement | 7/15/2011 | $9,600.00 | Yes |
| 186 | Chef Software, Inc. (formerly OpsCode) | Rdio, Inc. | Invoice | 5/6/2015 | | |
| 187 | Chef Software, Inc. (formerly OpsCode) | Rdio, Inc. | Chef Support Service Level Agreement | 11/12/2015 | | |
| 188 | Chef Software, Inc. (formerly OpsCode) | Rdio, Inc. | Opscode Chef Order Form for Software Products, Support, and Maintenance | 5/9/2014 | | |
| 189 | Chef Software, Inc. (formerly OpsCode) | Rdio, Inc. | Online Master License and Services Agreement | 11/11/2015 | | |
| 190 | Consolidated Independent Limited | Rdio S.à r.l | Agreement | 7/29/2014 | $60,000 | |
| 191 | Dell Financial Services LLC | Rdio, Inc. | Master Lease Agreement (as amended via Schedule and Exhibit A) | 7/23/2011 | $599,647.84 | Yes |
| 192 | Intel Corporation | Rdio, Inc. | Intel AppUp Developer Program Porting and Optimization License Agreement | 1/8/2013 | | |
| 193 | InterVision | Rdio, Inc. | Terms & Conditions | 8/2/2012 | $130,908.27 | |
| 194 | InterVision-EMC (formerly Silion) | Rdio, Inc. | Sales Quote | 3/31/2015 | | |
| 195 | InterVision-FS | Rdio, Inc. | Intervision Sales Quote-RDIO | 10/29/2015 | | |
| 196 | Kaltura, Inc. | Rdio, Inc. | Kaltura Agreement and Terms of Service (as amended) | 11/6/2014 | $240,000.00 | |
| 197 | Kaltura, Inc. | Rdio, Inc. | Data Processing Agreement | 9/14/2015 | | |
| 198 | LinkShare Corporation | Rdio, Inc. | LinkShare Master Services Agreement | 2/28/2011 | $4,303.95 | |
| 199 | LinkShare Corporation | Rdio, Inc. | Order Form and Pricing Schedule (as amended) | 2/28/2011 | | |
| 200 | Mosaic Network LLC | Rdio, Inc. | Service Order Form | 6/8/2011 | $253,940.85 | |
| 201 | Mosaic Network LLC | Rdio, Inc. | Mosaic Network Enterprise Services | 6/8/2011 | | |
| 202 | PagerDuty, Inc. | Rdio, Inc. | Order Form | 12/13/2014 | | |
| 203 | Percona, LLC | Rdio, Inc. | Persona Statement of Work | 6/29/2015 | | |
| 204 | Segment.io | Rdio, Inc. | License & Master Service Agreement Order Form | 5/21/2014 | | Yes |
| 205 | Unbabel | Rdio, Inc. | Terms of Service | undated | ($17,721.65) | Yes |
| 206 | Verizon Digital Media Services - EdgeCast | Rdio, Inc. | Master Service Agreement | 7/1/2010 | $79,777.18 | Yes |
| 207 | Verizon Digital Media Services - EdgeCast | Rdio, Inc. | Service Order | 5/1/2012 | | |
| 208 | Verizon Digital Media Services - EdgeCast | Rdio, Inc. | Invoice | 10/1/2015 | | |
| 209 | Xamarin Inc. | Rdio, Inc. | Rdio - Xamarin Contractor Agreement | 10/25/2014 | $40,000.00 | Yes |
| 210 | | | | | | |
| 211 | **Marketing Agreements** | | | | | |
| 212 | Andrew Combs-Coin Records | Rdio, Inc. | Performance Agreement and Release Form | 9/1/2015 | | |
| 213 | Berztown Production Services | Rdio, Inc. | License Agreement for Berztown Branding Production Services (as amended) | 12/12/2014 | $64,000.00 | |
| 214 | CA Media Digital (India) Pvt. Ltd. (Finance) | Dhingana Ent. Pvt. Ltd. | | 7/7/2015 | | |
| 215 | CA Media Academy of Recording Arts & Sciences | Rdio, Inc. | Sponsorship Agreement | 2/11/2015 | | |
| 216 | Chimney Group Asia Pacific Pty. Ltd. | Rdio S.à r.l | Chimney Group Asia Pacific Production and Creative Agreement for Rdio Start | 5/19/2015 | € 2,102.43 | |
| 217 | Chimney Group Asia Pacific Pty. Ltd. | Rdio S.à r.l | Chimney Group Asia Pacific Production Agreement for Rdio | 4/29/2015 | | |
| 218 | China Basin Ballpark Company, LLC | Rdio, Inc. | Sponsorship Agreement Rdio 2015 | 4/4/2015 | $125,000.00 | |
| 219 | Demi May-CarPark Inc. | Rdio, Inc. | Rdio Live Session Agreement | 10/15/2012 | | |
| 220 | Diageo Americas, Inc. | Rdio, Inc. | Sponsorship Agreement | 3/18/2013 | | |
| 221 | Duncan Channon | Rdio, Inc. | Master Services Agreement (and SOWs) | 5/1/2015 | $74,328.90 | |
| 222 | Easy Leaves | Rdio, Inc. | Master Use Video License | 8/12/2015 | | |
| 223 | Easy Leaves | Rdio, Inc. | Synchronization Use Video License | 8/12/2015 | | |
| 224 | Entercom Communications | Rdio, Inc. | Content Contractor Agreement (as modified by applicable SOWs) | 7/1/2014 | $36,422.69 | |
| 225 | Fetch Media Ltd. | Rdio, Inc. | Mobile Marketing Services Agreement | 1/6/2015 | | |
| 226 | Flock Advertising Mexico, S. de R.L. de C.V. | Rdio S.à r.l | Master Services Agreement (and SOWs) | 1/15/2015 | € 44,777.76 | |
