**Entered on Docket**
**December 11, 2015**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: December 10, 2015

_[signature]_

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

1  RON BENDER (SBN 143364)
   PHILIP A. GASTEIER (SBN 130043)
2  MONICA Y. KIM (SBN 180139)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
3  LEVENE, NEALE, BENDER, YOO & ~~PHILLIPS~~ L.L.P.
   10250 Constellation Boulevard, Suite 1~~7~~
4  Los Angeles, California 90067
   Telephone: (310) 229-1234
5  Facsimile: (310) 229-1244
   Email: rb@lnbyb.com; pag@lnbyb.com,
6  myk@lnbyb.com; kjm@lnbyb.com

7  Proposed Attorneys for Chapter 11 Debtor
   and Debtor in Possession

8

9              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA
10                SAN FRANCISCO DIVISION

11  In re                           Case No. 15-31430

12  RDIO, INC.,                     Chapter 11

13                Debtor and Debtor  **FINAL ORDER:**
                  in Possession.
14                                   **(I)    AUTHORIZING DEBTOR TO OBTAIN**
                                             **POSTPETITION FINANCING PURSUANT**
15                                           **TO 11 U.S.C. §§ 105, 362, 363, AND 364;**

16                                   **(II)   GRANTING LIENS AND**
                                             **SUPERPRIORITY CLAIMS TO**
17                                           **POSTPETITION LENDER PURSUANT**
                                             **TO 11 U.S.C. §§ 364 AND 507;**
18
                                     **(III)  AUTHORIZING USE OF CASH**
19                                           **COLLATERAL PURSUANT TO 11 U.S.C.**
                                             **§ 363; AND**
20
                                     **(IV)   PROVIDING ADEQUATE PROTECTION**
21                                           **TO PREPETITION SECURED PARTIES**
                                             **PURSUANT TO 11 U.S.C. §§ 361, 362, 363,**
22                                           **364, AND 507**

23                                   DATE:    December 10, 2015
                                     TIME:    10:00 a.m. PST
24                                   PLACE:   U.S. Bankruptcy Court
                                             235 Pine St., Courtroom 22
25                                           San Francisco, CA 94101

26                                   JUDGE:   Hon. Dennis Montali

27

28

                                      1

Upon the motion (the "**Motion**"), dated November 16, 2015, of Rdio, Inc. (the "**Borrower**" or the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), pursuant to sections 105(a), 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9029-1 of the Bankruptcy Local Rules of the Bankruptcy Court (the "**Local Rules**") seeking, among other things, entry of an interim order (the "**Interim DIP Order**") and a final order (this "**Final DIP Order**"); and the Court having considered the Motion, the exhibits attached thereto, the Declaration of Maikao Grare in Support of Certain First-Day Motions, dated as of November 16, 2015 (the "**First Day Declaration**"), the Declaration of Elliot Peters in Support of the Motion, sworn to as of November 16, 2015 (the "**Peters Declaration**"), and the Declaration of Joseph Miller in Support of the Motion (the "**Miller Declaration**"), sworn to as of November 20, 2015; and a hearing to consider entry of this Final DIP Order having been held before the Court on November 18, 2015 and November 23, 2015 (the "**Interim Hearing**"); and the Court having entered the Interim Order on November 25, 2015 [Docket No. 87]; and a hearing to consider entry of the Final Order (the "**Final Hearing**") having been held before the Court on December 10, 2015; and upon all of the pleadings filed with the Court, all evidence presented in support of this Final DIP Order, the arguments of counsel stated on the record of the Final Hearing, and all of the proceedings held before the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

    IT IS HEREBY FOUND, DETERMINED, ORDERED, AND ADJUDGED, that:

    1.    **Motion Granted.** The Motion is GRANTED, on a final basis, on the terms and conditions set forth herein.

    2.    **Jurisdiction and Venue.** This Court has jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2

3. **Notice.** Given the nature of the relief requested in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rules 2002 and 4001 and all applicable Local Bankruptcy Rules in all respects, and no other or further notice is necessary.

4. **Debtor's Stipulations.** Subject to paragraph 18 of this Final DIP Order, the Debtor admits, stipulates, and agrees that:

    (a) Prior to the Petition Date, the Debtor entered into that the following debt facilities:

        (i) That certain Note Purchase Agreement (the "**First Lien Note Purchase Agreement**") dated as of October 19, 2015 by and among Rdio, Inc., Inconical Investments II LP, as purchaser (the "**Prepetition First Lien Noteholder**"), and Iconical Investments II LP, as collateral agent (the "**Prepetition First Lien Collateral Agent**" and, together with the Prepetition First Lien Noteholder, the "**Prepetition First Lien Secured Parties**"). Pursuant to the First Lien Note Purchase Agreement, the Debtor made and issued to the Prepetition First Lien Noteholder that certain Secured Promissory Note in the maximum aggregate amount of $5,000,000 (the "**Prepetition First Lien Note**"); and

        (ii) That certain Third Amended and Restated Secured Promissory Note (the "**Prepetition Second Lien Note**" and, together with the Prepetition First Lien Note, the "**Prepetition Notes**") effective as of September 21, 2012 and amended and restated as of July 10, 2015 among Rdio, Inc., as borrower, and Pulser Media, Inc., as lender (the "**Prepetition Second Lien Noteholder**"), in the maximum aggregate amount of $208,000,000.

The First Lien Note Purchase Agreement and the Prepetition Notes are valid and binding agreements and obligations of the Debtor. The Debtor's indebtedness under the Prepetition Notes as of the Petition Date (the "**Prepetition Indebtedness**") includes any and all principal amounts owing or outstanding under the Prepetition Notes, interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable fees and expenses of attorneys, accountants, and financial advisors to the extent chargeable or reimbursable pursuant to the Prepetition Notes or related agreements).

    (b) Pursuant to the Prepetition Notes, the Debtor was, as of the Petition Date, indebted to the Prepetition First Lien Noteholder under the Prepetition First Lien Note in the aggregate principal amount of approximately $4,213,467 plus all accrued interest, fees, and other

3

amounts due and payable thereunder, and was indebted to the Prepetition Second Lien Noteholder under the Prepetition Second Lien Note in the aggregate principal amount of approximately $186,024,000, plus all accrued interest, fees, and other amounts due and payable thereunder. The Prepetition Indebtedness, including the amounts specified in this subparagraph 4(b), constitutes the legal, valid, and binding obligations of the Debtor, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Indebtedness. The Debtor has not asserted, nor shall it assert, any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Indebtedness. The Prepetition Indebtedness and any amounts previously paid to any Prepetition Secured Party (as defined below) pursuant to the terms of the Prepetition Notes on account thereof or with respect thereto are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in this Final DIP Order or the other DIP Documents.

(c)     The relative priorities of the Prepetition Indebtedness under each of the Prepetition Notes, and the relative rights of the Prepetition Secured Parties (as defined below), is governed by that certain Intercreditor Agreement dated as of October 19, 2015 between the Prepetition First Lien Collateral Agent and the Prepetition Second Lien Noteholder (the "**Prepetition Intercreditor Agreement**").

(d)     To secure the Prepetition Indebtedness under the Prepetition First Lien Note, the Debtor entered into that certain Security Agreement, dated as of October 19, 2015 (the "**Prepetition First Lien Security Agreement**") by the Debtor and Pulser Media, Inc., as grantors, in favor of Prepetition First Lien Collateral Agent. Pursuant to the Prepetition First Lien Security Agreement, the Debtor granted security interests in, and continuing liens on (collectively, the "**Prepetition First Liens**"), substantially all property and assets of the Debtor (the "**Prepetition Collateral**") to and/or for the Prepetition First Lien Secured Parties. Pursuant to the Prepetition Second Lien Note (together with the Prepetition First Lien Security Agreement, as it relates to the

4

granting of security interests and liens and related matters, and the Prepetition Intercreditor Agreement, the "**Prepetition Collateral Documents**"), the Debtor granted security interests in, and continuing liens on (collectively, the "**Prepetition Second Liens**" and, together with the Prepetition First Liens, the "**Prepetition Liens**"), the Prepetition Collateral to and/or for the Prepetition Second Lien Noteholder. The Prepetition Collateral Documents, together with the Prepetition Notes and the Prepetition First Lien Note Purchase Agreement, are collectively referred to herein as the "**Prepetition Financing Documents**".

(e)     Pursuant to the Prepetition Intercreditor Agreement, the Prepetition First Liens rank senior in lien priority to the Prepetition Second Liens. The Prepetition Collateral includes any Cash Collateral (as defined below) and collateral in or upon which a lien or other security interest has been granted in favor of or for the benefit of the applicable Prepetition Secured Parties in connection with, pursuant to, or under the Prepetition Financing Documents to which such Prepetition Secured Party is a party that existed as of the Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits.

(f)     The Prepetition Collateral Documents are valid and binding agreements and obligations of the Debtor, and the Prepetition Liens constitute valid, binding, enforceable, and perfected security interests and "liens", as that term is defined Bankruptcy Code section 101(37) ("**Liens**"), which are not subject to avoidance, recharacterization, recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in this Final DIP Order or the other DIP Documents.

(g)     (i) The Prepetition Indebtedness under the Prepetition Financing Documents shall constitute allowed, secured prepetition claims for all purposes in the Chapter 11 Case and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceeding if the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code or in any proceedings related to any of the foregoing (a "**Successor Case**"), (ii) the Prepetition Liens shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination (except as provided in this Final DIP Order or the other DIP Documents) or avoidance for all purposes in the Chapter 11 Case and any Successor Case, and (iii) the Prepetition Indebtedness, the Prepetition

5

Liens, and any prior payments on account of or with respect to the Prepetition Indebtedness shall not be subject to any other or further claim, cause of action, objection, contest, setoff, defense, or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of the Debtor, except as provided in this Final DIP Order or the other DIP Documents.

**5.** **Findings Regarding the DIP Financing.**

(a) An immediate and critical need exists for the Borrower to obtain postpetition financing and use Cash Collateral (as defined below) to continue the operation of its business. However, the use of cash that is property of the Debtor and that constitutes "cash collateral" as defined by section 363(a) of the Bankruptcy Code, including any and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds of any collateral pledged pursuant the Liens and security interests granted to the Prepetition Secured Parties that is property of the Debtor ("**Cash Collateral**") alone would be insufficient to meet the Borrower's immediate postpetition liquidity needs.

(b) As discussed in the First Day Declaration and the Peters Declaration, the Borrower is unable to obtain the required funds (i) in the forms of (A) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (B) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (C) unsecured debt having the priority afforded by section 364(c)(l) of the Bankruptcy Code, or (D) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code, or (ii) on terms more favorable than those embodied in the DIP Term Sheet and the other DIP Documents. The DIP Lender is prepared to provide postpetition financing to the Debtor solely on the terms set forth in the DIP Term Sheet and the other DIP Documents (the "**DIP Financing**").

(c) The terms of the DIP Financing are fair, just, and reasonable under the circumstances, reflect the Debtor's exercise of its reasonable business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms of the DIP Financing have been negotiated in good faith and at arm's length by and among the Borrower and the DIP Lender. Any credit extended or other indebtedness or liabilities arising

6

under, in respect of, or in connection with the DIP Financing, the DIP Term Sheet, the Interim DIP Order, this Final DIP Order, or any other DIP Document, shall be deemed to have been extended in "good faith" by the DIP Lender as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections afforded by section 364(e) of the Bankruptcy Code, and the DIP Lender's claims, the DIP Superpriority Claims (as defined below), the DIP Liens (as defined below), and other protections granted pursuant to the Interim DIP Order and this Final DIP Order (and, subject to entry by the Court, the Final DIP Order), and the other DIP Documents, shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim DIP Order or this Final DIP Order or any portion thereof or hereof is vacated, reversed, amended, or modified, on appeal or otherwise.

(d)     The relief requested in the Motion is necessary, essential, and appropriate for the management and preservation of the Debtor's assets and properties and is in the best interests of the Debtor, its estate, and its creditors.

6.     **Authorization of the DIP Financing.**

(a)     The DIP Documents, including the DIP Term Sheet attached hereto as **Exhibit A** and the Budget through December 31, 2015, attached hereto as **Exhibit B**, are approved on a final basis, and the Borrower is hereby authorized to execute and enter into, deliver, and perform all obligations under, the DIP Documents. This Final DIP Order and the other DIP Documents shall govern the financial and credit accommodations to be provided to the Borrower by the DIP Lender in connection with the DIP Financing. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Term Sheet, if defined therein, and, otherwise, the meanings ascribed to them in the Motion.

(b)     The Borrower is hereby immediately authorized to borrow money pursuant to the DIP Documents up to $3,000,000 under the DIP Facility (inclusive of amounts previously borrowed thereunder pursuant to the Interim DIP Order), which shall be used solely as expressly provided in this Final DIP Order and the other applicable DIP Documents, including the Budget. The Debtor is authorized to pay and perform all "DIP Obligations" as that term is defined below.