| 227 | Google, Inc. | Rdio UK Limited | Master Service Agreement | 5/1/2015 | € 91,892.92 | |
| 228 | Green Copper-Celebrate Brooklyn 2015 | Rdio, Inc. | Mobile Application Development Agreement | 3/16/2015 | $30,950.00 | |
| 229 | Green Copper-FunFunFun | Rdio, Inc. | Mobile Application Development Agreement | 11/16/2015 | | |
| 230 | Green Copper-Riotfest | Rdio, Inc. | Mobile Application Development Agreement | 4/27/2013 | | |
| 231 | Hopeless Records, Inc. | Rdio, Inc. | Indemnification Agreement for Hopeless/The Used & Rdio, Inc. | 3/27/2012 | | |
| 232 | Hotwire Public Relations Limited (UK) | Rdio UK Limited | Hotwire Contract - Public Relations Consultancy Terms of Business | 2/1/2015 | € 27,492.09 | |
| 233 | Instrument | Rdio, Inc. | Independent Contractor Agreement (as modified by applicable SOWs) | 11/15/2014 | | |
| 234 | Jim James-ATO Records | Rdio, Inc. | Agreement (Live Sessions Agreement) | 2/20/2013 | | |
| 235 | Joywave-Hollywood Records | Rdio, Inc. | Performance Agreement and Release Form | 8/27/2015 | | |
| 236 | Michael Ray-Warner Music Nashville | Rdio, Inc. | Performance Agreement and Release Form | 9/11/2015 | | |
| 237 | Mill Sterling PR | Rdio S.à r.l | Advertising Agency Service Agreement | 9/1/2014 | € 6,774.57 | |
| 238 | Missy Higgins-Vagrant Records | Rdio, Inc. | Rdio Live Session Agreement | 10/26/2012 | | |
| 239 | Mob Hill, LLC | Rdio, Inc. | Sponsorship Agreement | 6/6/2013 | | |
| 240 | Neon Gold Records, LLP | Rdio, Inc. | Master Use Video License (as amended) | 4/23/2013 | | |
| 241 | Passenger-Network Music Group | Rdio, Inc. | Rdio Live Session Agreement | 10/26/2012 | | |
| 242 | PMG Presse - Monitor GmbH | Rdio, Inc. | Contract for the Supply/Licensing of Digital Content and Utilization of a | 5/14/2012 | | |
| 243 | Pulp-PR, LLC | Rdio, Inc. | Engagement Letter | 8/15/2012 | $41,000.00 | |
| 244 | Rulers-Warner Music Nashville | Rdio, Inc. | Performance Agreement and Release Form | 7/2/2015 | | |

| # | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 246 | Rogers & Cowan | Rdio, Inc. | Agreement for Professional Services (as modified by applicable SOWs) | 10/27/2011 | $82,314.39 | |
| 247 | Ryo Weaver-Universal Music Group | Rdio, Inc. | Performance Agreement and Release Form | 7/10/2015 | | |
| 248 | San Francisco Giants Baseball Club | Rdio, Inc. | Performance Agreement and Release Form | 3/26/2015 | | |
| 250 | San Francisco Film Society | Rdio, Inc. | Letter Of Agreement | 3/5/2015 | | |
| 249 | Scott Helman-Warner Music Canada | Rdio, Inc. | Performance Agreement and Release Form | 10/2/2015 | | |
| 250 | Sohn-4AD-Beggars Group | Rdio, Inc. | Performance Agreement and Release Form | 5/23/2014 | | |
| 251 | Steve McQueens | Rdio, Inc. | Performance Agreement and Release Form | 4/30/2015 | | |
| 252 | Stump Fluff, LLC | Rdio, Inc. | Sponsorship Agreement | 8/19/2015 | $25,270 | |
| 253 | Taboola Europe Limited | Rdio UK Limited | Digital Advertising Insertion Order | 6/12/2015 | € 1,222.83 | |
| 254 | Tel Shir-Tunecore inc. | Rdio, Inc. | Performance Agreement and Release Form | 10/2/2015 | | |
| 255 | Tunecore, Inc. | Rdio, Inc. | Synchronization Use Video License (as amended) | 3/30/2015 | $271,513.03 | |
| 257 | Turn Inc. | Rdio, Inc. | Insertion Order | 8/1/2015 | $92,757.82 | |
| 258 | **Consultancy Agreements** | | | | | |
| 259 | Bean, Bryan | Rdio Inc. | Independent Contractor Agreement | 9/8/2014 | | |
| 260 | Chu, Natasha | Rdio S.à r.l | Independent Contractor Agreement | 1/12/2015 | | |
| 261 | Chua, Robin | Rdio Singapore Pte. Ltd. | Independent Contractor Agreement | 6/1/2015 | | |
| 262 | Fernic, Sean | Rdio Music Canada, ULC | Independent Contractor Agreement | 4/13/2015 | | |
| 263 | Frankowski, Karl | Rdio Inc. | Independent Contractor Agreement | 4/20/2015 | | |
| 264 | Garcia, Alex | Rdio S.à r.l | Independent Contractor Agreement | 2/24/2015 | € 6,563.06 | |
| 265 | Gramlich, Benjamin | Rdio Inc. | Independent Contractor Agreement | 6/1/2015 | | |
| 266 | Iguchi.com, Inc. | Rdio, Inc. | Independent Contractor Agreement | 10/8/2014 | | |
| 267 | I23 Productions (Danny K) | Rdio S.à r.l | Independent Consultant Agreement (as amended) | 5/1/2015 | | |