7

(c)     So long as no DIP Termination Event (as defined below) has occurred, the Debtor shall be authorized to use the proceeds of the DIP Loans in accordance with the Budget and the other applicable DIP Documents, subject to Permitted Variance.  The Budget may be modified or extended with the written consent of each of (i) the DIP Lender and (ii) the Prepetition Secured Parties (as defined below), in each of their sole discretion, and without further order of the Court; *provided*, *however*, that the Debtor shall provide seven (7) calendar days' notice of such proposed modifications or extensions to counsel to the Committee, and if the Committee objects to such modifications within such seven (7) calendar day period (notice thereof to be transmitted by email to counsel for each of the Debtor, the DIP Lender, and the Prepetition Secured Parties), the modification or extensions shall be effective only upon the withdrawal of the Committee's objection or a further order of the Court (it being agreed that the Debtor shall be entitled to an emergency hearing on the earliest available date). If the Committee objects to any proposed modifications or extensions to the Budget, and such objection is neither withdrawn nor overruled by the Court, the Debtor shall nonetheless be permitted to use the proceeds of DIP Loans and/or Cash Collateral (x) consistent with the then-existing Budget for the remainder of the period encompassed by such Budget, as though no modification or extension had been proposed.  To the extent a "consumer privacy ombudsman," as such term is used in section 332 of the Bankruptcy Code, is appointed in the Chapter 11 Case, the DIP Lender and the Prepetition Secured Parties shall meet and confer in good faith with the U.S. Trustee to negotiate an appropriate accommodation in the Budget for such consumer privacy ombudsman.  All parties-in-interest reserve their rights to support or oppose the appointment of the consumer privacy ombudsman.

(d)     All of the DIP Liens and the Adequate Protection Liens (each as defined below) shall be effective and perfected as of the date of entry of the Interim DIP Order without the necessity of the execution, recording, or filing of mortgages, security agreements, pledge agreements, financing statements, or other agreements or instruments.

(e)     The DIP Term Sheet and the DIP Obligations (as defined below) constitute valid, binding, and non-avoidable obligations of the Debtor enforceable against it, and its successors and assigns, and each person or entity party to the DIP Documents in accordance with

8

the respective terms of the Interim DIP Order, this Final DIP Order, and the other DIP Documents, and shall survive the dismissal of any of the Chapter 11 Case or the conversion of any of the Chapter 11 Case to a Successor Case.

(f)     No obligation, payment, transfer, or grant of security under the Interim DIP Order, the Final DIP Order, or the other DIP Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity, except as provided in this Final DIP Order or the other DIP Documents.

(g)     The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application, or order of the Court to the extent necessary to permit the DIP Lender, subject in all respects to the DIP Documents, to perform any act authorized or permitted under or by virtue of this Final DIP Order or any of the other DIP Documents, including, without limitation, (i) to implement the DIP Financing authorized by the Interim DIP Order and this Final DIP Order and pursuant to the terms of the DIP Documents, (ii) to take any act to create, validate, evidence, attach, or perfect any Lien, security interest, right, or claim in the DIP Collateral, and (iii) to assess, charge, collect, advance, deduct, and receive payments with respect to the respective DIP Obligations, including, without limitation, all principal, interest, fees, costs, and expenses permitted under the DIP Documents, and apply such payments to the respective DIP Obligations pursuant to this Final DIP Order and the other DIP Documents.

7.     **DIP Superpriority Claims.**  Subject in all respects to paragraph 8 below, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Obligations shall constitute (without the need to file a proof of claim) superpriority claims (the "**DIP Superpriority Claims**") against the Debtor, with priority over any and all administrative expenses of the Debtor, whether now existing or hereafter arising or incurred, of any kind whatsoever, including any and all administrative expenses

9

or other claims of the kind specified in or arising under sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c), 507, 546(c), 552(b), 726, 1113, 1114, or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment, whether now in existence or hereafter incurred by the Debtor, and shall at all times be senior to the rights of the Debtor, the Debtor's estate, and any successor trustee, estate representative, or any creditor, in the Chapter 11 Case or any Successor Case. The DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition assets of the Debtor, including, but not limited to, the DIP Collateral and the Prepetition Collateral; *provided*, *however*, that, the DIP Superpriority Claims shall be not payable from the proceeds of Avoidance Actions.

**8.** **DIP Liens.**

(a) As security for the full and timely payment of the DIP Obligations, the DIP Lender is hereby granted, pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable, and fully perfected security interests in and liens and mortgages (collectively, the "**DIP Liens**") upon all DIP Collateral, which shall (i) constitute first-priority security interests in and Liens upon all DIP Collateral that, subject to clause (ii) below, is not otherwise subject to any valid, enforceable, and non-avoidable Liens, which Liens are not subject to subordination, in existence on the Petition Date, and were either properly perfected as of the Petition Date or subsequently perfected pursuant to section 546(b) of the Bankruptcy Code (collectively, the "**Permitted Senior Liens**"), (ii) be senior to and prime the Prepetition Liens on Prepetition Collateral, (iii) be senior to and prime all Adequate Protection Liens (as defined below), and (iv) be subordinate only to the Carve Out and the Permitted Senior Liens. Without in any way limiting the generality of the foregoing, the DIP Lender shall be deemed to have "control" over all deposit accounts of the Debtor (including, for the avoidance of doubt, any debtor-in-possession deposit accounts opened postpetition) for all purposes of perfection under the Uniform Commercial Code. Notwithstanding the foregoing, the DIP Lender shall not receive perfected security interests in, nor Liens on, Avoidance Actions or the proceeds thereof.

10

(b)     The DIP Liens shall be effective as of the entry of the Interim DIP Order.

9.     **Priority of Liens.**

(a)     The DIP Liens and the DIP Superpriority Claims are and shall be at all times senior and prior in all respects to the Adequate Protection Liens (as defined below) and the Prepetition Liens on the DIP Collateral.

(b)     The DIP Liens shall constitute valid, enforceable, non-avoidable, and duly perfected first-priority security interests in and Liens upon the DIP Collateral, junior and subject only to any Permitted Senior Liens (but only with respect to property that was encumbered by Permitted Senior Liens on the Petition Date); any adequate protection liens granted to the holders of Permitted Senior Liens on the collateral securing such Permitted Senior Liens; and the Carve Out.

(c)     The DIP Liens shall not be (i) subject to any Lien that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) except as to the Permitted Senior Liens (but only with respect to property that was encumbered by Permitted Senior Liens on the Petition Date), subordinated to or made *pari passu* with any other Lien under section 364(d) of the Bankruptcy Code or otherwise, including by any order heretofore or hereafter entered in the Chapter 11 Case or any Successor Case.  Except as expressly permitted in the respective DIP Documents and absent full payment and satisfaction of all obligations of the Debtor under the DIP Facility, the Borrower shall not (x) grant or impose any Liens on the DIP Collateral or (y) except as permitted in the respective DIP Documents, prime or seek to prime the DIP Liens and shall not offer any other parties any Lien on the DIP Collateral.  In addition, the Borrower shall not incur, create, assume, become, or be liable in any manner with respect to, or permit to exist, any secured indebtedness, except as expressly permitted under the DIP Documents and the Budget.

10.     **Validity of Liens.**

(a)     In no event shall (i) any Lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code, or (ii) any person or entity who pays (or through the extension of credit to the Debtor, causes to be paid)

11

any of the respective DIP Obligations, be subrogated, in whole or in part, to any rights, remedies, claims, privileges, Liens, or security interests granted in favor of, or conferred upon the DIP Lender by the terms of the Interim DIP Order, this Final DIP Order, or any of the respective DIP Documents, until all of the DIP Obligations are paid in full in cash in accordance with this Final DIP Order or any of the respective DIP Documents.

(b) The DIP Liens and the DIP Superpriority Claims shall continue in any Successor Case for the Debtor under any chapter of the Bankruptcy Code, and all Liens, security interests, and claims shall maintain their priority as provided in this Final DIP Order. If an order dismissing the Chapter 11 Case, pursuant to section 1112 of the Bankruptcy Code or otherwise, is at any time entered, such order shall provide that the DIP Liens and the DIP Superpriority Claims shall continue in full force and effect, shall remain binding on all parties in interest in the Chapter 11 Case, and shall maintain their priorities as provided in this Final DIP Order, until all DIP Obligations under the DIP Documents have been paid and satisfied in full and in cash. Notwithstanding the dismissal of the Chapter 11 Case, this Court shall retain jurisdiction with respect to enforcing the DIP Liens and the DIP Superpriority Claims.

**11.** <u>**Use of Cash Collateral**</u>.

(a) Subject to the terms and conditions set forth in this Final DIP Order, including paragraph 12 hereof, and the Budget, and effective as of the entry of the Interim DIP Order, the Debtor is authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use Cash Collateral (i) in the ordinary course of the Debtor's business, (ii) to pay reasonable professional fees, expenses, and disbursements related to services provided in connection with the Chapter 11 Case, including, without limitation, to the retained professionals under Bankruptcy Code sections 327, 328, and 330 and pursuant to paragraph 17 below, and (iii) to pay all fees required to be paid to the Clerk of this Court and to the U.S. Trustee under 28 U.S.C. § 1930(a), *provided, however,* that the Debtor's authorization to use Cash Collateral shall immediately terminate upon the expiration of the Default Notice Period (as defined below) following the occurrence of a Cash Collateral Termination Event (as defined below).

Case: 15-31430   Doc# 122   Filed: 12/10/15   Entered: 12/11/15 12:32:41   Page 12 of 60

**12.**     **Restriction on Use of Funds.**     Notwithstanding anything in this Final DIP Order, any other DIP Documents, or any other order by this Court to the contrary, no proceeds of the DIP Financing, Cash Collateral, Prepetition Collateral, or DIP Collateral, and no portion of the Carve Out, may be used in the Chapter 11 Case or any other proceeding of any kind, or in any jurisdiction, directly or indirectly by any Debtor, or any other person or entity, to (a) object to, contest, or raise any defense to, or assert any Challenge (as defined below) to, the, validity, perfection, priority, extent, or enforceability of any amounts due under, the DIP Financing, the DIP Documents, the DIP Collateral, the Prepetition Indebtedness, the Prepetition Financing Documents, or the Prepetition Collateral, or the liens or claims granted under the Prepetition Financing Documents, this Final DIP Order, or any other DIP Documents, including the DIP Liens and the DIP Superpriority Claims; (b) investigate, assert, or prosecute any claims, defenses, or causes of action (including, without limitation, any claims or causes of action under chapter 5 of the Bankruptcy Code) or any Challenge (as defined below) against the DIP Lender, the Prepetition Secured Parties, or any of their respective present and former predecessors, successors, assigns, affiliates, members, partners, managers, current and former equity holders, officers, agents, employees, attorneys and affiliates, except as set forth in paragraphs 18, 22, and 25(b); (c) prevent, hinder, or otherwise delay the DIP Lender or the Prepetition Secured Parties' assertion, enforcement, or realization against or upon Cash Collateral or the DIP Collateral, in accordance with this Final DIP Order, the other DIP Documents, and the Prepetition Financing Documents, except as set forth in paragraphs 18, 22, and 25(b); (d) seek to modify any of the rights granted to the DIP Lender or the Prepetition Secured Parties hereunder or under the DIP Documents or the Prepetition Financing Documents; or (e) take any other action prohibited by the DIP Term Sheet; *provided, however,* that not more than $50,000 in the aggregate may be used to pay any allowed fees of a Committee and professionals retained by such Committee incurred in connection with pursuing a Challenge (as defined below) (the "**Investigation Budget**").

**13.**     **Termination of DIP Financing and Cash Collateral.**

(a)     Subject to the Carve Out and paragraph 25 hereof, the Debtor's authorization to use the DIP Financing shall automatically and immediately terminate upon the occurrence of a

13

"**DIP Termination Event**", which shall mean the earliest to occur of (i) the occurrence of an Event of Default; (ii) the occurrence of a Maturity Date as that term is defined in the DIP Term Sheet; and (iii) the date on which this Final DIP Order is no longer in full force and effect.

(b)     Subject to the Carve Out and paragraph 25 hereof, the Debtor's authorization to use Cash Collateral shall automatically and immediately terminate five (5) business days after the provision of written notice to the Debtor (with a copy of such notice provided to counsel for the Debtor, counsel to the Committee, and the U.S. Trustee) (the "**Default Notice Period**") of any of the following (each, a "**Cash Collateral Termination Event**"):

(i)     The occurrence of an Event of Default with respect to the DIP Facility;

(ii)     June 30, 2016 (unless extended with the written consent of each Prepetition Secured Party, and the Committee, which extension thereof shall be effective without further application or approval by the Court);

(iii)     The failure by the Debtor to perform or comply with any term, condition, covenant, or obligation (including a payment obligation) contained in the Interim DIP Order or Final DIP Order, on its part to be performed or complied with where any such failure to perform or comply shall not be remedied within three (3) business days from notice of default;

(iv)     Except as permitted in the Interim DIP Order or Final DIP Order, the entry of any order of the Court granting to any third party a superpriority claim or lien *pari passu* with or senior to that granted to the Prepetition Secured Parties on account of the Adequate Protection Obligations (as defined below);

(v)     The Debtor shall make any payment of principal or interest or otherwise on account of any indebtedness or payables other than the DIP Obligations under the DIP Facility, the Prepetition Indebtedness, or as otherwise permitted by the Budget approved by the DIP Lender (until the DIP Obligations are indefeasibly paid in full in cash) and each Prepetition Secured Party;

(vi)     As of any Reporting Date, the Debtor's cumulative cash disbursements from the period from the Petition Date through the end of any calendar month exceed 115% of the amount included in the Budget (i.e., exceed scheduled disbursements by more than 15%);

(vii)     The entry of an order converting the Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the Debtor filing a motion or not opposing a motion seeking such relief;

(viii)     The entry of any order in the Debtor's Chapter 11 Case or any Successor Case, which order constitutes the stay, modification, or reversal of the

14

Interim DIP Order or Final DIP Order or which otherwise affects the effectiveness of the Interim DIP Order or Final DIP Order, or the commencement of an appeal of the Interim DIP Order or Final DIP Order;

(ix)    The entry of an order in the Debtor's Chapter 11 Case appointing any examiner having expanded powers or a trustee to operate all or any part of the Debtor's business;

(x)     The entry of an order in the Debtor's Chapter 11 Case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any property, including the collateral pledged pursuant to the DIP Facility and the Prepetition Liens, of the Debtor or to commence or continue any prepetition litigation against the Debtor involving potential liability not covered by insurance, in excess of $500,000 in the aggregate;

(xi)    Any judgment or order as to postpetition liability or debt for the payment of money in excess of $500,000 shall be rendered against the Debtor individually or in the aggregate, and the enforcement thereof shall not have been stayed; and

(xii)   Any non-monetary, judgment or order with respect to a postpetition event shall be rendered against the Debtor which does or would reasonably be expected to have a material adverse effect on the rights and remedies of the Prepetition Secured Parties hereunder, and there shall be a period of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect.