| 268 | Keun, Steven | Rdio, Inc. | Independent Contractor Agreement | 4/23/2015 | | |
| 269 | Libertad KK | Rdio, Inc. | Independent Consultant Agreement | 1/1/2015 | | |
| 270 | Light, Clayton | Rdio Inc. | Independent Consultant Agreement | 6/24/2015 | | |
| 271 | Mair, Sebastian | Rdio S.à r.l | Independent Contractor Agreement | 6/1/2014 | | |
| 272 | MannGroup | Rdio, Inc. | Consulting Agreement (as amended) | 3/26/2014 | | |
| 273 | McGilvrey LLP | Rdio, Inc. | Master International Tax Consulting Agreement | 9/25/2014 | $23,431 | |
| 274 | Merrills/Reflector | Rdio, Inc. | Independent Contractor Agreement | 6/30/2014 | | |
| 276 | inventive | Rdio, Inc. | Independent Consultant Agreement | 8/30/2014 | | |
| 276 | Palmez, Tamara | Rdio, Inc. | Independent Consultant Agreement | 11/1/2012 | $4,000.00 | |
| 277 | Plovo, Michael | Rdio UK Ltd | Independent Contractor Agreement | 8/31/2014 | € 3,436.43 | |
| 278 | Robbie, Enrique | Rdio S.à r.l | Independent Contractor Agreement | 11/3/2014 | € 14,063.70 | |
| 279 | Simmons, Alexandra | Rdio S.à r.l | Independent Contractor Agreement | 6/30/2015 | | |
| 280 | Stessco Consulting | Rdio, Inc. | Independent Consultant Agreement (as amended) | 2/22/2011 | | |
| 281 | Vicira, Bruno | Rdio Inc. | Independent Consultant Agreement | 12/3/2012 | | |
| 282 | Yu, Gary | Rdio Inc. | Independent Contractor Agreement | 6/8/2015 | | |
| 283 | Yustina, Nadia | Rdio S.à r.l | Independent Consultant Agreement | 2/2/2015 | | |
| 285 | **Leases** | | | | | |
| 286 | The Marblay Media Group Pty Ltd | Rdio Music Australia Pty | License Agreement - (Lease for Australia Offices) | 12/17/2014 | | |
| 287 | Prime Centre and Developres Pvt. Ltd. | Dhingama Entertainment Pvt. | Leave and License Agreement - (Lease for Punc. India Offices) | 7/21/2014 | | |
| 288 | 807 Broadway Revival, LLC | Rdio, Inc. | Lease Agreement - (Lease for Minnesota Offices) | 5/29/2015 | | |
| 289 | DP 1550 Bryant, LLC (formerly AE-Hamm's | Rdio, Inc. | Office Lease (as amended) - (Lease for San Francisco Offices) | 5/1/2014 | $115,515.40 | |
| 290 | Alioto 1550 Bryant Venture LP | Rdio, Inc. | Activity Authorization | 8/20/2012 | | |
| 291 | Central Precopto Del Cotelli S.A.P.I. de C.V. | Rdio S.à r.l | Contrato de Prestacion de Servicios de Oficina | 3/1/2014 | | |
| 292 | Gem Bar & Lounge Pte Ltd | Rdio S.à r.l | Tenancy Agreement - (Lease for Singapore Offices) | 11/1/2014 | € 6,250.01 | |
| 293 | Shaftesbury Carnaby Limited | Rdio UK Limited | Lease of 3rd Floor, Silver House, 31-35 Beak St, London W1 - (Lease for | 6/8/2015 | | |
| 294 | La societe NCH Luxembourg S.A. | Rdio S.à r.l | Contrat De Presations De Services, Misc A Disposition De Bureaux - (Lease | 1/1/2014 | | |
| 295 | Digital 720 2nd, LLC | Rdio, Inc. | Lease Agreement (as amended, including work orders) - (Lease for Server | 2/17/2012 | $190,089.63 | Yes |
| 296 | Switch | Rdio, Inc. | Colocation Facilities Agreement and Service Order | 3/26/2013 | $13,079.73 | |
| 297 | Switch | Rdio, Inc. | Service Level Agreement | 3/26/2015 | | |
| 299 | **Pulser Media-Corporate** | | | | | |
| 300 | IO Labs, LLC | Rdio, Inc. | Operating Agreement | 6/19/2015 | | |
| 301 | Rdio-Band Musica | Rdio Music (Brazil) Ltda. | Constituiao da Sociedade | 4/16/2014 | | |
| 302 | I23 Productions (Danny K) | Pulser Media, Inc. | Warrant to Purchase Common Stock | 12/14/2012 | | |
| 303 | Anthony Bay | Rdio, Inc. | Indemnification Agreement | 11/14/2013 | | |

| | | | | | |
|---|---|---|---|---|---|
| 304 | Apogo Amalgamated, Inc. | Pulsar Media, Inc. | Intellectual Property Agreement | 10/22/2014 | |
| 305 | The Stockholders | Rdio, Inc. | Amended and Restated Stockholders Agreement | 5/28/2010 | |
| 306 | Panini Brasil Televisão Bancárimes Ltda.) | Rdio S.à.r.l | Assignment Agreement of Rdio-Band Musical Ltda. | 4/16/2014 | |
| 307 | Cumulus Media - Television Bancárimes | Pulsar Media, Inc. | Common Stock Purchase of Pulsar Media, Inc. | 9/13/2013 | |
| 308 | Cumulus Media Holdings Inc. | Pulsar Media, Inc. | Securities Purchase Agreement | 9/13/2013 | |
| 309 | Cumulus Media Holdings Inc. | Pulsar Media, Inc. | Letter Agreement (Re: Securities Purchase Agreement) | 9/13/2013 | |