14.    **Adequate Protection.**

(a)     As adequate protection for any interests of the Prepetition Secured Parties in the DIP Collateral (including Cash Collateral), in an aggregate amount equal to any diminution in value (the "**Diminution of Value**") of such interests from and after the Petition Date, whether or not resulting from the depreciation, physical deterioration, loss, or decline in market value, use, sale or lease by the Debtor of the DIP Collateral (including Cash Collateral), the granting of the DIP Liens, the subordination of their Prepetition Liens thereto and to the Carve Out, the imposition or enforcement of the automatic stay of section 362(a), the payment of professional fees and expenses, or otherwise, the Prepetition Secured Parties shall receive adequate protection as follows (collectively, the "**Adequate Protection Obligations**"):

(i)     Adequate Protection Liens.  Solely to the extent of any such Diminution of Value, the Prepetition Secured Parties shall have pursuant to sections 361, 362(d), 363(c), 363(e), and 364(d) of the Bankruptcy Code, replacement security interests in and Liens upon all of the DIP Collateral (the "**Adequate**

15

Protection Liens"), which Adequate Protection Liens shall be valid only to the extent that the Prepetition Liens are valid, and shall be junior and subject in all respects to the DIP Liens, the Carve Out, and the Permitted Senior Liens (and adequate protection liens granted to the holders thereof on the collateral securing the same, if any), but shall be senior to the Prepetition Liens.

(ii) <u>Adequate Protection Superpriority Claims</u>. Solely to the extent of any such Diminution of Value, the Prepetition Secured Parties shall have, an allowed superpriority administrative expense claim (the "**Adequate Protection Superpriority Claim**"), as provided for in section 507(b) of the Bankruptcy Code, in the Case and any Successor Case of the Debtor, which shall be junior and subject in all respects to the DIP Superpriority Claims and the Carve Out. The Adequate Protection Superpriority Claims have priority in the applicable Case or Successor Case of the Debtor over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, 1113, or 1114 of the Bankruptcy Code, but are subordinate and junior in all respects to the DIP Superpriority Claims and the Carve Out, it being understood that the Prepetition Secured Parties shall not receive or retain any payments, property, or other amounts in respect of their Adequate Protection Superpriority Claims, or granted hereunder or under the Prepetition Financing Documents, unless and until all DIP Obligations and Carve Out related expenses are indefeasibly paid in full and in cash in accordance with the terms of the respective DIP Documents *provided*, *however*, that, the Adequate Protection Superpriority Claims shall be not payable from the proceeds of Avoidance Actions.

(iii) <u>Postpetition Interest</u>. The Prepetition First Lien Secured Parties shall be entitled to the payment of postpetition interest, as provided for in the applicable Prepetition Financing Documents; *provided*, *however*, that if, as a result of a successful Challenge (as defined below), the value of the Prepetition Collateral securing the Prepetition Indebtedness under the Prepetition First Lien Note is less than the amount of such Prepetition Indebtedness, any interest payments previously made to the Prepetition First Lien Secured Parties shall be deemed allocated to the principal amount of such Prepetition Indebtedness and any excess thereof shall be disgorged to the Debtor's estate. All payments of postpetition interest under the Prepetition First Lien Note shall be paid in kind until the Sale closing date and paid in cash from and after the Sale closing date. For the avoidance of doubt, the payment of postpetition interest to the Prepetition First Lien Secured Parties shall not constitute an Event of Default or Cash Collateral Termination Event and shall not be considered in assessing the Debtor's compliance with the Budget.

(iv) <u>Payment of Fees and Expenses</u>. Upon the later of the Sale closing date and the expiration of the Fee Review Period (as defined below), the Debtor shall

16

immediately pay in cash to the applicable Prepetition Secured Parties all accrued and unpaid fees and disbursements owing under the Prepetition Financing Documents and shall further pay the reasonable and documented fees and expenses incurred in connection with the Chapter 11 Case by the Prepetition Secured Parties. As used herein, "**Fee Review Period**" shall mean a period of ten (10) calendar days following receipt by counsel to the Debtor, counsel to the Committee, and the U.S. Trustee of an invoice of fees and disbursements of any Prepetition Secured Party; *provided*, *however*, that payment of any such fees and expenses shall not be conditioned on the provision of time records and invoices compliant with U.S. Trustee guidelines or in any particular format; *provided further* that the Court shall resolve any disputes as to the reasonableness of any payment request. For the avoidance of doubt, the payment of fees and expenses as set forth in this clause (iv) shall not constitute an Event of Default or Cash Collateral Termination Event and shall not be considered in assessing the Debtor's compliance with the Budget.

15. <u>**Perfection of Liens.**</u> The Interim DIP Order and this Final DIP Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of executing, filing, or recording any mortgage, security agreement, pledge agreement, financing statement, or other instrument or document (each, a "**Perfection Document**"), or the taking of any other act that otherwise may be required under state or federal law, rule, or regulation of any jurisdiction to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Lender or the Prepetition Secured Parties to the priorities granted herein. The Borrower may execute, and the DIP Lender and the Prepetition Secured Parties are hereby authorized to execute, file, and record Perfection Documents to evidence the DIP Liens, and the Adequate Protection Liens, respectively, and the Debtor is hereby authorized, promptly upon a demand by a DIP Lender or a Prepetition Secured Party made in accordance with the terms of the DIP Documents or Prepetition Financing Documents, as applicable, to execute, file, and record any such Perfection Documents as the respective DIP Lender or Prepetition Secured Party may request; *provided*, *however*, that no such execution, filing, or recordation shall be necessary or required in order to create or perfect the DIP Liens or Adequate Protection Liens, and further, if a DIP Lender or a Prepetition Secured Party, in its sole discretion, shall choose to execute, file, and record such Perfection Documents, or otherwise confirm perfection of such Liens, all such Perfection Documents shall be deemed to have been filed or

17

recorded as of the Petition Date. The DIP Lender and the Prepetition Secured Parties are authorized to use collateral descriptions such as "all personal property" or "all assets", in each case "whether now owned or hereafter acquired", words of similar import or any other description DIP Lender and/or the Prepetition Secured Parties, each in their sole discretion, so chooses in any such financing statements or other filings. A copy of the Interim DIP Order or this Final DIP Order may, in the discretion of any DIP Lender or Prepetition Secured Party, be filed with or recorded in any filing or recording office in addition to or in lieu of such Perfection Documents, and each and every federal, state, and local governmental agency, department, or office is hereby directed to accept a copy of the Interim DIP Order or this Final DIP Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Interim DIP Order or this Final DIP Order and the other DIP Documents, for filing and recording, and to deem the Interim DIP Order or this Final DIP Order to be in proper form for filing and recording.

16. **Section 506(c).** Except to the extent of the Carve Out, and subject to the performance of the terms of the Final DIP Order and DIP Term Sheet by the DIP Lender and the Prepetition Secured Parties, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Case or any Successor Case at any time in which any DIP Obligations remain outstanding or the Debtor is using or is authorized to use Cash Collateral shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral, any DIP Lender or Prepetition Secured Party, or any of their respective claims, pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise. Notwithstanding anything herein to the contrary, to the extent the Debtor fails to pay any allowed administrative expense claim when due, because the payment thereof would not comply with the Budget (considering Permitted Variance), then the Debtor (or the Committee on behalf of the Debtor's estate, to the extent the Debtor refuses to seek the following) shall retain the right to seek, under section 506(c) of the Bankruptcy Code, to surcharge the DIP Collateral or the Prepetition Collateral in an amount not to exceed the unpaid amount of such unbudgeted and allowed administrative expense claim. The DIP Lender and the Prepetition Secured Parties reserve all rights and defenses thereto.

Case: 15-31430    Doc# 122    Filed: 12/10/15    Entered: 12/11/15 12:32:41    Page 18 of 60

17. **Fees.** All fees paid and payable, and costs and expenses reimbursed or reimbursable by the Borrower to the DIP Lender under the DIP Documents are hereby approved. On the Sale closing date, all such fees, costs, and expenses payable under the DIP Documents in accordance with the DIP Documents, shall be capitalized and added to the Principal Amount (as defined in the DIP Term Sheet), without the necessity of any further application with the Court for approval or payment of such fees, costs, or expenses. Professionals for the DIP Lender shall not be required to file fee applications or comply with the U.S. Trustee's fee guidelines. Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the DIP Lender whether incurred prior to or after the Petition Date, shall be deemed fully earned, indefeasibly paid (to the extent already paid), non-refundable, irrevocable, and non-avoidable as of the entry of the Interim DIP Order and, irrespective of any subsequent order approving or denying the DIP Financing or any other financing pursuant to section 364 of the Bankruptcy Code, fully entitled to all protections of section 364(e) of the Bankruptcy Code. For the avoidance of doubt, the payment of fees and expenses as set forth in this paragraph 17 shall not constitute an Event of Default or Cash Collateral Termination Event and shall not be considered in assessing the Debtor's compliance with the Budget.

18. **Effect of Stipulations on Third Parties.** The stipulations and admissions contained in the Interim DIP Order and this Final DIP Order, including, without limitation, in paragraph 4 of this Final DIP Order, shall be binding on the Debtor's estate and all parties in interest, including, without limitation, any Committee, unless the Committee (which shall be deemed to have standing and authority), or another party in interest (other than any of the Debtor or other debtors) with standing and requisite authority, has timely commenced a contested matter or adversary proceeding (subject to the limitations set forth in paragraph 12 hereof, including, for the avoidance of doubt, the Investigation Budget), challenging any of the Debtor's stipulations, waivers, or releases set forth herein or the amount, validity, or enforceability of the Prepetition Indebtedness or the perfection or priority of the Prepetition Liens, or otherwise asserting any objections, claims, or causes of action on behalf of the Debtor's estate against the Prepetition Secured Parties relating to the Prepetition Indebtedness or the Prepetition Liens (such adversary

19

proceeding or contested matter, a "**Challenge**"), on or before January 24, 2016 (i.e., the sixtieth (60th) calendar day after the date of entry of the Interim DIP Order), unless extended by agreement of the parties or by the Court for cause, including the failure of the Debtor, the DIP Lender, or the Prepetition Secured Parties to cooperate with reasonable information requests. If no such Challenge is timely commenced as of such date then, without further order of the Court, (x) the claims, Liens, and security interests of the Prepetition Secured Parties shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Chapter 11 Case and any Successor Case and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount, or otherwise, and (y) without further order of the Court, the Debtor and its estate shall be deemed to have relinquished, released, and waived any and all claims or causes of action against the Prepetition Secured Parties with respect to the Prepetition Financing Documents or any related transactions. Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the stipulations contained in paragraph 4 of this Final DIP Order shall be binding on the Debtor's estate, any Committee, and all parties in interest. If a Challenge is timely commenced, the stipulations contained in paragraph 4 of this Final DIP Order shall be binding on the Debtor's estate and all parties in interest except to the extent such stipulations are specifically challenged in such Challenge, as and when originally filed (ignoring any relation back principles); *provided*, that if and to the extent a Challenge is withdrawn, denied, or overruled, the stipulations specifically challenged in such Challenge also shall be binding on the Debtor's estate and all parties in interest.

19. **Indemnity.** The DIP Lender (any of its present members, partners, managers, current equity holders, officers, agents, employees, attorneys and affiliates) shall be and hereby are indemnified and held harmless by the Debtor in respect of any losses, claims, damages, liabilities, or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court to arise from the gross negligence or willful misconduct of the relevant indemnified person. No exception or defense in contract, law, or equity exists as to any obligation set forth in this paragraph 19 or in the DIP Documents to indemnify and/or hold harmless the DIP Lender.