| 310 | Cumulus Media Holdings Inc. | Pulsar Media, Inc. | Letter Agreement (Re: Pulsar Media, Inc. Debt Facility) | 12/22/2014 | |
| 311 | Shaw Cablesystems G.P. | Pulsar Media, Inc. | Platform Integration Agreement | 4/16/2014 | |
| 312 | Shaw Ventures Ltd. | Pulsar Media, Inc. | Securities Purchase Agreement | 4/16/2014 | |
| 313 | Shaw Ventures Ltd. | Pulsar Media, Inc. | Warrant to Purchase Common Stock of Pulsar Media, Inc. | 4/16/2014 | |
| 314 | Shaw Ventures Ltd. | Pulsar Media, Inc. | Letter Agreement (as amended) - (Re: Securities Purchase Agreement) | 4/16/2014 | |
| 315 | Shaw Ventures Ltd. | Pulsar Media, Inc. | Letter Agreement - (Re: Piggyback Registration Rights) | 4/16/2013 | |
| 316 | | | | | |
| 317 | **Publishing Agreements** | | | | |
| 318 | AMRA-Kobalt | Rdio S.à.r.l | Online Licence Agreement | 10/14/2015 | |
| 319 | ARESA | Rdio S.à.r.l | Licence for the Provision of Online and/or Mobile Music Services to the | 12/18/2013 | |
| 320 | PAECOL | Rdio S.à.r.l | Licensing Agreement Online/Mobile Use of Musical Works | 1/11/2012 | |
| 321 | ACUM | Rdio S.à.r.l | Licence Agreement (as amended) | 1/19/2015 | |
| 322 | AEPI | Rdio S.à.r.l | Rdio Launch Agreement (as amended) | 5/8/2014 | |
| 323 | AKM | Rdio S.à.r.l | Rdio Launch Agreement (as amended) | 2/25/2014 | |
| 324 | APRA-AMCOS | Rdio, Inc. | Advertising Funded Service Music Streaming Licence Agreement | 10/1/2013 | |
| 325 | APRA-AMCOS | Rdio, Inc. | Subscription Music Service Licence Agreement (as amended) | 12/12/2011 | $9,662.39 |
| 326 | APRA-AMCOS | Rdio, Inc. | Subscription Music Service Licence Agreement | 6/2/2014 | $8,693.45 |
| 327 | Artisjus | Rdio S.à.r.l | Rdio Launch Agreement | 7/17/2014 | |
| 328 | Buma Stemra | Rdio S.à.r.l | Agreement for Digital Music Distribution (as amended) | 7/12/2012 | |
| 329 | CAPASSO | Rdio S.à.r.l | Joint Online Licence Agreement | 4/20/2015 | |
| 330 | CASH | Rdio S.à.r.l | Licence Agreement | 6/10/2013 | |
| 331 | CELAS | Rdio, Inc. | CELAS Licence for the Provision of Online and Mobile Music Services to the | 4/17/2012 | |
| 332 | COMPASS | Rdio S.à.r.l | Licence Agreement | 5/19/2014 | |
| 333 | EMI Publishing Asia | Rdio S.à.r.l | Licence Agreement | 12/2/2013 | |
| 334 | FILSCAP | Rdio S.à.r.l | Licence Agreement | 1/29/2014 | |
| 335 | Forward Publishing | Rdio S.à.r.l | Licence Agreement | 4/24/2014 | |
| 336 | GEMA | Rdio S.à.r.l | GEMA Contract for Music on Demand | 4/16/2013 | |
| 337 | HDS ZAMP | Rdio S.à.r.l | Agreement on Making Available to the Public of Copyrighted Musical Works | 4/10/2014 | |
| 338 | JASRAC | Rdio Japan | JASRAC Agreement (agreement in Japanese) | 1/1/2013 | |
| 339 | KCI Karya | Rdio S.à.r.l | Musical Works Licence Agreement | 10/9/2013 | |
| 340 | KODA | Rdio, Inc. | Agreement on Use of Musical Works in Subscription-based Music Service in | 2/27/2012 | |
| 341 | Latin Autor | Rdio S.à.r.l | Licence Agreement (as amended) | 12/11/2013 | |
| 342 | MACP | Rdio S.à.r.l | Musical Works Licence Agreement (Digital Products) | 3/5/2013 | |
| 343 | MCPS | Rdio S.à.r.l | Licence Agreement | 9/7/2013 | |
| 344 | MCT | Rdio S.à.r.l | Musical Work Licence Contract | 8/1/2013 | |
| 345 | MUST | Rdio S.à.r.l | Public Transmission Agreement of Musical Works | 5/13/2014 | |
| 346 | OSA | Rdio S.à.r.l | Collective Licence Agreement | 2/15/2014 | |
| 347 | Peer Music | Rdio S.à.r.l | Licence Agreement | 12/1/2013 | |
| 348 | Peer Music | Rdio S.à.r.l | Publishing Rights Agreement | 8/14/2015 | |
| 349 | Playax | Rdio Music (Brasil) Ltda. | Copyright Licence Agreement | 8/11/2015 | |
| 350 | PRS for Music | Rdio S.à.r.l | PRS for Music UK and Pan-European Online Music Licence (as amended) | 3/4/2014 | €65,890.54 |
| 351 | PEDL (Warner Chappell) | Rdio S.à.r.l | PEDL Licence Agreement (as amended) | 1/16/2012 | |
| 352 | SABAM | Rdio S.à.r.l | Contract for the on-line distribution of musical works in streaming and | 12/17/2012 | |
| 353 | SACEM | Rdio S.à.r.l | Agreement for the Authorisation for Listening on Demand and Downloading on | 11/28/2013 | |
| 354 | SACM | Rdio S.à.r.l | Non-exclusive Licence Contract for the Use of Musical Works in Digital | 4/2/2013 | €41,387.86 |