20

**20.** **Release.** Subject to the rights of any Committee or other party in interest provided in paragraph 18 of this Final DIP Order and to the closing of the DIP Facility, in consideration of (a) the DIP Lender's agreement to make postpetition loans, advances, and other credit and financial accommodations to the Debtor pursuant to the provisions of the DIP Term Sheet, the other DIP Documents, and the Interim DIP Order, and this Final DIP Order, and (b) the Prepetition Secured Parties' agreements to permit the use of Cash Collateral, and permit the Prepetition Liens to be primed by the DIP Liens, the Debtor (the "**Releasor**"), shall forever release, discharge, and acquit the DIP Lender and the Prepetition Secured Parties and any of their respective present and former predecessors, successors, assigns, affiliates, members, partners, managers, current and former equity holders, officers, agents, employees, attorneys, and affiliates (collectively, the "**Releasees**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every kind, nature, and description, including, without limitation, any so-called "lender liability" claims or defenses, that the Releasor had, has, or hereafter can or may have against Releasees as of the date hereof, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, solely related to the DIP Financing and the Prepetition Indebtedness. In addition, upon the repayment of all DIP Obligations owed to the DIP Lender by the Debtor and termination of the DIP Lender's rights and obligations arising under the DIP Term Sheet, the DIP Documents, the Interim DIP Order, or the Final DIP Order (which payment and termination shall be on terms and conditions acceptable to the DIP Lender), the DIP Lender in such capacity shall be released from any and all obligations, liabilities, actions, duties, responsibilities, and causes of action arising or occurring in connection with or related to the DIP Term Sheet, the DIP Documents, the Interim DIP Order, or Final DIP Order (including, without limitation, any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve Out expenses), on terms and conditions acceptable to the DIP Lender. Notwithstanding anything to the contrary herein, the Debtor's releases do not extend to (x) until the repayment in full in cash of the DIP Obligations or the termination of the DIP Financing, the DIP Lender's obligations to make the advances and otherwise comply with the terms of the DIP Term

21

Sheet and the Interim DIP Order and Final DIP Order or (y) the Prepetition Secured Parties' obligations under the DIP Term Sheet, which obligations shall survive the repayment of the DIP Obligations.

21. **Limitation of Liability.** In determining to extend credit under the DIP Documents, or in exercising any rights or remedies pursuant to this Final DIP Order and the other DIP Documents, the DIP Lender shall not be deemed to be in control of the operations of any Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of any Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

22. **Debtor's Waivers.** At all times during the Chapter 11 Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have (a) subject to paragraph 18 hereof, to challenge the application of any payments authorized by this Final DIP Order pursuant to section 506(b) of the Bankruptcy Code, (b) to seek authority to grant Liens on the DIP Collateral or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which Liens are senior to, or *pari passu* with, the DIP Liens, the DIP Superpriority Claims, or any other liens or claims granted to the DIP Lender, unless the DIP Obligations are first repaid in full in cash and the DIP Facility is terminated, or (c) to seek authority to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than from the DIP Lender, or as may be otherwise expressly permitted under the DIP Documents, unless the Debtor uses the proceeds of such postpetition loans or other financial accommodations to pay in full in cash all DIP Obligations. In addition, in any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor hereby waives its right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender, as set forth in this Final DIP Order or the other DIP Documents, other than to contest whether an Event of Default has occurred or is continuing.

22

23. **Disposition of Collateral.** Until all DIP Obligations are paid and satisfied in full and in cash in accordance with the terms of the DIP Documents on terms and conditions acceptable to the DIP Lender, the proceeds of any sale of the DIP Collateral (other than sales in the ordinary course of business) shall be applied in the following order: (i) to pay or fund an escrow account or a restricted account maintained by the Debtor or counsel for the Debtor in the amount of (x) all allowed and unpaid professional fees and disbursements (regardless of when such fees and disbursements become allowed by order of the Court) incurred or accrued by the Debtor and any Committee at any time on or prior to the date of the closing of the Sale in an aggregate amount not exceeding such unpaid professional fees and disbursements reflected on the Budget plus (y) accrued administrative expenses of the types included in the Carve Out, not to exceed the Carve Out amount, (ii) to pay the fees and expenses of the DIP Lender and the Prepetition Secured Parties to the extent permitted by this Final DIP Order, (iii) to pay any interest on the DIP Loans which is then due and payable, (iv) to pay any interest with respect to the principal amount being repaid which has accrued but is not yet due and payable, and (v) to pay the principal amount of DIP Loans.

24. **Collateral Rights**. Except as expressly permitted in this Final DIP Order and the other DIP Documents, in the event that any person or entity that holds a Lien or security interest in DIP Collateral that is junior or subordinate to the DIP Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source, prior to payment in full and in cash and the complete satisfaction of all DIP Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the DIP Lender, and shall immediately turnover such proceeds to the DIP Lender for application in accordance with this Final DIP Order and the other DIP Documents.

25. **Modification of Stay; Rights and Remedies Upon Termination.**

(a) Subject to paragraph 13 of this Final DIP Order, upon the occurrence of a Cash Collateral Termination Event (and following the expiration of the Default Notice Period (as defined below)), or DIP Termination Event, as applicable, the automatic stay provisions of section

23

362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the respective DIP Lender or Prepetition Secured Parties, as applicable, to exercise all rights and remedies provided in this Final DIP Order and the other DIP Documents, as applicable, and to take any or all of the following actions, as applicable, without further order of or application to this Court: (i) immediately terminate the Debtor's use of Cash Collateral and cease making any DIP Loans to the Borrower; (ii) immediately declare all DIP Obligations to be immediately due and payable; (iii) immediately terminate the DIP Facilities and the availability of any DIP Loans thereunder; (iv) immediately set off any and all amounts held on account of or owed to the Debtor against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of, or subject to a lien in favor of the DIP Lender for application towards the DIP Obligations; and (v) take any other actions or exercise any other rights or remedies permitted under this Final DIP Order and the other DIP Documents or applicable law to effect the repayment of the DIP Financing; *provided* that notwithstanding anything herein to the contrary, no DIP Lender or Prepetition Secured Party shall enforce any DIP Liens against the DIP Collateral or exercise any other remedies prior to the expiration of the expiration of the Default Notice Period.

(b) The automatic stay under section 362(a) of the Bankruptcy Code shall be automatically vacated and modified as provided in paragraph 25(a) above, effective following the expiration of the Default Notice Period, unless the Court has determined that an Event of Default or Cash Collateral Termination Event, as applicable, has not occurred and/or is not continuing. Unless otherwise ordered by the Court, any party in interest's sole recourse with respect to opposing such modification of the automatic stay under section 362(a) of the Bankruptcy Code shall be to contest the occurrence and/or continuance of an Event of Default or Cash Collateral Termination Event, as applicable. During the Default Notice Period, the Debtor shall (i) have no right to request extensions of credit under the DIP Facility, other than with the consent of the DIP Lender, (ii) have no right to use Cash Collateral other than (x) as provided in the Budget, (y) to contest in Good Faith whether an Event of Default or Cash Collateral Termination Event, as applicable, has occurred, or (z) as otherwise permitted by the DIP Lender and Prepetition Secured Parties, and (iii) be entitled to an emergency hearing before the Court, with proper notice to the

24

DIP Lender and the Prepetition Secured Parties, solely for the purpose of contesting whether an Event of Default or Cash Collateral Termination Event, as applicable, has occurred and/or is continuing. The rights and remedies of the DIP Lender and the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender or Prepetition Secured Parties may respectively have under the DIP Documents or Prepetition Financing Documents, as applicable, or otherwise. The Debtor shall cooperate fully with the DIP Lender and the Prepetition Secured Parties in any permitted exercise of rights and remedies, whether against the DIP Collateral or otherwise.

26. **Survival of Order.** The provisions of the Interim DIP Order, this Final DIP Order, and the DIP Term Sheet and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any chapter 11 plan in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a Successor Case, or (iii) dismissing the Chapter 11 Case, and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, Liens, and security interests granted pursuant to the Interim DIP Order and this Final DIP Order shall maintain their priority as provided by this Final DIP Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the DIP Documents. The applicable DIP Obligations shall not be discharged by the entry of any order confirming any chapter 11 plan in the Chapter 11 Case that does not provide for payment in full of the DIP Obligations, and, only upon the entry of any such order, the Debtor shall, and shall be deemed to, waive any such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

27. **No Waiver.** This Final DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender or Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

28. **Reservation of Rights.** The terms, conditions, and provisions of this Final DIP Order are in addition to and without prejudice to the rights of the DIP Lender or the Prepetition Secured Parties to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Documents or Prepetition Financing Documents, as applicable, or any other applicable agreement or law, including, without limitation, rights (a) to seek relief from the automatic stay, (b) to seek an

25

injection, (c) to oppose any future request for use of Cash Collateral or the granting of any interest in the DIP Collateral or priority in favor of any other party, (d) to object to any sale of assets, or (e) to object to applications for allowance or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Debtor's estate.

29. **No Consent.** No action, inaction, or acquiescence by the DIP Lender or Prepetition Secured Parties, including funding the Debtor's operations and the conduct and pursuit of a sale and liquidation process under this Final DIP Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Lender to a charge against the DIP Collateral pursuant to sections 506(c), 552(b), or 105(a) of the Bankruptcy Code. The DIP Lender and the Prepetition Secured Parties shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral. The DIP Liens and the Prepetition Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code and the "equities of the case" exception of section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to the Prepetition Financing Documents or the Prepetition Collateral.

30. **Binding Effect; Successors and Assigns.** Except as otherwise provided in the DIP Documents, the provisions of this Final DIP Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Secured Parties, the Debtor, and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of the Debtor, its estate, or with respect to the property of any of its estate) whether in this Chapter 11 Case, in any Successor Case, or upon dismissal of the Chapter 11 Case or any Successor Case; *provided, however,* that the DIP Lender and the Prepetition Secured Parties shall have no obligation to extend any financing to, or permit the use of Cash Collateral or DIP Collateral or Prepetition Collateral by, any chapter 7 or chapter 11 trustee or similar representative person appointed for the Debtor's estate.

31. **Order Effective Immediately.** Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final DIP Order shall be immediately effective and enforceable *nunc pro tunc*

Case: 15-31430    Doc# 122    Filed: 12/10/15    Entered: 12/11/15 12:32:41    Page 26 of 60

to the Petition Date upon its entry, and there shall be no stay of execution or effectiveness of this Final DIP Order.

32. **Final DIP Order Governs.** In the event of any inconsistency or conflict between any of the terms and provisions of this Final DIP Order and the Interim DIP Order, the DIP Documents, or the Prepetition Financing Documents, the terms and provisions of this Final DIP Order shall govern.

33. **No Third Party Rights.** Except as explicitly provided for herein, this Final DIP Order does not create any rights for the benefit of any party, creditor, equity holder, or other entity other than the DIP Lender, the Prepetition Secured Parties, and the Debtor, and each of their respective successors and assigns.

34. **Payment of Budgeted Professional Fees.** The Debtor shall make, on a weekly basis, payments which have been allocated in the Budget for the Debtor's professional fee expenses and Committee expenses, including fees and costs of the Committee's professionals. These weekly professional fee payments will be held by the Debtor in a segregated debtor-in-possession deposit account of the Debtor to be identified specifically in a written notice to the DIP Lender, which account shall consist solely of accrued and unpaid professional fees provided for in accordance with the Budget and which funds shall be deemed to constitute Carve Out funds.

35. **Headings.** Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final DIP Order.

36. **Retention of Jurisdiction.** This Court retains exclusive jurisdiction to interpret, implement, and enforce the provisions of this Final DIP Order and the other DIP Documents.

37. **Subsequent Reversal or Modification.** This Final DIP Order is entered pursuant to, *inter alia,* section 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender and the Prepetition Secured Parties all protections afforded by section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Final DIP Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (a) the validity of any obligation, indebtedness, or liability incurred hereunder by the Borrower to the DIP Lender or the Prepetition Secured Parties prior to the date of receipt by the DIP Lender or Petition Secured Parties, as

27

applicable, of written notice of the effective date of such action, (b) the payment of any fees required under this Final DIP Order or the other DIP Documents, or (c) the validity and enforceability of any lien, claim, obligation, or priority authorized or created under this Final DIP Order or pursuant to the other DIP Documents or the Prepetition Financing Documents as of such date. Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by the Borrower or any of the other Debtors to any DIP Lender or the Prepetition Secured Parties, prior to written notice being delivered to DIP Lender or the Prepetition Secured Parties of the effective date of such action, shall be governed in all respects by the original provisions of this Final DIP Order, and the DIP Lender or Prepetition Secured Parties, as applicable, shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Documents with respect to all such indebtedness, obligations, or liability.