| 355 | SADAIC | Rdio S.à.r.l | Licence Agreement (as amended) | 6/17/2015 | |
| 356 | SAZAS | Rdio S.à.r.l | Rdio Launch Agreement (as amended) | 9/1/2014 | |
| 357 | SGAE | Rdio S.à.r.l | Licence Agreement for Music On Demand (as amended) | 2/22/2012 | |
| 358 | SIAE | Rdio S.à.r.l | Rdio Heads of Terms (as amended) | 2/8/2013 | |
| 359 | SOCAN | Rdio, Inc. | Experimental Licence Agreement (as amended) | 12/9/2014 | $92,832.47 |
| 360 | SOLAR | Rdio S.à.r.l | Multi-Territory Licence for the Provision of Online and Mobile Music | 8/28/2013 | |
| 361 | Sony ATV | Rdio S.à.r.l | Supplementary Agreement | 12/26/2013 | |
| 362 | Sony ATV | Rdio S.à.r.l | Licence Agreement | 12/12/2013 | |
| 363 | Sony ATV | Rdio S.à.r.l | Publishing Rights Agreement | 12/12/2013 | |
| 364 | SOZA | Rdio S.à.r.l | Rdio Launch Agreement | 10/27/2014 | € 2,400.00 |

| A | B | C | D | E | F |
|---|---|---|---|---|---|
| 365 SUISA | Rdio S.a.r.l. | Rdio Launch Interim Agreement (expired but still under negotiation) | 6/20/2013 | | |
| 366 UBC | Rdio Music (Brasil) Ltda. | Contrato de Licenciamento | 9/6/2012 | | |
| 367 UBC | Rdio, Inc. | Subscription Service Agreement (as amended) | 6/6/2011 | | |
| 368 UMPI | Rdio Music (Brasil) Ltda. | Licence Agreement (as amended) | 11/28/2013 | | |
| 369 WAMI | Rdio S.a.r.l. | Licence Agreement for Authorization for Listening on Demand and Downloading on | 8/9/2013 | | |
| 370 Warner Chappell | Rdio S.a.r.l. | Musical Works Licence Agreement | 1/1/2014 | | |
| 371 Warner Chappell | Rdio, Inc. | Music Publishing Rights Agreement (Singapore) | 6/25/2014 | | |
| 372 ZAIKS | Rdio S.a.r.l. | Licence Agreement (US) | 5/14/2014 | | |
| 373 ADDAF | Rdio Music (Brasil) Ltda. | Copyright Licence Agreement | 3/3/2015 | | |
| 374 | | | | | |
| 375 **Labels** | | | | | |
| 376 Consolidated Independent Limited | Rdio S.a.r.l. | Agreement | 7/24/2014 | $2,989.78 | |
| 377 664 Records | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement (as | 6/6/2013 | $4,856.79 | |
| 378 A-Train Entertainment | Rdio, Inc. | Content Distribution Agreement | 2/1/2015 | $51.13 | |
| 379 Apprivo OU | Rdio S.a.r.l. / Rdio, Inc. | Content Distribution Agreement (as amended) | 5/27/2014 | | |
| 380 Arcade Fire Music | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 3/16/2012 | | |
| 381 Artist First Digital S.r.l. | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $203.19 | |
| 382 AWAL | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement (as | 1/4/2011 | | |
| 383 Believe Digital SAS | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 7/24/2013 | | |
| 384 Benten | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 12/11/2012 | | |
| 385 Black Hole Recordings B.V. | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $591.74 | |
| 386 Botanic (Space Shower Networks, Inc.) | Rdio, Inc. | Subscription Service and Permanent Donload Distribution Agreement | 11/12/2013 | | |
| 387 Cascul Digital | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | | |
| 388 Castel Upload SA DE CV | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | | |
| 389 Cash Music | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 2/20/2013 | | |
| 390 Catapult Reservatory LLC | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $3,269.64 | |
| 391 CD Baby (Audio & Video Labs, Inc.) | Rdio, Inc. | Content Distribution Agreement | 5/1/2015 | $70,490.78 | |
| 392 Cinq Music Group (Urban Digital Records LLC) | Rdio, Inc. | Content Distribution Agreement (as amended) | 8/1/2014 | | |
| 393 Cobalt Music | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $268.08 | |
| 394 Cold Busted Record Company, Inc. | Rdio, Inc. | Content Distribution Agreement | 5/23/2014 | $29.83 | |
| 395 Cosco-Deal d.o.o. | Rdio, Inc. | Content Distribution Agreement | 1/1/2015 | $97.83 | |
| 396 Danceka GmbH | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $650.89 | |
| 397 DashGo, Inc. | Rdio, Inc. | Content Distribution Agreement (as amended) | 9/1/2014 | $5,050.38 | |
| 398 Digitalpressure.com, Inc. | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $155.32 | |
| 399 Disques Passeport | Rdio S.a.r.l. | Content Distribution Agreement | 9/1/2014 | $284.60 | |