**\*End of Order\***

Case: 15-31430   Doc# 122   Filed: 12/10/15   Entered: 12/11/15 12:32:41   Page 28 of 60

**EXHIBIT A**
**FORM OF AMENDED AND RESTATED DIP TERM SHEET**

**Rdio, Inc.**
**Amended and Restated Term Sheet for Debtor-in-Possession Credit Facility, Use of Cash Collateral, and Adequate Protection**

| | |
|---|---|
| *Borrower* | Rdio Inc. a Delaware corporation (the "**Borrower**" or the "**Debtor**"), as a debtor and debtor-in-possession in a case (the "**Chapter 11 Case**") filed under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Court**"). |
| *Lender* | Iconical Investments II LP, a Cayman limited partnership (the "**DIP Lender**"). |
| *DIP Loans and Commitment* | The DIP Lender will make loans (the "**DIP Loans**") to the Borrower under a superpriority debtor in possession term loan credit facility (the "**DIP Facility**") in an aggregate principal amount not to exceed in the aggregate $3,000,000 plus all capitalized interest thereon and all capitalized fees and expenses, in each case pursuant to the terms herein (such amount, the "**Principal Amount**") to be made available to the Borrower in accordance with the Budget (as defined below) until the Maturity Date (as defined below). Upon the entry of the Interim DIP Order (as defined below), the Borrower shall be permitted to borrow in a single drawing an amount not to exceed $1,800,000, subject to the terms and conditions set forth in this term sheet (this "**Term Sheet**") and the Interim DIP Order in accordance with the Budget (the "**Initial DIP Loan**"). Upon the entry of the Final DIP Order (as defined below), the Borrower shall be permitted to borrow in a single drawing an amount not to exceed $1,200,000, subject to the terms and conditions set forth in this Term Sheet and the Final DIP Order in accordance with the Budget (the "**Final DIP Loan**"). The DIP Lender's agreement to make (i) the Initial DIP Loan shall terminate automatically on the Closing Date after giving effect to the borrowing of the Initial DIP Loan on such date and (ii) the Final DIP Loan shall terminate automatically on the Final Funding Date (as defined below). |
| *DIP Obligations* | As used in this Term Sheet, (any collateral documents, guaranties, the Budget and all such instruments, financing statements and documents as may be executed, delivered or filed in connection with or relating to the DIP Facility, the Interim DIP Order and the Final DIP Order (as defined below) and any certificate or other document or filing made or delivered pursuant hereto or thereto (collectively, together with any amendments, waivers, consents or other modifications to and under any or all of the foregoing, in each |

1

case in such form as the Debtor and the DIP Lender may agree, the "**DIP Documents**")), the term "**DIP Obligations**" means (a) the due and punctual payment by the Borrower of (i) the unpaid principal amount of and interest on (including interest accruing after the maturity of the DIP Loans and interest accruing after (or that would have accrued but for) the commencement of the Chapter 11 Case or any case or proceeding by or against the Borrower under any federal or state bankruptcy, insolvency, receivership, or similar law, whether or not allowed in such case or proceeding) on the DIP Loans, as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including advances, debts, liabilities, obligations, fees, costs, expenses, and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise, of the Debtor to the DIP Lender under this Term Sheet, the other DIP Documents, the Interim DIP Order, and the Final DIP Order, and (b) the due and punctual payment and performance of all covenants, duties, agreements, obligations and liabilities of the Debtor to the DIP Lender under or pursuant to this Term Sheet, the other DIP Documents, the Interim DIP Order, and the Final DIP Order.

*Use of Proceeds*  The proceeds of the DIP Facility shall be used by the Debtor solely to (i) fund the Debtor's operations, (ii) to conduct and pursue a sale and liquidation process (the "**Sale**") as set forth herein, as described in the Bidding Procedures Order (as defined in the Stalking Horse APA), (iii) pay all other expenses owing, (iv) pay all fees owing to the Court and the United States Trustee, and (v) pay all expenses to third party vendors for photocopying, postage and mailings, in the case of clauses (i) through (v), as set forth in and in accordance with the budget approved by the DIP Lender in its sole discretion (the "**Budget**"), subject to the Permitted Variance (as defined below), as such Budget may be modified as described below. Compliance with the Budget will be measured every month (after the first month of the Chapter 11 Case) on a trailing four week basis.

So long as no DIP Termination Event (as defined below) has occurred, the Debtor shall be authorized to use the proceeds of the DIP Loans in accordance with the Budget and the other applicable DIP Documents in an amount that would not cause the Debtor to use Cash Collateral or proceeds of the DIP Loans in an amount greater than, at any given time, 115% of the amount set forth on each line of the Budget (a "**Permitted Variance**"); *provided, however*, that there shall be no deviation from the Budget on a cumulative basis unless and until the DIP Obligations have been

Case: 15-31430   Doc# 122   Filed: 12/10/15   Entered: 12/11/15 12:32:41   Page 31 of 60

paid in full in cash. If the aggregate amount of any proceeds of the DIP Loans or any Cash Collateral actually used by the Debtor, measured once every month, is less than the aggregate amount of proceeds of the DIP Facility and Cash Collateral available for use by the Debtor in the Budget during such period, then the Debtor may carry over any such unused amount to the future periods in the Budget on a line item-by-line item basis.

The Budget may be modified with the written consent of each of (i) the DIP Lender and (ii) the Prepetition Secured Parties (as defined below), in each of their sole discretion, and without further order of the Court; provided, however, that the Debtor shall provide five (5) calendar days' notice of such proposed modifications to counsel to the Committee, and if the Committee objects to such modifications within such five (5) calendar day period (notice thereof to be transmitted by email to counsel for each of the Debtor, the DIP Lender and the Prepetition Secured Parties), the modifications shall be effective only upon the withdrawal of the Committee's objection or a further order of the Court (it being agreed that the Debtor shall be entitled to an emergency hearing on the earliest available date). If the Committee objects to any proposed modifications to the Budget, and such objection is neither withdrawn nor overruled by the Court, the Debtor shall nonetheless be permitted to use the proceeds of DIP Loans and/or Cash Collateral (x) consistent with the then-existing Budget for the remainder of the period encompassed by such Budget, as though no modification had been proposed, and (y) for a period of one month after the expiration of the Budget period, consistent with the last week of the then-existing Budget, in each case subject to Permitted Variance. To the extent a "consumer privacy ombudsman," as such term is used in section 332 of the Bankruptcy Code, is appointed in the Case, the DIP Lender and the Prepetition Secured Parties shall meet and confer in good faith with the U.S. Trustee to negotiate an appropriate accommodation in the Budget for such consumer privacy ombudsman. All parties-in-interest reserve their rights to support or oppose the appointment of the consumer privacy ombudsman.

As further set forth below, after the first month of the Chapter 11 Case, on each Reporting Date (as defined below), the Debtor shall provide the DIP Lender with weekly and cumulative variance reporting on a line item basis, which reporting shall (i) detail the variance, if any, of actual cash disbursements and actual cash receipts from the Budget and (ii) provide an explanation of any per line item variance greater than 5% (the "**Variance Report**").

3

| | |
|---|---|
| ***Interest Rate*** | Interest on the DIP Loans made under the DIP Facility shall be equal to the Base Rate. On November 30, 2015, December 31, 2015 and the Maturity Date (any such day being hereinafter referred to as an "**Interest Calculation Date**"), the amount of all interest accrued through such date and not previously capitalized shall be capitalized and added to the Principal Amount. Any such amount so capitalized will thereafter accrue interest at the Base Rate. Prior to the Maturity Date, Borrower may pay, but the DIP Lender shall have no right to demand, on any Interest Calculation Date other than the Maturity Date, all or any portion of the accrued and unpaid interest under the DIP Facility in cash. |
| ***Base Rate*** | 8.0% per annum (the "**Base Rate**"). |
| ***Default Interest*** | Upon the occurrence and during the continuation of any Event of Default (as defined below) (including without limitation any default in payment of any obligations under the DIP Facility when such obligations are due), interest on the DIP Loans shall be payable at the Base Rate, *plus* 2.0% per annum, payable on demand. |
| ***Maturity*** | Unless accelerated by an Event of Default, the DIP Facility shall be paid in full in cash on the date (the "**Maturity Date**") which is the earliest of (a) January 15, 2016; (b) the effective date of a plan of reorganization or liquidation for the Debtor; (c) the consummation of the Sale or a sale(s) of all or substantially all of the assets of the Debtor; (d) the occurrence of an Event of Default; (e) the entry of an order by the Court approving an alternative DIP facility; and (f) such later date as the DIP Lender in its sole discretion may agree to in writing with the Debtor. The Maturity Date shall be accelerated upon the occurrence of an Event of Default, subject to the Default Notice Period. |
| ***Voluntary Prepayments*** | The Borrower may prepay the DIP Facility in whole or in part at any time without premium or penalty. |
| ***Mandatory Prepayments*** | The proceeds from any asset sales (other than sales in the ordinary course of business) shall be applied in the following order: (i) to pay or fund a restricted account maintained by counsel for the Debtor in the amount of (x) all allowed and unpaid professional fees and disbursements (regardless of when such fees and disbursements become allowed by order of the Court, with an estimate to be agreed upon by the parties or as ordered by the Court if such fees and disbursements have not yet been allowed by the Court) incurred or accrued by the Debtor and the Committee at any time on or prior to the date of the closing of the sale in an aggregate |

4

amount not exceeding such unpaid professional fees and disbursements reflected on the Budget plus (y) allowed and accrued administrative expenses of the types included in the Carve Out (as defined below); (ii) to pay the fees and expenses of the DIP Lender and the Prepetition Secured Parties; (iii) to pay any interest with respect to the principal amount of the DIP Loans being repaid which has accrued but is not yet due and payable; and (iv) to pay the principal amount of DIP Loans.

**_Conditions Precedent to Funding of Initial DIP Loan_**

Availability of the Initial DIP Loan under the DIP Facility shall be subject to the following conditions precedent, all of which shall be for the benefit of the DIP Lender and must be satisfied on occasion of the borrowing of the Initial DIP Loan under the DIP Facility, unless waived in writing in advance by the DIP Lender:

1. The Court shall have issued an interim order, in form and substance acceptable to the DIP Lender, the Prepetition Secured Parties and each of their counsel in each of their sole discretion, on or before November 25, 2015, in substantially the form annexed hereto as **Exhibit A** or such other form as may be agreed to by the DIP Lender, the Prepetition Secured Parties and each of their counsel, in each of their sole discretion (the "**Interim DIP Order**") which order shall, among other things, approve the DIP Facility on an interim basis, including, without limitation, the grant of, pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable, and fully perfected security interests in and liens and mortgages (collectively, the "**DIP Liens**") upon all DIP Collateral (as defined below), with the priority as set forth in the section entitled "**Priority and Liens**" below, to secure the DIP Obligations in accordance with the terms hereof, effective immediately upon the granting of the Interim DIP Order, without the need for any further action on the part of the DIP Lender, the Debtor or any other person (including, without limitation, the execution or delivery of any further documents or agreements or the recording, filing, indexing, entering, or registering of any financing statements or other similar instruments or documents), and the Interim DIP Order shall provide for adequate protection in favor of the Prepetition Secured Parties as and to the extent provided herein.

2. The Interim DIP Order shall be in full force and effect and shall not have been reversed, stayed, modified, or amended without the express written consent of the DIP Lender and the Prepetition Secured Parties, and no application or

5

motion shall have been made to the Court for any stay, modification or amendment of the Interim DIP Order and no stay, appeal or leave to appeal with respect to same shall be pending.

3. The DIP Lender shall be satisfied that it has been granted and holds a perfected first-priority lien on, and security interest in, all of the DIP Collateral and proceeds thereof, whether then owned or thereafter acquired, including, without limitation, the Services Agreement Collateral (as defined below), subject only to the Carve Out, the Permitted Senior Liens, and adequate protection liens granted to the holders of the Permitted Senior Liens on the collateral securing the same, if any. "**Services Agreement Collateral**" means that certain Master Services Agreement, dated as of November 16, 2015 (as amended, restated, supplemented or otherwise modified from time to time with the prior written consent of the DIP Lender and the Prepetition Secured Parties and each of their counsel in each of their sole discretion, the "**Services Agreement**"), by and between Rdio, Inc., a Delaware corporation, and Pandora Media, Inc., a Delaware corporation, all of the Debtor's rights to payment thereunder, all accounts in connection therewith, all cash received by the Debtor in connection therewith, all deposit accounts into which such cash is deposited, and all proceeds of the foregoing.

4. All fees and expenses payable by the Debtor on or prior to the closing date of the DIP Facility (the "**Closing Date**") (including but not limited to the fees and expenses of legal counsel and financial advisors), to the DIP Lender shall have been paid, with such fees and expenses being capitalized on the Closing Date and added to the Principal Amount.

5. All "first-day orders" entered by the Court at the time of the commencement of the Chapter 11 Case shall be reasonably satisfactory in form and substance to the DIP Lender.

6. The DIP Lender and the Prepetition Secured Parties shall have received and approved the Budget.

7. All representations and warranties of the Debtor set forth in this Term Sheet shall be accurate in all material respects (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text

6

thereof) on and as of such date as if made on and as of such date, and after giving effect to the Initial DIP Loan to be made on such date (except to the extent that such representations and warranties specifically relate solely to an earlier date thereto, in which case such representation and warranty shall be true and correct as of such earlier date).

8. No event has occurred and is continuing that constitutes an Event of Default or would constitute an Event of Default, but for the requirement that notice be given or time elapse or both.

*Conditions Precedent to Funding of Final DIP Loan*

Availability of the Final DIP Loan under the DIP Facility shall be subject to the following conditions precedent (the date that such conditions precedent are satisfied, the "**Final Funding Date**"), all of which shall be for the benefit of the DIP Lender and must be satisfied on occasion of the borrowing of the Final DIP Loan under the DIP Facility, unless waived in writing in advance by the DIP Lender:

1. The Court shall have entered an order, in form and substance acceptable to the DIP Lender, the Prepetition Secured Parties and each of their counsel in each of their sole discretion, on or before December 16, 2015, in a form substantially similar in all material respects to the Interim DIP Order or such other form as may be agreed to by the DIP Lender, in relation to the Debtor (the "**Final DIP Order**") which order shall, among other things, (i) contain and approve the admissions, stipulations, and agreements of the Debtor, on behalf of and for itself, with regard to the Prepetition Indebtedness, the Prepetition Financing Documents, and the Prepetition Liens (each as defined in the Interim DIP Order), in each case on a final basis, (ii) provide that such admissions, stipulations, and agreements shall be binding on all parties-in-interest, including the Committee if no "Challenge" (as defined in the Interim DIP Order and the Final DIP Order) is commenced within thirty days of entry of the Interim DIP Order, (iii) approve the DIP Facility on a final basis, including, without limitation, the grant of, pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable, and fully perfected DIP Liens upon all DIP Collateral, with the priority as set forth in the section entitled "**Priority and Liens**", to secure the DIP Obligations in accordance with the terms hereof, effective as of the granting of the Interim DIP Order, without the

7

need for any further action on the part of the DIP Lender, the Debtor or any other person (including, without limitation, the execution or delivery of any further documents or agreements or the recording, filing, indexing, entering, or registering of any financing statements or other similar instruments or documents).