| 400 Distrokid (PK Interactive LLC) | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $19,353.44 | |
| 401 e-Muzyka S.A. | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 11/30/2013 | $791.16 | |
| 402 E3 Media Pvt. Ltd | Rdio, Inc. | Content Distribution Agreement | 8/1/2015 | $0.38 | |
| 403 Empire Distribution | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $14,964.94 | |
| 404 EPM Online | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $97.83 | |
| 405 Eurostar Latino S.A. | Rdio, Inc. | Content Distribution Agreement (as amended) | 7/23/2014 | $313.47 | |
| 406 finetunes GmbH | Rdio, Inc. | Content Distribution Agreement | 5/1/2015 | $6,680.56 | |
| 407 Firestarter Music | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $47.58 | |
| 408 Forced Exposure, Inc. | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 3/31/2012 | $54.73 | |
| 409 GNP (Gema Nada Pertiwi) | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 9/17/2013 | $0.78 | |
| 410 Golden Dynamic Enterprises Limited | Rdio S.a.r.l. | Content Distribution Agreement | 8/1/2014 | $124.27 | |
| 411 GoodleGo GmbH | Rdio, Inc. | Content Distribution Agreement | 9/6/2014 | $5,183.30 | |
| 412 Goyal Music | Rdio, Inc. | Content Distribution Agreement | 12/1/2014 | $2.63 | |
| 413 Heaven 11 LLC | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 6/1/2013 | | |
| 414 Hillsong Music Australia | Rdio S.a.r.l. / Rdio, Inc. | Content Distribution Agreement | 9/18/2014 | $426.85 | |
| 415 House of Scandinavia ApS | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $74.71 | |
| 416 IIP-DiPS b.v. | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement (as | 5/30/2011 | | |
| 417 iMusica S.A. | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $133.32 | |
| 418 Independent Digital Sp. Z o.o. | Rdio S.a.r.l. | Content Distribution Agreement | 9/13/2013 | $0.02 | |
| 419 Isolation Network d/b/a Ingrooves | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 11/1/2012 | $130,908.27 | |
| 420 Iricom (Rights Communications Ltd.) | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $47.81 | |
| 421 JYP Entertainment Corporation | Rdio, Inc. | Content Distribution Agreement | 6/1/2015 | $28.61 | |
| 422 KDigital Media | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 2/25/2014 | | |
| 423 KSR Corporation | Rdio, Inc. | Content Distribution Agreement | 6/14/2012 | | |
| 424 La Cupula Music SL | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 9/1/2014 | $1,003.04 | |
| 425 Loudr (rediscover, Inc.) | Rdio, Inc. | Content Distribution Agreement (as amended) | 8/1/2014 | $1,562.34 | |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 426 | Love Da Group Co., Ltd | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement (as | 1/29/2013 | $33.18 | |
| 427 | Manual Music | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 5/17/2013 | $103.59 | |
| 428 | Mapo Records | Rdio S.a.r.l. / Rdio, Inc. | Content Distribution Agreement (as amended) | 7/12/2014 | | $17.85 |
| 429 | Maximum Music LLC (d/b/a Freddie Records) | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | | $10.00 |
| 430 | Mayer Psagz Vright GbR (d/b/a Kompakt) | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | | |
| 431 | Mazzika (Digital Sound S.A.E.) | Rdio S.a.r.l. | Content Distribution Agreement | 11/26/2014 | $3.46 | |
| 432 | MBOX Ltd | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 5/27/2014 | $684.90 | |
| 433 | Merlin BV | Rdio, Inc., | Subscription Service and Permanent Download Distribution Agreement (as | 12/21/2010 | $271,219.33 | |
| 434 | Merlin BV | Rdio, Inc. | Warrant to Purchase Common Stock of Rdio, Inc. | 12/21/2010 | | |
| 435 | MGM Distribution Pty Ltd | Rdio, Inc. | Content Distribution Agreement | 8/1/2014 | $1,893.27 | |
| 436 | MK Music (MK Publicita Produces) | Rdio, Inc. | Content Distribution Agreement | 8/19/2013 | $104.45 | |
| 437 | MKS Label Group | Rdio S.a.r.l. | Content Distribution Agreement (as amended) | 4/24/2013 | | $72.80 |
| 438 | Mobile 1 Music | Rdio S.a.r.l. | Content Distribution Agreement | 5/17/2014 | | $1.80 |
| 439 | Modular Sun | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 10/16/2013 | $2,168.65 | |