2. The Final DIP Order shall be in full force and effect and shall not have been reversed, stayed, modified, or amended without the express written consent of the DIP Lender and the Prepetition Secured Parties, and no application or motion shall have been made to the Court for any stay, modification or amendment of the Final DIP Order and no stay, appeal or leave to appeal with respect to same shall be pending.

3. All of the funds available under the Interim DIP Order shall have been borrowed and used in accordance with the Budget, subject to the Permitted Variance.

4. The DIP Lender shall be satisfied that it has been granted and holds a perfected first-priority lien on, and security interest in, all of the DIP Collateral and proceeds thereof, whether then owned or thereafter acquired, including, without limitation, the Services Agreement Collateral, subject only to the Carve Out, the Permitted Senior Liens, and adequate protection liens granted to the holders of the Permitted Senior Liens on the collateral securing the same, if any.

5. All fees payable by the Debtor on or prior to the Final Funding Date (including but not limited to the fees and expenses of legal counsel and financial advisors), to the DIP Lender shall have been paid, with such fees and expenses being capitalized on the Final Funding Date and added to the Principal Amount.

6. All "first-day orders" entered by the Court at the time of the commencement of the Chapter 11 Case and any related "final orders" subsequently entered by the Court shall be reasonably satisfactory in form and substance to the DIP Lender.

7. The DIP Lender and the Prepetition Secured Parties shall have received and approved the Budget and the Debtor shall be in compliance with the Budget, subject to the Permitted

8

Variance.

8. All representations and warranties of the Debtor set forth in this Term Sheet shall be accurate in all material respects (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) on and as of such date as if made on and as of such date, and after giving effect to the Final DIP Loan to be made on such date (except to the extent that such representations and warranties specifically relate solely to an earlier date thereto, in which case such representation and warranty shall be true and correct as of such earlier date).

9. No event has occurred and is continuing that constitutes an Event of Default or would constitute an Event of Default, but for the requirement that notice be given or time elapse or both.

10. The Court shall have entered a final and nonappealable order, in form and substance acceptable to the DIP Lender, the Prepetition Secured Parties and each of their counsel in each of their sole discretion, by not later than November 30, 2015, which order shall, among other things, approve the Services Agreement, which agreement shall be in form and substance acceptable to the DIP Lender, the Prepetition Secured Parties and each of their counsel in each of their sole discretion.

11. The Debtor shall have received the full amount of funds payable to the Debtor under the Services Agreement.

*Security*

As security for the payment and performance in full of the DIP Obligations, the Debtor hereby grants to the DIP Lender a security interest in and continuing lien on all of the Debtor's right, title, and interest in, to, and under all assets of the Debtor, including, but not limited to the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located (all of which being hereafter collectively referred to as the "**DIP Collateral**"): all assets and property of the Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, general intangibles, instruments, equipment, accounts, and documents, all goods, inventory and fixtures, all documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment

9

property, commercial tort claims, money, insurance, receivables, receivables records, deposit accounts (including, for the avoidance of doubt, any debtor-in-possession deposit accounts opened postpetition), collateral support, supporting obligations, all interests in leaseholds and real properties, all patents, copyrights, trademarks, tradenames, domain names, source code and other intellectual property, all equity interests in all subsidiaries of the Borrower, all Services Agreement Collateral, all books and records relating to the foregoing, all other personal and real property of the Debtor, and all other collateral pledged under the DIP Documents, any actions under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code (the "**Avoidance Actions**") (*provided* that the DIP Lender shall not receive perfected security interests in, nor liens on, Avoidance Actions or proceeds thereof unless otherwise provided in the Final DIP Order (subject to entry of the Court thereof), and all proceeds, products, accessions, rents, and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of California (and, if defined in more than one Article of such Uniform Commercial Code, shall have the meaning given in Article 9 thereof)); *provided* that DIP Collateral shall not include, and the DIP Liens and Adequate Protection Liens shall not attach to, any of the outstanding equity interest in any foreign subsidiary of the Borrower in excess of 65% of the voting power of the equity interests in such foreign subsidiary of the Borrower.

| | |
|---|---|
| *Priority and Liens* | The DIP Obligations shall: |

(a) pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to super-priority administrative expense status in the Chapter 11 Case (the "**DIP Superpriority Claims**");

(b) pursuant to section 364(c)(2) of the Bankruptcy Code, be secured by a perfected first-priority lien on all unencumbered DIP Collateral;

(c) pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by a perfected junior lien on all property and assets of the Debtor that are subject to valid, enforceable, and non-avoidable liens in existence on the Petition Date, which liens are (i) permitted under the Prepetition Financing Documents, (ii) senior to the liens securing the Prepetition Financing Documents, and (iii) either perfected as of the Petition Date or subsequently perfected pursuant to section 546(b) of the Bankruptcy Code (collectively, the

10

"**Permitted Senior Liens**");

(d) pursuant to section 364(d)(1) of the Bankruptcy Code, be secured by a first-priority senior priming lien on the DIP Collateral (the "**Priming Lien**") that is senior to and primes (the "**Primed Liens**") (i) the liens securing the Prepetition Financing Documents and all liens junior thereto, and (ii) any adequate protection liens granted (x) to the Prepetition Secured Parties after the commencement of the Chapter 11 Case in respect of the obligations under any Prepetition Financing Documents (as defined below), and (y) in respect of any liens junior to the liens securing the obligations under any Prepetition Financing Documents; and

(e) be subordinate only to (i) Permitted Senior Liens (and adequate protection liens granted to the holders thereof on the collateral securing the same, if any), and (ii) the Carve-Out.

Notwithstanding anything to the contrary in this Term Sheet, the liens granted hereunder to the DIP Lender and the Prepetition Secured Parties on the Debtor's real property leaseholds (or other agreements for the occupancy and use of real property under section 365(m) of the Bankruptcy Code), shall not be a direct lien but, rather, limited to a lien on the proceeds of the prospective disposition of such leases or occupancy agreements). The DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition assets of the Debtor, including, but not limited to, the DIP Collateral and the Prepetition Collateral; *provided*, *however*, that, the DIP Superpriority Claims shall be not payable from the proceeds of Avoidance Actions unless otherwise provided in the Final DIP Order (subject to entry of the Court thereof).

"**Prepetition Financing Documents**" means:

(i) that certain Third Amended and Restated Secured Promissory Note, dated July 10, 2015 (as heretofore amended, restated, amended and restated, supplemented or otherwise modified, the "**Prepetition Second Lien Note**"), by and between Debtor and Pulser Media, Inc., a Delaware corporation, as lender (in such capacity, the "**Prepetition Second Lien Noteholder**");

Case: 15-31430   Doc# 122   Filed: 12/10/15   Entered: 12/11/15 12:32:41   Page 40 of 60

(ii) that certain Note Purchase Agreement, dated as of October 19, 2015 (as heretofore amended, restated, amended and restated, supplemented or otherwise modified, the "**Prepetition First Lien Note Purchase Agreement**"), by and among the Debtor, Iconical Investments II LP, as purchaser (the "**Prepetition First Lien Noteholder**"),[1] and Iconical Investments II LP, as collateral agent (in such capacity, the "**Prepetition First Lien Collateral Agent**", and together with the Prepetition First Lien Noteholder, the "**Prepetition First Lien Secured Parties**", and collectively with the Prepetition Second Lien Noteholder, the "**Prepetition Secured Parties**");

(iii) that certain Security Agreement, dated as of October 19, 2015 (as heretofore amended, restated, amended and restated, supplemented or otherwise modified, the "**Prepetition First Lien Security Agreement**") by the Debtor and Pulser Media, Inc. ("**Pulser**"), as grantors, in favor of Collateral Agent;

(iv) that certain Guaranty Agreement, dated as of October 19, 2015 (as heretofore amended, restated, amended and restated, supplemented or otherwise modified, the "**Guaranty**"), by and between Pulser, as guarantor, in favor of the holders of notes issued pursuant to the Prepetition First Lien Note Purchase Agreement;

(v) that certain Note, dated as of October 19, 2015 (as heretofore amended, restated, amended and restated, supplemented or otherwise modified, the "**Prepetition First Lien Note**"), by the Debtor in favor of Iconical Investments II LP, as purchaser;

(vi) that certain Patent Security Agreement, dated as of October 19, 2015 (as heretofore amended, restated, amended and restated, supplemented or otherwise modified, the "**Patent Security Agreement**"), by the Debtor in favor of Collateral Agent;

(vii) that certain Trademark Security Agreement, dated as of October 19, 2015 (as heretofore amended, restated, amended and restated, supplemented or otherwise modified, the "**Trademark Security Agreement**"), by the Debtor in favor of

---

[1] Loans are made by purchasing notes from the company, with the purchaser under a note purchase agreement and the corresponding note being the equivalent of a lender under a credit agreement.

|  | Collateral Agent; and |
|---|---|

(viii) that certain Intercreditor Agreement, dated as of October 19, 2015 (as heretofore amended, restated, amended and restated, supplemented or otherwise modified, the "**Intercreditor Agreement**"), by and between the Prepetition First Lien Collateral Agent and the Prepetition Second Lien Noteholder.

**_Carve Out_**

As more fully set forth in the Interim DIP Order and Final DIP Order, the DIP Liens on the DIP Collateral and the DIP Superpriority Claims shall be subordinate to the Carve Out.

For purposes hereof, the "**Carve Out**" means, with respect to the period prior to the closing of the Sale: (a) all unpaid fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, (b) all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code not to exceed $50,000, (c) all accrued and unpaid administrative expenses, other than professional fees and disbursements, incurred by the Debtor in the Chapter 11 Case in compliance with the Budget prior to the occurrence of a Carve-Out Event, (d) after the occurrence and during the continuance of a Carve-Out Event (as defined below), unpaid professional fees and disbursements incurred by the Debtor and any statutory committee appointed in the Chapter 11 Case (the "**Committee**"), that are in compliance with the Budget, in an aggregate amount not to exceed $500,000 less fees paid to professionals during the pendency of the Chapter 11 Case until the closing of the Sale (which amount may be used subject to the terms of this Term Sheet, the Interim DIP Order and the Budget and shall be supported by back-up documentation in respect of the amounts and dates of incurrence of such fees and disbursements), in each of the foregoing clauses (a), (b), (c), and (d), to the extent allowed by the Court at any time; _provided_, _however,_ that nothing herein shall be construed to impair the ability of any party-in-interest in the Chapter 11 Case to object to any of the fees, expenses, reimbursement or compensation described in clause (d) above.

For purposes hereof, the "**Carve Out**" means, with respect to the period after the closing of the Sale and payment in full in cash of the DIP Obligations:[2] (a) amounts due to employees of the Debtor

---

[2] For the avoidance of doubt, the Carve-Out set forth in this paragraph is granted by the Prepetition Secured Parties with respect to their Cash Collateral.

Case: 15-31430   Doc# 122   Filed: 12/10/15   Entered: 12/11/15 12:32:41   Page 42 of 60

pursuant to the Bonus Agreements (as such term is defined and described in the Debtors' Emergency Motion for Authority to Honor Pre-Petition Cash Bonus Incentive Agreements), *provided* that the Prepetition First Lien Secured Parties have countersigned such Bonus Agreement to indicate the Prepetition First Lien Secured Parties' consent to such carve-out, (b) all unpaid fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, (c) all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code not to exceed $50,000, (d) after the occurrence and during the continuance of Carve-Out Event, all allowed and unpaid professional fees and disbursements incurred by the Debtor and the Committee, that are in compliance with the Budget, in an aggregate amount not to exceed $200,000 in the aggregate for the Debtor and $100,000 in the aggregate for the Committee, which amounts may be used subject to the terms of this Term Sheet, the Interim DIP Order, and the Budget, (e) all allowed and unpaid professional fees and disbursements (regardless of when such fees and disbursements become allowed by order of the Court) incurred or accrued by the Debtor and the Committee at any time when no Carve-Out Event is continuing, that remain unpaid subsequent to a Carve-Out Event, in an aggregate amount not exceeding such unpaid professional fees and disbursements reflected on the most recent Budget delivered to and approved by the Prepetition Secured Parties prior to any Carve-Out Event that is then continuing, to be supported by back-up documentation in respect of the amounts and dates of incurrence of such fees and disbursements), and (f) all accrued and unpaid administrative expenses, other than professional fees and disbursements, incurred by the Debtor in the Chapter 11 Case in compliance with the Budget prior to the occurrence of a Carve-Out Event and the expiration of the Default Notice Period (as defined in the Final DIP Order), in each of the foregoing clauses (a), (b), (c), (d), (e), and (f) to the extent allowed by the Court at any time (or, in the case of clause (f) only, to the extent incurred in the ordinary course of business, in compliance with the Budget); *provided*, *however,* that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (c), (d) and (e) above.