| 440 | Music Kidd (p.Dy (and BonOhbion via amendment | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement (as | 2/27/2014 | $356.95 | |
| 441 | MusiKator (PT Cerahati Digital Media) | Rdio, Inc. | Content Distribution Agreement | 11/21/2011 | $5.58 | |
| 442 | Musiqware Ltd | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 11/21/2011 | | |
| 443 | One Stop Music (OSM) Berhad | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 9/1/2014 | $29.74 | |
| 444 | Orchard Enterprises NY, Inc. | Rdio, Inc. | Content Distribution Agreement | 1/31/2013 | $14,220.00 | |
| 445 | Pison Contents, Inc. | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 2/7/2014 | $29.74 | |
| 446 | Plasmapod | Rdio, Inc. | Content Distribution Agreement | 12/12/2014 | $91.75 | |
| 447 | Pony Canyon | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 8/1/2013 | $2,224.36 | |
| 448 | Rams Ltd (La Vidzone) | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | | $1.80 |
| 449 | Rebeat Digital GmbH | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $3,783.48 | |
| 450 | Record Union (DFP Group AB) | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $1,282.30 | |
| 451 | Regency Media Pty Ltd (t/a Shock Ent) | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | | |
| 452 | REGGAEfnc Limited | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 12/12/2014 | | |
| 453 | Republic of Music Ltd. | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $579.52 | |
| 454 | Revelator, Inc. | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $5.02 | |
| 455 | Roba Music Verlag Gmbh | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $887.03 | |
| 456 | Rock Mobile Corporation | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 11/18/2013 | | |
| 457 | Rocket Group Pty Ltd | Rdio S.a.r.l. | Content Distribution Agreement | 5/29/2014 | $19.80 | |
| 458 | RoadzNote Ltd | Rdio, Inc. | Content Distribution Agreement | 11/20/2014 | $61,281.69 | |
| 459 | Samjyam Digital Entertainment Pvt. Ltd. | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 3/20/2013 | | |
| 460 | See Music (Hong Kong) Intl Ltd | Rdio, Inc. | Content Distribution Agreement | 1/23/2014 | | |
| 461 | Seed (Another Venture Ltd) | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $7,925.31 | |
| 462 | Select (Groupe Archambault Inc) | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 12/31/2013 | $3,095.37 | |
| 463 | Solution One Holding Co. Ltd. | Rdio S.a.r.l. | Content Distribution Agreement (as amended) | 6/2/2014 | $5.86 | |
| 464 | Sam Livre | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement (as | 10/31/2011 | $0.16 | |
| 465 | Sony Music Entertainment | Rdio Music (Hrazil) Lda. | Content Distribution Agreement (as amended) | 5/28/2010 | $2,599,232.82 | |
| 466 | Sony Music Entertainment | Rdio, Inc. | Content Distribution Agreement (as amended) | 5/28/2010 | | |
| 467 | Sony Music Entertainment | Rdio, Inc. | Stock Acquisition Agreement | 1/31/2012 | | |
| 468 | SRL Networks London Limited | Rdio S.a.r.l. | Warrant to Purchase Equity Securities of Rdio, Inc. | 5/16/2014 | $1.75 | |
| 469 | Sun Entertainment Corporation | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $519.41 | |
| 470 | Soulpaxzm Inc. | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $585.86 | |
| 471 | Sweet N Low Music | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $72.19 | |
| 472 | Symphonic Distribution | Rdio, Inc. | Content Distribution Agreement | 1/5/2015 | $3,137.56 | |
| 473 | Super Cassttes Industries Pvt.Ltd (T-Series) | Rdio, Inc. | Content License Agreement | 1/5/2015 | $311,000.00 | |
| 474 | The Source BV | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $2,081.83 | |
| 475 | Tips Industries Ltd | Rdio, Inc. | Content Distribution Agreement | 2/5/2015 | $237.77 | |
| 476 | Tophine Digital Co. Ltd. | Rdio S.a.r.l. | Subscription Service and Permanent Download Distribution Agreement | 3/1/2013 | | |
| 477 | Triple Vision Record Distribution | Rdio, Inc. | Content Distribution Agreement (as amended) | 7/31/2014 | $160.54 | |
| 478 | Tuff Gong International | Rdio, Inc. | Content Distribution Agreement | 3/25/2015 | $1.14 | |
| 479 | TuneCore Inc. | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement (as | 7/23/2012 | $271,513.03 | |