For purposes hereof, a "**Carve-Out Event**" shall occur, (i) with respect to the period prior to the closing of the Sale, upon the expiration of the Default Notice Period (as defined in the Final DIP Order) and upon the delivery of written notice thereof by the DIP Lender to bankruptcy counsel to the Debtor and bankruptcy

14

counsel to the Committee and (ii), with respect to the period after the closing of the Sale, upon the expiration of the Default Notice Period (as defined in the Final DIP Order) and upon the delivery of written notice thereof by the Prepetition Credit Parties to bankruptcy counsel to the Debtor and bankruptcy counsel to the Committee (a notice delivered pursuant to clause (i) or clause (ii) hereof, a "**Carve-Out Notice**"). Upon receipt of such notice, the Debtor shall provide immediate notice by email to all retained professionals informing them that a Carve-Out Event has occurred and that the Debtor's ability to pay professionals is subject to the Carve Out.

*Adequate Protection*

As adequate protection for the use of the Prepetition Collateral, including Cash Collateral (each as defined in the Interim DIP Order), the Prepetition Secured Parties with a valid, perfected, enforceable, continuing and non-avoidable prepetition lien on or security interest in property of the Debtor shall be granted adequate protection for, and in equal amount to, the diminution in value of its valid, perfected, enforceable, continuing and non-avoidable prepetition security interests in the form of superpriority claims and replacement liens on all assets securing the DIP Facility (the "**Adequate Protection Liens**"), which claims and Adequate Protection Liens shall be valid only to the extent that the Prepetition Liens are valid, and shall be junior in priority and subject in all respects to the DIP Liens, the Carve Out and the Permitted Senior Liens (and adequate protection liens granted to the holders thereof on the collateral securing the same, if any), but shall be senior to the Prepetition Liens; *provided*, *however*, that, the Adequate Protection Superpriority Claims shall not be payable from the proceeds of Avoidance Actions unless otherwise provided in the Final DIP Order (subject to entry of the Court thereof). In addition, the Prepetition First Lien Secured Parties shall be entitled to the payment of postpetition interest, as provided for in the applicable Prepetition Financing Documents; *provided*, *however*, that if, as a result of a successful Challenge, the value of the Prepetition Collateral securing the Prepetition First Lien Indebtedness (as defined in the Interim DIP Order) is less than the amount of such Prepetition First Lien Indebtedness, any interest payments previously made to the Prepetition First Lien Secured Parties shall be deemed allocated to the principal amount of the Prepetition First Lien Indebtedness and any excess thereof shall be disgorged to the Debtor's estate. Upon the later of the Sale closing date and the expiration of the Fee Review Period (as defined below), the Debtor shall immediately pay in cash to the applicable Prepetition Secured Parties all accrued and unpaid fees and disbursements owing under the Prepetition Financing Documents

15

and shall further pay the reasonable and documented fees and expenses incurred in connection with the Chapter 11 Case by the Prepetition Secured Parties.

As used herein, "**Fee Review Period**" shall mean a period of ten (10) calendar days following receipt by counsel to the Debtor, counsel to the Committee, and the U.S. Trustee of an invoice of fees and disbursements of any Prepetition Secured Party; *provided*, *however*, that payment of any such fees and expenses shall not be conditioned on the provision of time records and invoices compliant with U.S. Trustee guidelines or in any particular format; *provided further* that the Court shall resolve any disputes as to the reasonableness of any payment request.

| | |
|---|---|
| ***Commitment and Other Fees*** | None. |
| ***Expenses*** | With respect to fees and expenses incurred following the Closing Date, on the Sale closing date, the Borrower shall reimburse the DIP Lender for the fees and expenses incurred by the DIP Lender, with such fees and expenses being capitalized on the Sale closing date and added to the Principal Amount. |

***Representations and Warranties***

The Debtor hereby represents and warrants that:

1.  The Debtor is duly organized, validly exists, in good standing and qualified to do business in its state of organization.

2.  The Debtor has full power and authority to operate its business, conduct its business and to execute, deliver and perform its obligations under this Term Sheet, the associated documents, and its obligations under the Interim DIP Order and the Final DIP Order.

***Affirmative Covenants***

1.  The Debtor covenants and agrees with the DIP Lender that, unless the DIP Lender otherwise consents in writing, so long as any amount payable hereunder is outstanding or the DIP Facility shall remain in place, it shall only use the proceeds of the DIP Loans for the purposes set out herein and identified in and consistent with the Budget and subject to the challenge rights set forth in the section entitled "**Release**" below, shall not use such funds to commence any action against the DIP Lender or any of its present members, partners, managers, current equity holders, officers, agents, employees, attorneys and affiliates,

16

including, without limitation, the Prepetition Secured Parties.

2.  As more fully set forth in the Interim DIP Order and Final DIP Order, the Debtor further covenants and agrees that no Obligation under the DIP Facility shall be subject to setoff or recoupment or any such rights under Bankruptcy Code section 553 or otherwise with respect to any claim the Debtor may have against the DIP Lender arising on or before the Petition Date.

3.  The Debtor further covenants and agrees that it shall:

    (a)  deliver to the DIP Lender (i) certifications upon submission of the borrowing request for the DIP Loans with respect to compliance with the Budget and any other information reasonably requested by the DIP Lender, (ii) every month (after the first month of the Chapter 11 Case) and no later than the 17th day of each month (the "**Reporting Date**"), the Variance Report, (iii) every month a revised rolling-6 week cash flow projection no later than the 17th day of each month, (iv) as soon as possible and in any event within three (3) business days after an officer or director of the Debtor obtains actual knowledge, or after due inquiry, would have obtained such knowledge by acting in good faith and in a prudent manner in the performance of his or her duties, of the occurrence of any condition, occurrence or event which, after notice or lapse of time or both, would constitute an Event of Default (a "**Default**"), a statement of an officer or director of the Debtor setting forth details of such Default and the action which the Debtor has taken and proposes to take with respect thereto, and (v) as soon as possible and in any event within three (3) business days after an officer or director of the Debtor obtains actual knowledge, or after due inquiry, would have obtained such knowledge by acting in good faith and in a prudent manner in the performance of his or her duties, of the occurrence of any material adverse development with respect to any loss, damage, investigation, claim, litigation, action, proceeding, or controversy involving the Debtor, notice thereof and as soon as practicable thereafter, to the extent the DIP Lender requests,

17

copies of all documentation relating thereto;

(b) permit the DIP Lender and its representatives and designees to visit and inspect the properties, books, and records of the Debtor upon reasonable notice at the Debtor's expense;

(c) subject to the Budget, pay all taxes, assessments, contributions and other governmental charges imposed upon the Debtor or any of its properties or assets as they become due and payable, to the extent payment and/or enforcement thereof is not stayed as a result of the Chapter 11 Case;

(d) maintain in good working order all material properties used in the business of the Debtor, as and to the extent in good working order as of the Petition Date;

(e) maintain insurance with respect to the business and properties of the Debtor against loss of the kind and in the amounts maintained by the Debtor as of the Petition Date;

(f) comply in all material respects with the requirements of all applicable laws;

(g) promptly upon request execute and deliver such documents and do such other acts as the DIP Lender may reasonably request in connection with the DIP Facility, and in accordance with the DIP Documents (including but not limited to execution of any additional security documents that may be required by the DIP Lender to secure or perfect the DIP Liens), in each case at the Debtor's expense;

(h) maintain compliance with the Budget (subject to any Permitted Variance) and all other provisions of this Term Sheet;

(i) include the DIP Lender and the Prepetition Secured Parties (and any of their respective present members, partners, managers, current equity holders, officers, agents, employees, attorneys and affiliates) as released and exculpated parties in the release and exculpation provisions of any plan pursued in the Chapter 11 Case; and

18

|  | (j) | perform all obligations of the Debtor under the DIP Facility, the DIP Documents, and the Interim DIP Order and the Final DIP Order, as applicable. |

*Negative Covenants*  The Debtor covenants and agrees that it shall not:

1. except to the extent existing as of the Closing Date, incur any indebtedness (other than the DIP Loans and obligations permitted to be incurred under the Budget, any other indebtedness permitted in writing to be incurred by the DIP Lender and the Court, and any unsecured obligations incurred in the ordinary course of business by the Debtor and permitted to be incurred by the DIP Budget);

2. except to the extent existing as of the Closing Date and other than the Carve Out expenses as permitted by this Term Sheet and the Adequate Protection Liens as set forth in the proposed form of Interim Order attached as **Exhibit A** hereto, consent to the granting of adequate protection payments or liens, superpriority administrative expense claims or liens having priority senior or *pari passu* with the liens granted to the DIP Lender or the Adequate Protection Liens granted to the Prepetition Secured Parties or otherwise incur, create or suffer to exist any liens other than liens permitted in writing by the DIP Lender and the Prepetition Secured Parties and lien on escrow accounts and proceeds deposited therein, in each case arising in connection with the Sale; provided that the escrow agreements in connection therewith shall be in form and substance satisfactory to the DIP Lender;

3. except to the extent existing as of the Closing Date, make any investments in any person or make any loan to any person (other than as permitted in writing by the DIP Lender);

4. engage in any business other than the businesses engaged in by the Debtor on the Closing Date except with the written consent of the DIP Lender;

5. terminate or agree to any modification to any organizational documents of the Debtor except with the written consent of the DIP Lender; or

6. make any payment of prepetition claims or payment of postpetition items except in accordance with the Budget.

*Events of Default*  The occurrence of any one or more of the following events (each

19

such event and the expiry of the cure period, if any, provided in connection therewith, being herein referred to as an "**Event of Default**") shall constitute a default under this Term Sheet:

1.      The failure by the Debtor to perform or comply with any term, condition, covenant, or obligation (including a payment obligation) contained in this Term Sheet, the Interim DIP Order or Final DIP Order, on its part to be performed or complied with where any such failure to perform or comply shall not be remedied within three (3) business days following receipt by the Debtor and bankruptcy counsel to the Debtor and bankruptcy counsel to the Committee of notice of default from the DIP Lender.

2.      The cessation of the DIP Facility to be in full force and effect or the DIP Facility being declared by the Court to be null and void or the validity or enforceability the DIP Facility being contested by the Debtor or the Debtor denying that it has any further liability or obligation under the DIP Facility or the DIP Lender ceasing to have the benefit of the liens granted by the Interim DIP Order or Final DIP Order.

3.      Except as permitted in the Interim DIP Order or Final DIP Order, the entry of any order of the Court granting to any third party a superpriority claim or lien *pari passu* with or senior to that granted to the DIP Lender hereunder.

4.      The Debtor shall make any payment of principal or interest or otherwise on account of any indebtedness or payables other than the DIP Obligations or other than in accordance with the Budget approved by the DIP Lender or as otherwise authorized by this Term Sheet.

5.      If, as of any Reporting Date, the Debtor's cumulative cash disbursements from the period from the Petition Date through the end of any calendar month exceeds 15% from the amount included in the Budget (i.e., exceeds scheduled disbursements by more than 15%) or as otherwise authorized by this Term Sheet.

6.      The entry of an order converting the Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the Debtor filing a motion or not opposing a motion seeking such relief.

7.      The entry of an order dismissing the Debtor's Chapter 11

Case, or the Debtor filing a motion or not opposing a motion seeking such relief, unless consented to in writing by the DIP Lender.

8.      The entry of any order in the Debtor's Chapter 11 Case or any successor case, which order constitutes the stay, modification, appeal, or reversal of the Interim DIP Order or Final DIP Order or which otherwise affects the effectiveness of the Interim DIP Order or Final DIP Order.

9.      The entry of an order in the Debtor's Chapter 11 Case appointing any examiner having expanded powers or a trustee to operate all or any part of the Debtor's business.

10.     The entry of an order in the Debtor's Chapter 11 Case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any property, including the collateral pledged pursuant to the DIP Facility and the prepetition liens, of the Debtor or to commence or continue any prepetition litigation against the Debtor involving potential liability not covered by insurance, in excess of $500,000 in the aggregate.

11.     Any judgment or order as to postpetition liability or debt for the payment of money in excess of $500,000 shall be rendered against the Debtor individually or in the aggregate, and the enforcement thereof shall not have been stayed.

12.     Any non-monetary, judgment or order with respect to a postpetition event shall be rendered against the Debtor which does or would reasonably be expected to (a) cause a material adverse change in the financial condition, business, prospects, operations, or assets of the Debtor or (b) have a material adverse effect on the rights and remedies of the DIP Lender hereunder, and there shall be a period of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect.

13.     The Interim DIP Order or Final DIP Order being amended or modified without the prior written consent of the DIP Lender.