| 480 | TuneGo (Anthem Digital Media, Inc.) | Rdio, Inc. | Content Distribution Agreement | 2/20/2015 | | |
| 481 | Unisys Infosolutions Pvt. Ltd. | Rdio, Inc. | Content Distribution Agreement | 12/10/2014 | $567.73 | |
| 482 | UMG Recordings, Inc. | Rdio, Inc. | Agreement for the Inclusion of Universal Sound Recordings in Online, Ob- | 5/20/2010 | $590,724.06 | |
| 483 | Universal Music Investments, Inc. | Rdio, Inc. | Joinder Agreement | 10/25/2010 | | |
| 484 | Universal Music Investments, Inc. | Rdio, Inc. | Stock Acquisition Agreement | 10/25/2010 | | |
| 485 | Universal International Music BV | Rdio, Inc. | Digital Product Agreement (as amended) | 11/1/2011 | | |
| 486 | Universal International Music BV | Rdio, Inc. | Joinder Agreement | 2/22/2012 | | |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 487 | Universal International Music BV | Rdio, Inc. | Stock Acquisition Agreement | 2/22/2012 | | |
| 488 | Valkyrian Digital Limited | Rdio S.à r.l. | Subscription Service and Permanent Download Distribution Agreement | 7/18/2013 | $539.38 | |
| 489 | Warner Digital (Xtinge Group) | Rdio, Inc. | Subscription Service and Permanent Download Distribution Agreement | 7/10/2012 | | |
| 490 | Warner Music, Inc., WEA International Inc., Warner | Rdio, Inc. | Amended and Restated Subscription Services Agreement (as amended) | 1/1/2013 | | |
| 491 | Warner Music, Inc. | Rdio, Inc. | Stock Acquisition Agreement | 5/28/2010 | $782,909.22 | |
| 492 | W.FO Distribution | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $2.79 | |
| 493 | Worx (Label Worx Ltd.) | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $51,662.18 | |
| 494 | Xelon Entertainment Pty. Ltd. | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $376.22 | |
| 495 | Zquik World Wide | Rdio, Inc. | Content Distribution Agreement | 9/1/2014 | $3,189.17 | |
| 496 | | | | | | |
| 497 | **Corporate Agreements** | | | | | |
| 498 | Concur Technologies | Rdio, Inc. | Business Services Agreement | 1/31/2014 | | |
| 499 | Concur Technologies | Rdio, Inc. | Sales Order Form | 1/31/2014 | | |
| 500 | Frosch Travel Management | Rdio, Inc. | Travel Management Agreement | 2014 | | |
| 501 | Iconical Investments II LP | Pulser Media, Inc. | Convertible Secured Promissory Note | 8/28/2015 | | |
| 502 | Iconical Investments II LP | Pulser Media, Inc. | Convertible Secured Promissory Note (as amended) | 12/19/2014 | | |
| 503 | Iconical Investments II LP | Pulser Media, Inc. | Convertible Secured Promissory Note (as amended) | 1/27/2015 | | |
| 504 | Iconical Investments II LP | Pulser Media, Inc. | Security Agreement | 12/19/2014 | | |
| 505 | Mochs & Company LLC | Pulser Media, Inc. | Letter Agreement | 9/30/2014 | | |
| 506 | Anderson Tax LLC | Rdio, Inc. | Engagement Letter | 11/5/2014 | | |
| 507 | Spotify | Rdio, Inc. | Letter Agreement | 4/29/2015 | $6,250.00 | |
| 508 | | | | | | |
| 509 | **Insurance Agreements** | | | | | |
| 510 | National Union Fire Insurance Company of | Rdio, Inc., Pulser Media, | Insurance Policy (Directors, Officers and Employment Practices Liability) | 2/5/2015 | | |
| 511 | Starr Indemnity & Liability Company | Rdio, Inc., Pulser Media, | Insurance Policy (Directors and Officers Excess S2MxS2M) | 2/5/2015 | | |
| 512 | XL Specialty Insurance Company | Rdio, Inc., Pulser Media, | Insurance Policy (Directors and Officers Excess S2MxS4M) | 2/5/2015 | | |
| 513 | ACE American Insurance Company | Rdio, Inc., Pulser Media, | Insurance Policy (Foreign Liability) | 6/5/2014 | | |
| 514 | ACE American Insurance Company | Rdio, Inc., Pulser Media, | Insurance Policy (Kidnap and Extortion) | 6/5/2014 | | |
| 515 | Illinois Union Insurance Company | Rdio, Inc., Pulser Media, | Insurance Policy (Technology Errors and Omissions Liability) | 12/10/2014 | | |
| 516 | Hanover Insurance Company | Rdio, Inc., Pulser Media, | Insurance Policy (General, Property, Auto, EDP) | 12/22/2014 | | |
| 517 | Hanover Insurance Company | Rdio, Inc., Pulser Media, | Insurance Policy (Umbrella) | 12/22/2014 | | |
| 518 | Hartford Fire Insurance Company | Rdio, Inc., Pulser Media, | Insurance Policy (Bond - 401k Profit Sharing Plan and Trust) | 5/20/2014 | | |