14.     That certain Asset Purchase Agreement, dated as of November 16, 2015 (the "**Stalking Horse APA**"), by and among Pandora Media, Inc., a Delaware corporation (the "**Purchaser**"), and Debtor, being amended, terminated or

21

otherwise modified without the prior written consent of the DIP Lender.

| | |
|---|---|
| ***Remedies*** | If any Event of Default occurs and is continuing, the DIP Lender may take any or all of the following actions: |

1.     declare the unpaid principal amount of the DIP Loans, all interest accrued and unpaid thereon, and all other amounts owing or payable under the DIP Documents, this Term Sheet, Interim DIP Order, or the Final DIP Order to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower;

2.     declare interest on the DIP Obligations to accrue at the default rate set forth in this Term Sheet, whereupon the interest on the DIP Obligations shall automatically accrue at the default rate;

3.     subject to the Default Notice Period, (a) enter upon any premises on or in which any of the DIP Collateral may be located and take possession of the DIP Collateral or complete processing, manufacturing, and repair of all or any portion of the DIP Collateral, (b) collect, foreclose, receive, appropriate, setoff, and realize upon any and all DIP Collateral, (c) remove any DIP Collateral from any premises on or in which the same may be located for the purpose of effecting the sale, foreclosure, or other disposition thereof or for any other purpose, (d) subject to the limitations set forth in that certain Written Consent of Prepetition Secured Lenders, dated as of November 16, 2015, by and among Iconical Investments II LP, Pulser Media, Inc. and Pandora Media, Inc., exercise its unqualified right to credit bid up to the full amount of the outstanding DIP Obligations in any sale of the DIP Collateral (or any part thereof), which credit bid may incorporate a credit bid of the Prepetition Indebtedness and the Adequate Protection Obligations (each as defined in the Interim DIP Order), without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under Section 726 of the Bankruptcy Code, or otherwise, and (d) take whatever other action the DIP Lender may deem necessary or desirable for the protection of its interests; and/or

4.     exercise all rights and remedies available to it (whether as a

Case: 15-31430    Doc# 122    Filed: 12/10/15    Entered: 12/11/15 12:32:41    Page 51 of 60

secured creditor or otherwise) under the DIP Facility, this Term Sheet, the Interim DIP Order, the Final DIP Order, or applicable law (including in respect of the DIP Collateral).

All rights, remedies and powers granted to the DIP Lender under the DIP Documents or the Interim DIP Order or Final DIP Order, as applicable, are cumulative, not exclusive, and enforceable, in the DIP Lender's discretion, alternatively, successively, or concurrently.

**Termination Event and Default Notice Period**

The Interim DIP Order shall include, without limitation, provisions that upon the occurrence of a Termination Event,[3] the automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies provided in the Interim DIP Order and the other DIP Documents, as applicable, and to take any or all of the following actions without further order of or application to this Court, including without limitation: (a) terminate the Debtor's use of Cash Collateral upon the expiration of the Default Notice Period; (b) immediately cease making the DIP Loans available to the Debtor and declare all DIP Obligations to be immediately due and payable; (c) immediately terminate the DIP Facility and the availability of the DIP Loans; (d) immediately set off any and all amounts held on account of or owed to the Debtor against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of, or subject to a lien in favor of the DIP Lender for application towards the DIP Obligations; and (e) take any other actions or exercise any other rights or remedies permitted under the Interim DIP Order and the other DIP Documents or applicable law to effect the repayment of the DIP Financing; *provided* that, notwithstanding anything herein to the contrary, no DIP Lender or Prepetition Secured Party shall enforce any DIP Liens against any DIP Collateral or exercise any other remedies prior to the expiration of the Default Notice Period. The Interim DIP Order shall further provide that (i) the automatic stay under section 362(a) of the Bankruptcy Code shall be automatically vacated and modified, effective following the expiration of the Default Notice Period, unless the Court has determined that an Event of Default has not occurred and/or is not continuing, (ii) any party-in-interest's sole recourse with respect to opposing such modification of the automatic stay under section

---

[3] "Termination Event" shall mean the earliest to occur of (a) 30 days after the entry of the Interim DIP Order (unless a Final Order approved by the DIP Lender in its sole discretion has been entered as of such date), (b) the occurrence of an Event of Default, (c) the occurrence of the Maturity Date, and (d) the date on which neither the Interim DIP Order nor the Final DIP Order is in full force and effect.

Case: 15-31430   Doc# 122   Filed: 12/10/15   Entered: 12/11/15 12:32:41   Page 52 of 60

362(a) of the Bankruptcy Code shall be to contest the occurrence and/or continuance of an Event of Default, (iii) during the Default Notice Period, the Debtor shall (x) have no right to request extensions of credit under the DIP Facility, other than with the consent of the DIP Lender, (y) have no right to use Cash Collateral other than (1) as approved in the Budget, (2) to contest in Good Faith (as defined in the Interim DIP Order) whether an Event of Default or Cash Collateral Termination Event, as applicable, has occurred, or (3) as otherwise permitted by the DIP Lender and the Prepetition Secured Parties, and (z) be entitled to an emergency hearing before the Court, with proper notice to the DIP Lender, solely for the purpose of contesting whether an Event of Default or Cash Collateral Termination Event, as applicable, has occurred and/or is continuing, (iv) the rights and remedies of the DIP Lender specified in the Interim DIP Order are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under hereunder or otherwise, (v) the Debtor shall cooperate fully with the DIP Lender in any permitted exercise of rights and remedies, whether against the DIP Collateral or otherwise.

| | |
|---|---|
| *Release* | The Interim DIP Order shall (i) contain and approve the admissions, stipulations, and agreements of the Debtor, on behalf of and for itself, with regard to the Prepetition Indebtedness, Prepetition Financing Documents, and Prepetition Liens (each as defined in the Interim DIP Order in substantially the form annexed hereto as **Exhibit A**) and (ii) provide that such admissions, stipulations, and agreements shall be binding on all parties-in-interest, including the Committee, if no "Challenge" (as defined and provided for in the Interim DIP Order) is brought within 60 days of entry of the Interim DIP Order, unless extended by the Court for cause, including the failure of the Debtor, the DIP Lender, or the Prepetition Secured Parties to cooperate with reasonable information requests. |

Upon the entry of the Final DIP Order and subject to the closing of the DIP Facility, in consideration of (a) the DIP Lender's agreement to the making of postpetition loans, advances, and providing other credit and financial accommodations to the Debtor pursuant to the provisions of this Term Sheet, the DIP Documents, the Interim DIP Order and the Final DIP Order and (b) the Prepetition Secured Parties' agreement to permit the Debtor to use the Cash Collateral and for the Prepetition Liens to be primed by the DIP Liens, the Debtor, on behalf of and for itself (collectively, the "**Releasors**"), shall forever release, discharge and acquit the DIP Lender and the Prepetition Secured Parties and any of their respective present members, partners, managers, current equity

24

holders, officers, agents, employees, attorneys and affiliates (collectively, the "**Releasees**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have, or hereafter can or may have against Releasees as of the date hereof, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, solely related to the DIP Financing and the Prepetition Indebtedness. In addition, upon the repayment of all DIP Obligations and termination of the rights and obligations arising under the DIP Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Lender), the DIP Lender in such capacity shall be released from any and all obligations, liabilities, actions, duties, responsibilities, and causes of action arising or occurring in connection with or related to this Term Sheet, the DIP Documents or the Interim DIP Order or Final DIP Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve Out expenses), on terms and conditions acceptable to the DIP Lender. Notwithstanding anything to the contrary herein, the Debtor's releases do not extend to the DIP Lender's obligations to make the advances and otherwise comply with the terms of this Term Sheet and the Interim DIP Order and Final DIP Order (but subject to the terms and conditions thereof).

| | |
|---|---|
| ***Expenses and Indemnification*** | The DIP Lender (and its present members, partners, managers, current equity holders, officers, agents, employees, attorneys and affiliates) will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities, or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court to arise from the gross negligence or willful misconduct of the relevant indemnified person. |
| ***Governing Law*** | California. |

IN WITNESS WHEREOF, the parties hereto have caused this Term Sheet to be executed by their respective officers thereunto duly authorized, as of this _____ day of December, 2015.

Borrower:

**RDIO, INC.**

By: _____
Name: Anthony Bay
Title: Chief Executive Officer

Lender:

**ICONICAL INVESTMENTS II LP**
By:     Iconical Fund Partners II Ltd.
Its:     General Partner


By: _____
Name: Murray Markiles
Title:  Director

Acknowledged and agreed, solely for the purpose of the priming of its Prepetition Liens and the use of Cash Collateral:

**PULSER MEDIA, INC.**,
as a Prepetition Secured Party


By: _____
Name:
Title:

**INTERIM DIP ORDER**

*[Filed as ECF No. 87]*

**EXHIBIT B**
**BUDGET**

# Revised Final Budget for Rdio Inc. Debtor in Possession

Budget excludes costs for subs and foreign entities
Billing shutdown as of 11/23 (subject to maximum extent technically feasible)

| | Week starting | | | | | | | | Post period payment | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 11/16/15 | 2 11/23/15 | 3 11/30/15 | 4 12/7/15 | 5 12/14/15 | 6 12/21/15 | 7 12/28/15 | 8 12/31/15 | | |
| **Cash Receipts** | | | | | | | | | | |
| Pre-petition activity [1] | | 247,234 | 387,923 | | | | | | | 635,157 |
| Post-petition activity [2] | 232,451 | 20,000 | 1,721 | | | 20,000 | | | | 274,172 |
| Payments under MSA | 1,250,000 | | 625,000 | | | 625,000 | | | | 2,500,000 |
| Amex Overpayment | | 50,000 | | | | | | | | 50,000 |
| **Total Cash Receipts** | 1,482,451 | 317,234 | 1,014,644 | - | - | 645,000 | - | - | - | 3,459,328 |
| | | | | | | | | | | |
| Prorated royalties, guarantees or service credits [3] | | | | | | | | | | |
| Music Label Royalties (free & paid subs) - Post petition billing | | | | | 177,592 | | | | | 177,592 |
| Music Publishers Royalties (free & paid subs) - Post petition billing | | | | | | | | | 161,950 | 161,950 |
| Music Label Royalties (free & paid subs) Pre-petition billing/Post-petition Period Usage | | | | | 239,107 | | | | | 239,107 |
| December Paid & Free Usage | | | | | | | | | 319,436 | 319,436 |
| Streaming/Bandwidth (Mbsaic / Akamai / Edgecast) | | | | 70,000 | | | | | | 70,000 |
| Datacenter | | 32,547 | | | 17,453 | | 100,000 | | | 150,000 |
| Dell equipment Leases | | | | 80,000 | | | 160,000 | | | 240,000 |
| Triton (ad server) | | | | 12,500 | | | 25,000 | | | 37,500 |
| Rovi (software licensing / artist bio) | | | | 11,500 | | | 23,000 | | | 34,500 |
| Cybersource (Payment Processing) | | | | | | | 8,904 | | | 8,904 |
| Music Report (service to calculate Publisher's royalties) | | | | | 33,250 | | 66,500 | | | 99,750 |
| **Total Cost of Service** | - | 32,547 | - | 174,000 | 467,402 | - | 383,404 | - | 481,386 | 1,538,739 |
| **People Cost** | | | | | | | | | | |
| Salaries & wages (inc. Employer's taxes) - transferred employees | | 650,380 | | 650,380 | | 650,380 | | | | 1,951,139 |
| Salaries & wages (inc. Employer's taxes) - Unknown status | | 275,066 | | 275,066 | | 275,066 | | | | 825,199 |
| Paid Time Off [4] | | | | | | 640,822 | | | | 640,822 |
| Benefits | | 130,500 | | | 15,000 | | | | | 145,500 |
| **Total Payroll** | - | 1,055,946 | - | 925,446 | 15,000 | 1,566,268 | - | - | - | 3,562,660 |
| Contractors/Consultants | | | 41,000 | | | | | | | 41,000 |
| **Total People Cost** | - | 1,055,946 | 41,000 | 925,446 | 15,000 | 1,566,268 | - | - | - | 3,603,660 |
| **Other Expenses** | | | | | | | | | | |
| Other Employee Expenses (Meals/refreshment) | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | | | | | 42,500 |
| Legal fees | | 85,000 | 85,000 | 85,000 | 85,000 | 80,000 | 80,000 | | | 500,000 |
| Medis | | | | 100,000 | | | | | | 100,000 |
| Bankruptcy service costs | | 25,000 | 25,000 | 25,000 | | | | | | 75,000 |
| Insurance Policies | | | 22,000 | | | | 22,000 | | | 44,000 |
| Office Rent / Other rentals | | | 62,500 | | | | 125,000 | | | 187,500 |
| Telephone/Internet | | | 8,000 | | | | 8,000 | | | 16,000 |
| Parking | | | 1,650 | | | | 1,650 | | | 3,300 |
| Utilities | | | 5,500 | | | | 5,500 | | | 11,000 |
| Office Supplies | | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | | 8,750 |
| Software | | | 10,000 | | | | | | | 10,000 |
| UCC Committee Investigation Cost | | | 50,000 | | | | | | | 50,000 |
| Miscellaneous [5] | | 50,000 | 50,000 | 50,000 | 25,000 | 25,000 | 25,000 | 25,000 | | 250,000 |
| **Total Other Expenses** | 8,500 | 169,750 | 329,400 | 269,750 | 119,750 | 106,250 | 268,400 | 26,250 | - | 1,298,050 |
| **TOTAL CASH FLOWS** | 1,473,951 | (941,009) | 644,244 | (1,369,196) | (602,352) | (1,027,518) | (651,804) | (26,250) | (481,386) | (2,981,120) |
| Opening Cash Balance | 143,525 | 1,617,476 | 676,466 | 1,320,710 | 2,951,514 | 2,349,362 | 1,321,844 | 670,040 | 643,790 | 143,525 |
| DIP Draws | | | | 3,000,000 | | | | | | 3,000,000 |
| Closing Cash Balance | 1,617,476 | 676,466 | 1,320,710 | 2,951,514 | 2,349,362 | 1,321,844 | 670,040 | 643,790 | 162,405 | 162,405 |

(1) Payments from third party payment processor for October 2015 period
(2) Billings from 16th thru 23rd of November + Advertising
(3) No services credits on acct of prepetition claims to be paid without further court order; Prorated royalties only to be paid to extent allowed under 503(b)
(4) Excludes portion of PTO greater than statutory cap outside of 180-day look-back
(5) Including Rovi