RON BENDER (SBN 143364)
PHILIP A. GASTEIER (SBN 130043)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; pag@lnbyb.com; kjm@lnbyb.com
Attorneys for Chapter 11 Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 15-31430 |
| RDIO, INC., | Chapter 11 |
| Debtor. | **DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION DATED JULY 12, 2016** |
| | Disclosure Statement Hearing: |
| | Date: July 26, 2016 |
| | Time: 11:00 a.m. |
| | Place: U.S. Bankruptcy Court |
| | Courtroom 17 |
| | 450 Golden Gate Ave., 16th Floor |
| | San Francisco, CA 94102 |
| | Judge: The Hon. Dennis Montali |
| | Plan Confirmation Hearing: |
| | Date: [To Be Scheduled] |
| | Time: [To Be Scheduled] |
| | Place: [Same As Above] |

1

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................2

II.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .................3

      A.    WHAT CREDITORS AND INTEREST HOLDERS WILL RECEIVE UNDER THIS PLAN.......3

      B.    UNCLASSIFIED CLAIMS .........................................3

      1.    Administrative Expenses ........................................ 3

      2.    Priority Tax Claims ............................................ 7

      C.    CLASSIFIED CLAIMS AND INTERESTS ...............................9

      1.    Classes of Secured Claims ...................................... 9

      2.    Class of Priority Unsecured Claims ............................ 12

      3.    Classes of General Unsecured Claims ........................... 13

      4.    Class of Interest Holders ..................................... 21

      D.    MEANS OF EFFECTUATING THIS PLAN AND IMPLEMENTATION OF THIS PLAN .........21

      1.    Funding for this Plan ......................................... 21

      2.    Cessation of Existence of the Debtor Following the Effective Date ............22

      3.    Post-Effective Date Estate Representative...................... 22

      4.    Disbursing Agent .............................................. 22

      5.    Dissolution of the Committee .................................. 23

      6.    Objections to Claims .......................................... 23

      7.    Avoidance Actions and Recoveries .............................. 25

      8.    Non-Avoidance Actions and Recoveries .......................... 26

      9.    Claims Against the Sony Parties ............................... 27

      10.   Release of Pulser, Pulser Affiliates, Iconical II and Iconical Affiliates ....................29

      11.   Releases of Debtor Affiliates and Pandora By All Participating Class 4 Claim Holders ..........................................31

      12.   Release by the Debtor Releasing Parties of Class 5 Released Parties ..........31

      13.   Applicability of Releases of Unknown Claims................... 32

      14.   Exclusions from Releases ...................................... 33

      15.   Continuing Confidentiality Obligations........................ 33

      16.   Exemption from Transfer Taxes ................................. 34

i

17. Employment of Professionals By the Estate Representative and Payment of Professional Fees and Expenses By the Estate Representative Incurred after the Effective Date .........................................................................................34

18. Establishment of the Reserve ...........................................................................35

19. Formation of the Creditors Trust and Appointment of the Creditors Trustee .............35

20. Employment of Professionals By the Creditors Trustee and Payment of Professional Fees and Expenses By the Creditors Trustee Incurred after the Effective Date ...........36

21. Distributions to be Made Pursuant to this Plan...............................................36

22. Exculpations and Releases ...............................................................................37

23. Injunctions.......................................................................................................37

24. Executory Contracts and Unexpired Leases ...................................................38

25. Changes in Rates Subject to Regulatory Commission Approval...................38

26. Retention of Jurisdiction ................................................................................38

27. Indemnity Claims Stipulation ........................................................................40

III. EFFECT OF CONFIRMATION OF THIS PLAN ....................................................41

    A. DISCHARGE.............................................................................................41

    B. MODIFICATION OF THIS PLAN ................................................................41

    C. POST-CONFIRMATION STATUS REPORTS ..............................................42

    D. POST-CONFIRMATION CONVERSION/DISMISSAL .................................42

    E. FINAL DECREE .......................................................................................42

# I. **INTRODUCTION**

Rdio, Inc., chapter 11 debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Debtor"), is the Debtor in a pending chapter 11 bankruptcy case. The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on November 16, 2015.

This document is the Debtor's Third Amended Plan of Reorganization Dated July 12, 2016 ("Plan") that is being proposed by the Debtor. This Plan includes a good faith compromise of certain claims and controversies pursuant to section 1123 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019.

Chapter 11 allows the Debtor, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization. This Plan is a plan of reorganization which has been proposed by the Debtor and is supported by the Official Committee of Unsecured Creditors (the "Committee") and by the Debtor's two pre-petition secured creditors consisting of Pulser Media, Inc. ("Pulser") and Iconical Investments II LP ("Iconical II") (with Pulser and Iconical II collectively defined as the "Prepetition Secured Creditors"). This Plan is an integrated global settlement that is the result of extensive negotiations between the Debtor, the Committee, and the Prepetition Secured Creditors, all of whom support this Plan and confirmation of this Plan. The effective date of this Plan (the "Effective Date") will be the first business day following the date of entry of the Court order confirming this Plan (the "Plan Confirmation Order") and the satisfaction or waiver by the Debtor and the Prepetition Secured Creditors of all of the following conditions to the effectiveness of this Plan: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; (c) this Plan and all documents, instruments and agreements to be executed in connection with this Plan shall have been

2

executed and delivered by all parties to such documents, instruments and agreements, and (d) the Plan Confirmation Order must be reasonably acceptable to the Debtor, the Committee and the Prepetition Secured Creditors. All capitalized terms used in this Plan which are not defined in this Plan but which are defined in the Debtor's Disclosure Statement filed in respect of this Plan (filed as Docket Number 357) (the "Disclosure Statement") shall be deemed to have the same definitions as used in the Disclosure Statement.

## II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A. What Creditors and Interest Holders Will Receive Under this Plan**

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their right to priority. This Plan states whether each class of claims or interests is impaired or unimpaired. This Plan sets out the treatment each class will receive.

**B. Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following claims in a class.

**1. Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's chapter 11 case which are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid in full on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(2) administrative claims and their treatment under this Plan.

3

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date out of the Estate Funds |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the Effective Date out of the Estate Funds |
| Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), bankruptcy counsel to the Debtor | $750,000.00 (est.), which would be in addition to the post-petition fees and expenses paid to LNBYB by the Debtor | Paid in full (or in such other amount as agreed among LNBYB, the Debtor, and the Prepetition Secured Creditors) out of the Estate Funds within the later of (i) five days following the Effective Date and (ii) five days following the date of entry of an order of the Court allowing such fees and expenses |
| Winston & Strawn LLP, special litigation counsel to the Debtor | The Debtor has paid a $100,000 post-petition retainer to WS. The balance of any fees earned by WS will be paid in the manner described in the Debtor's amended application to employ to WS (filed as docket number 305). | Treatment will be as described in the Debtor's amended application to employ WS (filed as docket number 305). |
| Moelis & Company ("Moelis"), financial advisor to the Debtor | $0 (est.) as Moelis has already been paid the full amount of its allowed fees and expenses | N/A |
| Pachulski Stang Ziehl & Jones LLP ("PSZJ"), bankruptcy counsel to the Committee | $500,000.00 (est.), which would be in addition to the post-petition fees and expenses already paid to PSZJ by the Debtor | Paid in full within the later of (i) five days following the Effective Date and (ii) five days following the date of entry of an order of the Court allowing such fees and expenses out of the Unsecured Creditor Funds and the Estate Funds as explained below |
| FTI Consulting ("FTI"), financial advisor to the Committee | $150,000.00 (est.), which would be in addition to the post-petition fees and expenses already paid to FTI by the Debtor | Paid in full within the later of (i) five days following the Effective Date and (ii) five days following the date of entry of an order of the Court allowing such fees |

4

| | | and expenses out of the Unsecured Creditor Funds and the Estate Funds as explained below |
|---|---|---|
| Post-Petition Non-Professional Fee Administrative Claims | $0 (est.) as the Debtor expects that all such administrative claims will have been paid in full prior to Plan confirmation | Paid in full (or in such other amount as agreed among the administrative claimant, the Debtor, and the Prepetition Secured Creditors) out of the Estate Funds within the later of (i) five days following the Effective Date or (ii) if the Debtor and other parties disagree about the amount owed, five days following the date of entry of an order of the Court allowing such administrative claim |
| **TOTAL** | $1,400,000.00 est. | Paid in the manner described above |

Court Approval of Professional Fees and Expenses Required and Source of Funding

Payment:

The Court must approve all professional fees and expenses listed in this chart before

they may be paid.  For all professional fees and expenses except fees owing to the Clerk of the

Bankruptcy Court and fees owing to the UST, the professional in question must file and serve a

properly noticed fee application and the Court must rule on the application.  Only the amount of

fees and expenses allowed by the Court (or such other amount as agreed among the Debtor, the

Prepetition Secured Creditors, and the professional) will be required to be paid under this Plan.

The administrative claim amounts set forth above simply represent the Debtor's best estimate as

to the amounts of allowed administrative claims in this case for the Debtor's professionals and

the Committee's best estimate as to the amounts of allowed administrative claims in this case

for the Committee's professionals.  The actual administrative claims through the Effective Date

may be higher or lower than the figures set forth above.   Much  of  whether  the  actual

5

administrative claims for professionals exceed the estimates set forth above will be dependent upon whether the Debtor and its counsel are required to engage in any substantial litigation regarding the confirmation of this Plan, objecting to claims or any other matter, including continuing with post-Effective Date litigation with the Sony Parties. To the extent the Debtor and its counsel are required to engage in any such substantial litigation, LNBYB and any other professionals who will be employed by the Debtor are likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the estimated figures set forth above. By voting to accept this Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. Similarly, professionals who have been employed in this case are not being deemed to have agreed that the figures set forth above represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Court order as such fees and expenses are just estimates provided at the time of the preparation of this Plan.

At a hearing held on April 1, 2016, the Court awarded (i) LNBYB fees and expenses of $907,034.56 through February 29, 2016; (ii) PSZJ fees and expenses of $422,714.74 through February 29, 2016; and (iii) FTI fees of $262,631 through February 29, 2016. Of the $1,380,000 which the Debtor had deposited into a segregated account for the benefit of these professionals pursuant to previously agreed upon Court orders and budgets (the "Professional Fee Account"), the Court authorized payment of (i) $861,410.72 to LNBYB – leaving an unpaid balance of $45,623.84 through February 29, 2016; (ii) $269,168.62 to PSZJ – leaving an unpaid balance of $153,546.12 through February 29, 2016; and (iii) $249,420.66 to FTI – leaving an unpaid balance of $13,210.34 through February 29, 2016. These unpaid balances through February 29, 2016 total $212,380.30. With the agreement of the Debtor, the Prepetition

Secured Creditors and the Committee, this total unpaid balance of $212,380.30 incurred through February 29, 2016, which has already been allowed by the Court, will be paid out of the Estate Funds (inclusive of any funds which have been deposited into the Professional Fee Account after April 1, 2016). The unpaid balance of $153,546.12 owing to PSZJ and the unpaid balance of $13,210.34 owing to FTI through February 29, 2016 are collectively referred to herein as the "Committee Professionals Unpaid Balances". All fees and expenses incurred by PSZJ and FTI from March 1, 2016 through the Plan Effective Date, which are allowed by the Court, will be paid out of the Unsecured Creditors Fund. All fees and expenses incurred by LNBYB through the Plan Effective Date, which are allowed by the Court, will be paid out of the Estate Funds. Fees and expenses incurred by professionals after the Plan Effective Date will be paid in the manner set forth below in the section of this Plan entitled "Means of Effectuating this Plan and Implementation of this Plan". The $100,000 post-petition retainer the Debtor paid to WS was paid out of the Estate Funds, and the expenses incurred by WS will be paid out of the Estate Funds. All further fees to be paid to WS will be paid out of the Estate Funds or out of the Unsecured Creditors Fund depending upon the outcome of any litigation brought by the Debtor against Sony Music Entertainment and any affiliates ("Sony") and Orchard Enterprises, Inc. ("Orchard") (with Sony and Orchard collectively defined as the "Sony Parties"), computed in the manner described in the Debtor's amended application to employ WS (filed as docket number 305).

### 2. Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Effective Date, equal to the allowed

7

amount of such allowed tax claims, over a period ending not later than five years after the Petition Date. As set forth in the Debtor's bankruptcy schedules, the Debtor believes that it owed as of the Petition Date a total of approximately $130,326 to taxing agencies, which amounts are entitled to priority under 11 U.S.C. § 507(a)(8). A chart setting forth the identities of each of these taxing agencies and the amounts of their priority tax claims is set forth in exhibit "2" to the Disclosure Statement (the "Priority Tax Claims Chart").[1] The Debtor is continuing with its review of the scheduled and filed priority tax claims. The Debtor will file objections to any filed tax claims which the Debtor believes are not valid. The Priority Tax Claims Chart also indicates all additional priority tax claims which were asserted in timely filed proofs of claim. The Priority Tax Claims Chart also indicates all additional priority tax claims which were asserted in timely filed proofs of claim. The Debtor has included such filed tax claims in the Priority Tax Claims Chart for information purposes only. The Debtor is not agreeing to the allowance of any such filed tax claims, and the Debtor reserves all rights to file and prosecute objections to any such filed tax claims. The Debtor will pay allowed priority tax claims in full out of the Estate Funds on the Effective Date unless there is a dispute with any such priority tax claim. If there is a dispute, the Debtor will pay any such disputed priority tax claim within ten days following the date of entry of an order of the Court allowing such disputed priority tax claim, inclusive of interest accrued following the Effective Date at the

---

[1] The Debtor believes that the scheduled priority claims of the San Francisco Tax Collector (in the total amount of $106,890.44), and the filed proof of claim (Claim No. 22-1) of the San Francisco Tax Collector (filed as a secured claim) have been satisfied. The Debtor is in the process of contacting the San Francisco Tax Collector in order to obtain confirmation that these claims have been satisfied. The Debtor will either enter into a stipulation with the San Francisco Tax Collector indicating that these claims have been satisfied, or the Debtor will amend its Schedules of Assets and Liabilities to reflect that no amounts are due to the San Francisco Tax Collector and the Debtor will object to the proof of claim filed by the San Francisco Tax Collector.

8

statutory rate.

## C. Classified Claims and Interests

### 1. Classes of Secured Claims

Secured claims are claims secured by liens on property of the Debtor's estate. The following is a description of this Plan's treatment of the classes containing the Debtor's known secured claims:

<u>Class 1</u> - Class 1 is comprised of the pre-petition secured claim of Iconical, which shall be deemed allowed in the amount of $4,220,833, plus all accrued interest, fees, and other amounts due and payable thereunder (with the final class 1 allowed claim estimated to be approximately $4,500,000). The class 1 claim is secured by a first priority lien against all or substantially all of the assets of the Debtor's estate. The class 1 claim is not impaired under this Plan and is therefore not entitled to vote on this Plan. The class 1 allowed claim will be paid in full in cash from the Estate Funds on the Effective Date.

<u>Class 2</u> - Class 2 is comprised of the pre-petition secured claim of Pulser. Pursuant to the Secured Creditor Settlement, the total claim of Pulser shall be deemed allowed in the amount of $184,000,000, which is inclusive of all accrued interest, fees, and other amounts due and payable thereunder through the Petition Date. The class 2 secured claim of Pulser is secured by a second priority lien (junior only to the lien of Iconical) against all or substantially all of the assets of the Debtor's estate. Pulser's class 2 allowed claim will be equal to all Estate Funds + all future recoveries by the Debtor or its bankruptcy estate from the Escrowed Funds + reimbursement of all "Previously Advanced Funds" (defined below) out of any affirmative recoveries obtained from the pursuit of claims against the Sony Parties which are remaining after (i) all non-professional fees/expenses allowed administrative claims have been paid in full (and all disputed administrative claims have been resolved to final order or an adequate reserve

9

has been maintained by the Debtor to fund any such disputed administrative claims in the event they are ultimately allowed by final order); (ii) the allowed fees and expenses of the Debtor's professionals and the Committee Professionals Unpaid Balances have been paid in full; (iii) the Plan Reserve has been fully funded; (iv) all allowed priority tax claims have been paid in full (and all disputed priority tax claims have been resolved to final order or an adequate reserve has been maintained by the Debtor to fund any such disputed priority tax claims in the event they are ultimately allowed by final order); (v) the class 1 allowed claim has been paid in full; (vi) all class 3 allowed claims have been paid in full (and all disputed class 3 claims have been resolved by final order or an adequate reserve has been maintained by the Debtor to fund any such disputed class 3 claims in the event they are ultimately allowed by final order); and (vii) the Unsecured Creditors Fund has been fully funded.

The class 2 secured claim of Pulser is estimated to be in the amount of approximately $48,214,153 if Pulser is ultimately paid the full amount of the Escrowed Funds and none of the Previously Advanced Funds are recovered.[2] The balance of Pulser's allowed claim, estimated to be in the amount of approximately $135,785,847 (the "Pulser Unsecured Claim"), will be included in class 4 as a class 4 allowed claim and be treated in the manner described below in the treatment of class 4 claims. The class 2 claim is impaired under this Plan and is therefore entitled to vote on this Plan. On account of its class 2 secured claim, Pulser will receive all of the Estate Funds + all future recoveries by the Debtor or its bankruptcy estate from the Escrowed Funds + reimbursement of all Previously Advanced Funds out of any affirmative recoveries obtained from the pursuit of claims against the Sony Parties which are remaining after (i) all non-professional fees/expenses allowed administrative claims have been paid in full

---

[2] Attached as Exhibit "6" to the Disclosure Statement is a computation setting forth the estimated amount of the class 2 secured claim of Pulser.

Case: 15-31430    Doc# 358    Filed: 07/12/16    Entered: 07/12/16 15:32:04    Page 12 of 47

(and all disputed administrative claims have been resolved to final order or an adequate reserve has been maintained by the Debtor to fund any such disputed administrative claims in the event they are ultimately allowed by final order); (ii) the allowed fees and expenses of the Debtor's professionals and the Committee Professionals Unpaid Balances have been paid in full; (iii) the Plan Reserve has been fully funded; (iv) all allowed priority tax claims have been paid in full (and all disputed priority tax claims have been resolved to final order or an adequate reserve has been maintained by the Debtor to fund any such disputed priority tax claims in the event they are ultimately allowed by final order); (v) the class 1 allowed claim has been paid in full; (vi) all class 3 allowed claims have been paid in full (and all disputed class 3 claims have been resolved by final order or an adequate reserve has been maintained by the Debtor to fund any such disputed class 3 claims in the event they are ultimately allowed by final order); and (vii) the Unsecured Creditors Fund has been fully funded.

In addition, in consideration of the Prepetition Secured Creditors permitting the Debtor to use cash collateral during the chapter 11 case and to use the remaining Estate Funds, which constitutes Pulser's collateral, to fund all payment obligations under this Plan (including, but not limited to the establishment and funding of the Unsecured Creditors Fund), on the Effective Date (i) the Debtor and the Debtor's bankruptcy estate will be permanently deemed to have released the "Lender Released Parties" (as defined in Exhibit "8" of the Disclosure Statement), which includes Pulser and all Pulser Affiliates, from any and all claims or causes of action that the Debtor or the Debtor's bankruptcy estate (or any representative of the Debtor's bankruptcy estate, including the Committee and any subsequently appointed trustee) may have against any of the Lender Released Parties, including Pulser or any of the Pulser Affiliates; (ii) the class 2 secured claim of Pulser and the liens which secure Pulser's class 2 claim shall be deemed permanently valid and allowed; (iii) the Debtor and the Debtor's bankruptcy estate will be

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 13 of 47

permanently deemed to have released Iconical II and all Iconical Affiliates from any and all claims or causes of action that the Debtor or the Debtor's bankruptcy estate (or any representative of the Debtor's bankruptcy estate, including the Committee and any subsequently appointed trustee) may have against Iconical II or any of the Iconical Affiliates; and (iv) the class 1 claim of Iconical II and the liens which secure  Iconical II's class 1 claim shall be deemed permanently valid and allowed.

### 2. Class of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The Debtor paid all of the priority wage related claims of those employees who were still employed by the Debtor as of the Petition Date.  As set forth in the Debtor's bankruptcy schedules, the Debtor believes that it owes a total of approximately $273,909 to former employees which amounts are entitled to priority under 11 U.S.C. § 507(a)(4).  A chart setting forth the identities of each of these individuals and the amounts of their claims that the Debtor believes are entitled to priority is set forth in exhibit "1" to the Disclosure Statement (the "Priority Wage Claims Chart").  The claims bar date in this case was March 21, 2016.  The Debtor is continuing with its review of the scheduled and filed priority wage related claims.  The Debtor will file objections to any filed priority wage related claims which the Debtor believes are not valid.  The Priority Wage Claims Chart also indicates all additional priority wage claims which were asserted in timely filed proofs of claim.  All allowed non-tax priority claims will be treated as class 3 claims under this

Plan. The Debtor will pay all allowed non-tax priority claims in full out of the Estate Funds on the Effective Date unless there is a dispute with any such non-tax priority claim. If there is a dispute, the Debtor will pay any such disputed non-tax priority claim within ten days following the date of entry of an order of the Court allowing such disputed non-tax priority claim.

### 3. Classes of General Unsecured Claims

General unsecured claims are pre-petition unsecured claims which are not entitled to priority under Bankruptcy Code Section 507(a). The following identifies this Plan's treatment of the classes containing <u>all</u> of the Debtor's non-priority general unsecured claims:

<u>Class 4</u> - Class 4 is comprised of all non-priority general unsecured claims other than the general unsecured claims of Universal and Warner. The Class 4 Claims Chart attached as Exhibit "3" to the Disclosure Statement contains the details of all of the Debtor's scheduled class 4 claims as well as all class 4 claims asserted in timely filed proofs of claim, excluding the Pulser Unsecured Claim.[3] As set forth in the Class 4 Claims Chart, exclusive of the Pulser Unsecured Claim, the Debtor estimates a preliminary low case estimate of approximately $24,217,976 of class 4 claims (if no filed proofs of claim are allowed in amounts which are higher than scheduled by the Debtor), and the Debtor estimates a preliminary high case estimate of approximately $46,697,348 of class 4 claims (if every timely filed proof of claim is allowed in the amount which is higher than scheduled by the Debtor).[4] The Debtor is continuing with its review of the scheduled and filed class 4 claims and will update the Class 4 Claims Chart as appropriate. Including a claim in the Class 4 Claims Chart is not an acknowledgement by the Debtor of the validity of any class 4 claim. The Debtor reserves all rights to object to any class

---

[3] The Class 4 Claims Chart does not include certain unliquidated claims, including an unliquidated claim asserted by SoundExchange.

[4] The claims bar date in this case was March 21, 2016 and has therefore passed.

4 claim at any time, and the rights of all other parties in interest to object to any class 4 claim (other than the Pulser Unsecured Claim) at any time are strictly preserved. Class 4 claims are impaired under this Plan and are therefore entitled to vote on this Plan.

**Treatment**:

Each holder of a class 4 allowed claim will receive a payment from the Unsecured Creditors Fund equal to its pro rata share of the Unsecured Creditors Fund remaining after (i) payment of the $100,000 settlement payment to Warner, (ii) payment of the $125,000 settlement payment to Universal, (iii) payment of the Committee Professional Fees, and (iv) payment of any WS contingency fee which is required to be paid out of the Unsecured Creditors Fund, which the Debtor estimates will result in a payment equal to approximately 5.4% of the amount of their class 4 allowed claim.

In addition, each holder of a class 4 allowed claim is being provided with the voluntary option of receiving an additional pro rata payment from the Unsecured Creditors Fund resulting from an assignment by Pulser of the distribution that Pulser would otherwise be entitled to receive on account of its unsecured claim (the "Pulser Allocation Amount"), which the Debtor estimates will result in each such holder of a class 4 allowed claim receiving as much as 15%-25% more on account of its class 4 allowed claim. The tradeoff for receiving this additional payment is the affirmative agreement of the class 4 claim holder to provide a release of all claims against (i) all of the "Debtor Affiliates" (as defined in Exhibit "8" of the Disclosure Statement), (ii) all of the "Lender Released Parties" (as defined in Exhibit "8" of the Disclosure Statement), and (iii) Pandora (with such release of Pandora limited to any claim such creditor has against Pandora resulting from or related to any claim such creditor has against the Debtor or any of the Debtor Affiliates). The reason for the release of the Debtor Affiliates is to avoid claims that the Debtor Affiliates will likely assert against the Debtor and/or the Lender Released

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 16 of 47

Parties if they are sued. The reason for the release of Pandora is to avoid the depletion of the Escrowed Funds, which are part of the funds that will be paid to Pulser on account of Pulser's class 2 allowed claim.

Those class 4 claim holders who affirmatively agree to provide these third party releases (by indicating that decision in its timely returned plan ballot or by signing and timely returning the stamped and addressed post card enclosed with the Plan package) are referred to as "Participating Class 4 Claim Holders". The amount of the additional payment that will be made to each Participating Class 4 Claim Holder will be on a pro rata basis based upon the amount of the respective class 4 allowed claim relative to the amounts of all class 4 allowed claims who are Participating Class 4 Claim Holders.

Class 4 claim holders who do not affirmatively agree to provide these third party releases (by indicating that decision in its timely returned plan ballot or by signing and timely returning the stamped and addressed post card enclosed with the Plan package) will not receive the Pulser Allocation Amount (i.e., the additional payment from the Pulser assignment) but will retain all rights and claims against all third parties other than (a) any claim of the Debtor or its estate asserted derivatively by such class 4 claim holder or (b) any claim that has been released pursuant to paragraph 20 of the Final DIP Order (the "Retained Claims"), recognizing that the Debtor does not believe that any such Retained Claims have any validity.

**Pulser Allocation Amount:**

As part of the Secured Creditor Settlement which is incorporated into this Plan and which was negotiated between the Debtor, Pulser and the Committee, the parties have agreed that the Pulser Unsecured Claim shall be deemed allowed in the reduced amount of $100 million (the "Pulser Allowed Class 4 Claim"), amounting to an estimated reduction of approximately $35,785,847. As part of the Secured Creditor Settlement, Pulser has agreed to

15

assign to each Participating Class 4 Claim Holder a proportional share of the distribution that Pulser would otherwise be entitled to receive from the Unsecured Creditors Fund on account of the Pulser Allowed Class 4 Claim computed as (i) the allowed amount of the class 4 claim of the Participating Class 4 Claim Holder divided by the total amount of all class 4 allowed claims of all Participating Class 4 Claim Holders and then multiplied by the distribution that Pulser would be entitled to receive from the Unsecured Creditors Fund on account of the Pulser Allowed Class 4 Claim if not for this assignment (the "<u>Pulser Allocation Amount</u>").

Participating Class 4 Claim Holders may not receive more than 100% of the amount of their class 4 allowed claims. Once all Participating Class 4 Claim Holders have been paid 100% of the amount of their class 4 allowed claims, any additional funds that would otherwise be paid to Participating Class 4 Claim Holders will be paid to Pulser.

Several examples of illustrative recoveries for Participating Class 4 Claim Holders are set forth in the Disclosure Statement.

The Pulser Allowed Class 4 Claim, at $100 million, is substantially larger than all of the other general unsecured claims combined – entitling Pulser to receive the vast majority of any funds which are ultimately distributed to holders of class 4 allowed claims. Under this Plan, Pulser has agreed to assign to each Participating Class 4 Claim Holder a proportional share of the distribution that Pulser would otherwise be entitled to receive from the Unsecured Creditors Fund, which is defined above as the "<u>Pulser Allocation Amount</u>".

**<u>Additional Recovery from Causes of Action</u>**

In addition to the recoveries described above, each holder of a class 4 allowed claim will receive its pro rata distribution of any net recovery by the estate from the pursuit of any causes of action other than avoidance causes of action after repayment to Pulser for all advances made from the Estate Funds related to such causes of action (including any payments made to WS and

16

to pay for third party expenses) and all payments made to professionals employed in this case (collectively, "Previously Advanced Funds"). Pulser shall receive any remaining net proceeds from the pursuit of such causes of action after all other holders of class 4 allowed claims have been paid in full.

The distribution to holders of class 4 allowed claims will be made within the later of (i) thirty days following the Effective Date; and (ii) thirty days after the final disputed class 4 claim is resolved by final order (or as soon as reasonably practicable thereafter). The Creditors Trustee reserves the right to seek an order of the Court, after notice and a hearing, authorizing the Creditors Trustee to make one or more interim distributions to holders of class 4 allowed claims. As part of any such request by the Creditors Trustee to make such an interim distribution, the Creditors Trustee will seek an order of the Court, after notice and a hearing, providing for the Creditors Trustee to maintain a sufficient reserve to enable the Creditors Trustee to make a pro rata payment to holders of then disputed class 4 claims in the event such disputed class 4 claims become class 4 allowed claims.

Participating Class 4 Claim Holders may not receive more than 100% of the amount of their class 4 allowed claims. Once Participating Class 4 Claim Holders have been paid 100% of the amount of their class 4 allowed claims, any additional funds that would otherwise be paid to Participating Class 4 Claim Holders will be paid to Pulser.

**THE DEBTOR URGES EACH CLASS 4 CLAIM HOLDER TO READ THE LETTER FROM THE COMMITTEE ATTACHED AS EXHIBIT "7" TO THE DISCLOSURE STATEMENT. AN ADDITIONAL COPY OF THE COMMITTEE LETTER HAS BEEN PROVIDED TO YOU AS A STAND ALONE LETTER IN BLUE COLOR IN THE PLAN SOLICITATION PACKAGE THAT HAS BEEN SENT TO EACH CLASS 4 CLAIM HOLDER.**

17

Class 5 - Class 5 is comprised of the non-priority general unsecured claims of Universal. The Debtor scheduled Universal as having a royalty claim in the amount of $219,267.65 and a contract claim of $590,724.06 for a total claim of $809,991.71. Universal filed three proofs of claim asserting a claim in the amount of $482,496.68 for Universal International Music B.V., a claim in the amount of $629,374.16 for UMG Recordings, Inc., and a claim in the amount of $189,305 for Universal Music Canada, Inc. (for total claims of $1,301,175.84). The Debtor scheduled Universal Music Group Distribution as having a claim in the amount of $590,724.06. That specific Universal entity did not file any proof of claim, but the Debtor assumes that this claim is subsumed in the three claims filed by Universal. The Debtor and Universal have reached a settlement agreement, which is supported by the Committee, under which Universal will be paid $125,000.00 from the Unsecured Creditors Fund in full settlement of Universal's general unsecured claims. There will be mutual releases, discovery waivers, and related provisions, but Universal is not being provided the opportunity to participate in the Pulser Allocation Amount. The Debtor's settlement with Universal will be the subject of a written settlement agreement (the "Universal Settlement Agreement") that will be part of a separately filed settlement motion with the Court. The Debtor intends to have the Universal Settlement Agreement approved as soon as possible, and anticipates that a hearing to approve the Universal Settlement Agreement will be held well in advance of the confirmation hearing. In the event of any inconsistency between the terms of this Plan and the terms of the Universal Settlement Agreement which is approved by the Court, the terms of the Universal Settlement Agreement shall govern and control and, if there is an inconsistency, nothing in this Plan shall modify or be deemed to modify the provisions of the Universal Settlement Agreement.

The class 5 claims of Universal are impaired under this Plan and are therefore entitled to vote on this Plan. The Debtor believes that the treatment of the class 5 claims of Universal is

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 20 of 47

materially worse than the treatment being afforded to holders of class 4 allowed claims. By receiving $125,000 in full settlement and satisfaction of its class 5 claims, Universal is (i) receiving a payment equal to approximately 9.6% of its asserted claims, (ii) providing third party releases substantially the same as all Participating Class 4 Claim Holders must provide in order to share in the Pulser Allocation Amount so long as Universal receives third party releases as set forth in the Universal Settlement Agreement. The Debtor believes that it is clear that every Participating Class 4 Claim Holder will ultimately receive from the Unsecured Creditors Fund a distribution that is substantially in excess of the approximately 9.6% that Universal will be receiving under its settlement with the Debtor, and any class 4 claim holder who does not elect to become a Participating Class 4 Claim Holder will have determined that the benefit of retaining the Retained Claims and not providing the third party releases is more valuable than receiving its pro rata share of the Pulser Allocation Amount. Universal is not being provided that option. Another difference involving Universal is that the Debtor believes that it may have potentially valuable claims against Universal which would serve to reduce the amount of Universal's allowed claims, recognizing that Universal firmly denies any liability to the Debtor. All such claims that the Debtor may have against Universal are being released. The Debtor therefore believes that the unique manner in which the Universal claims are being treated under this Plan justifies, and in fact mandates, separately classifying the Universal claims from all other general unsecured claims.

Class 6 - Class 6 is comprised of the non-priority general unsecured claims of Warner. The Debtor scheduled Warner as having a royalty claim in the amount of $137,500 and a contract claim of $432,909.22 for a total claim of $570,409.22. Warner has filed a proof of claim asserting a claim in the amount of $619,796.62. The Debtor and Warner have reached a settlement agreement, which is supported by the Committee, under which Warner will be paid

19

$100,000.00 from the Unsecured Creditors Fund in full settlement of Warner's claims. There will be mutual releases, but Warner is not being provided the opportunity to participate in the Pulser Allocation Amount. The Debtor's settlement with Warner will be the subject of a written settlement agreement that will be part of a separately filed settlement motion with the Court. In the event of any inconsistency between the terms of this Plan and the terms of any such written settlement agreement which is approved by the Court, the terms of such written settlement agreements shall control.

The class 6 claims of Warner are impaired under this Plan and are therefore entitled to vote on this Plan. The Debtor believes that the treatment of the class 6 claims of Warner is materially worse than the treatment being afforded to holders of class 4 allowed claims. By receiving $100,000 in full settlement and satisfaction of its class 6 claims, Warner is receiving a payment equal to approximately 16.1% of its asserted claims and providing all of the third party releases that all Participating Class 4 Claim Holders must provide in order to share in the Pulser Allocation Amount. The Debtor believes that every Participating Class 4 Claim Holder will ultimately receive from the Unsecured Creditors Fund a distribution that is in excess of the approximately 16.1% that Warner will be receiving under its settlement with the Debtor, and any class 4 claim holder who does not elect to become a Participating Class 4 Claim Holder will have determined that the benefit of retaining the Retained Claims and not providing the third party releases is more valuable than receiving its pro rata share of the Pulser Allocation Amount. Warner is not being provided that option. Another difference involving Warner is that the Debtor believes that it may have potentially valuable claims against Warner which would serve to reduce the amount of Warner's allowed claims, recognizing that Warner firmly denies any liability to the Debtor. All such claims that the Debtor may have against Warner are being released under the Debtor's settlement agreement with Warner. The Debtor therefore

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 22 of 47

believes that the unique manner in which the Warner claims are being treated under this Plan justifies, and in fact mandates, separately classifying the Warner claims from all other general unsecured claims.

### 4. Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. The following identifies this Plan's treatment of the class of interest holders:

<u>Class 7</u> - Class 7 is comprised of all equity interests in the Debtor. While class 7 interests are impaired under this Plan, holders of class 7 interests are not entitled to vote on this Plan as they are deemed not to have accepted this Plan under 11 U.S.C. §1126(g). Class 7 interest holders will not receive any of the Estate Funds or other distribution from this estate on account of their class 7 equity interests. All equity interests in the Debtor will be deemed cancelled and extinguished on the Effective Date.

### D. Means of Effectuating this Plan and Implementation of this Plan

### 1. Funding for this Plan

This Plan will be funded from the Estate Funds in the manner described herein and from any recoveries obtained by the Debtor's estate, including from any return of the Escrowed Funds, the pursuit of any claims against the Sony Parties, and from the pursuit of any other causes of action other than avoidance causes of action. Specifically, on the Effective Date, the Debtor shall transfer the sum of $8,000,000 (the "<u>Unsecured Creditors Fund</u>") to the "<u>Creditors Trust</u>" (defined below) for the purposes of funding (i) the Committee Professional Fees, (ii) all distributions to be made to holders of class 4 allowed claims in accordance with the terms of this Plan, (iii) the settlement payments to Universal and to Warner, and (iv) a possible contingency fee payment to WS. To the extent there are any cash recoveries from the pursuit of claims against the Sony Parties, they shall be used first to repay Pulser for all Previously

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 23 of 47

Advanced Funds, and second to be distributed to all holders of class 4 allowed claims (other than Pulser) on a pro rata basis.

### 2. Cessation of Existence of the Debtor Following the Effective Date

The Debtor will cease to exist as a legal entity on the Effective Date.

### 3. Post-Effective Date Estate Representative

Peter Kravitz ("PK"), the current independent board member, shall serve as the representative of this estate ("Estate Representative") following the Effective Date pursuant to 11 U.S.C. §1123(b)(3)(B). PK shall be compensated on an hourly basis at the rate of $700 per hour out of the Reserve for serving as the Estate Representative following the Effective Date. Whenever appropriate, PK shall sign documents, pleadings and declarations as the Estate Representative. PK's role as the Estate Representative shall include taking any and all actions that PK determines to be appropriate in his capacity as the Estate Representative, including overseeing and helping to effectuate or facilitate the wind down and/or dissolution of the Debtor's many foreign subsidiaries. PK's role as the Estate Representative shall cease upon the entry of a final decree closing the Debtor's chapter 11 case. PK shall have the right to employ any employees of the Debtor to assist him in his role as the Estate Representative, and to compensate such employees out of the Reserve. It is anticipated that PK will likely employ certain of the Debtor's current employees on an hourly or modified compensation basis. The Debtor will file a pleading with the Court at least ten days prior to the Plan confirmation hearing identifying which of the Debtor's current employees PK intends to hire and the terms of their respective compensation.

### 4. Disbursing Agent

The Estate Representative shall serve as the disbursing agent for purposes of making all distributions required to be made under this Plan out of the Estate Funds. The Estate

Representative shall have the right to employ any current employee of the Debtor to assist him to make such distributions and to compensate such employees out of the Reserve. As indicated above, the Debtor will file a pleading with the Court at least ten days prior to the Plan confirmation hearing identifying which of the Debtor's current employees PK intends to hire and the terms of their respective compensation – recognizing that since such compensation will be funded out of the Reserve, it will have no impact upon the distribution to any creditors of this estate other than Pulser. The Estate Representative will not charge any disbursing agent fee for making such Plan distributions. The Creditors Trustee shall serve as the disbursing agent for purposes of making all distributions required to be made under this Plan out of the Unsecured Creditors Fund.

**5. Dissolution of the Committee**

On the Effective Date, the Committee shall be deemed automatically dissolved, and the members of the Committee shall be discharged of any further duties involving this estate. The members of the Committee shall have the right, but not the obligation, to participate in any role in the Creditors Trust that the Committee and its members deem appropriate.

**6. Objections to Claims**

Following the Effective Date, the Trustee of the Creditors Trust (the "Creditors Trustee") will file objections (or continue with the prosecution of all pending objections) to any disputed class 4 claims which were not resolved to final order by the Effective Date unless the Creditors Trustee deems the amount in dispute to be insignificant and not warrant further objection. With respect to disputed class 4 claims (other than the class 4 claims of the Sony Parties) which are not resolved prior to the Effective Date, the Creditors Trustee will have the authority, in his/her sole discretion and in the reasonable exercise of his/her business judgment, to settle or compromise any disputed class 4 claim without further Court approval provided

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 25 of 47

notice of such settlement or compromise is filed with the Court. The Creditors Trustee will have the authority to settle or compromise any disputed class 4 claim of any of the Sony Parties only with the prior written consent of Pulser (in consideration for Pulser agreeing to the funding of the Unsecured Creditors Fund). If the Creditors Trustee desires to settle or compromise any disputed class 4 claim of any of the Sony Parties and Pulser does not provide its written consent, the Creditors Trustee shall have the right to seek the Court's approval of such proposed settlement or compromise pursuant to a motion brought pursuant to Federal Rule of Bankruptcy Procedure 9019, and the Estate Representative, Pulser and any other party in interest shall have the right to object to any such proposed settlement or compromise, with the Court to grant or deny any such motion pursuant to Federal Rule of Bankruptcy Procedure 9019 and the A&C Properties test. The Estate Representative and Pulser reserve the right to file and prosecute objections to any of the claims asserted by any of the Sony Parties. Following the Effective Date, the Estate Representative will file objections (or continue with the prosecution of all pending objections) to all claims other than class 4 disputed claims which are disputed by Pulser (since Pulser is the only creditor which would be economically affected by the allowance of such claims) and which were not resolved by final order prior to the Effective Date unless Pulser deems the amount in dispute to be insignificant and not warrant further objection. With respect to non-class 4 disputed claims which are not resolved prior to the Effective Date, the Estate Representative will have the authority, in his sole discretion and in the reasonable exercise of his business judgment, to settle or compromise any disputed non-class 4 disputed claim without further Court approval provided Pulser consents to such settlement or compromise and provided notice of such settlement or compromise is filed with the Court. As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate for purpose of allowance any contingent or unliquidated claim, the fixing or liquidation of which, as the case

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 26 of 47

may be, would unduly the administration of this case. Both the Creditors Trustee and the Estate Representative, as applicable, shall have the authority to file any objections to claims following the Effective Date, subject to the limitations described above, and the Court shall retain jurisdiction over the Debtor and this case and estate to resolve or adjudicate such objections to claims following Plan confirmation regardless of whether such objections to claims were first commenced before or after Plan confirmation. Nothing contained in this Plan shall constitute a waiver or release by the Debtor, the Creditors Trustee or the Estate Representative of any rights of setoff or recoupment, or of any defense, the Debtor, the Creditors Trustee or the Estate Representative may have with respect to any claim. The deadline for any objections to be filed to any timely filed claim shall be the date which is thirty days after the Effective Date (the "Claims Objection Bar Date"). Any timely filed claim for which no objection was filed by the Claims Objection Bar Date shall be deemed to constitute an allowed claim.

### 7. Avoidance Actions and Recoveries

The Debtor has done a preliminary analysis of all payments made during the ninety-day preference period for non-insiders and the one-year period for insiders on account of antecedent debt which would or may be avoidable as preference payments. The Debtor preliminarily believes that most of such payments would likely be subject to some form of ordinary course, contemporaneous exchange or new value defense. A schedule showing all such payments made by the Debtor during the ninety-day preference period for non-insiders and the one-year period for insiders is attached as Exhibit "5" to the Disclosure Statement. Also attached as Exhibit "5" to the Disclosure Statement is a summary of the Debtor's preliminary analysis of all such payments and potential preference exposure. The Committee played no role in the preparation of this preliminary analysis. The Debtor will continue to analyze these payments made and to determine whether any updates or changes should be made to this schedule. The Debtor is not

aware of any fraudulent conveyances which have occurred and which need to be or should be avoided.  A component of the settlement discussions between the Debtor, the Committee, and the Prepetition Secured Creditors, which resulted in an agreement on the terms of a fully consensual plan of reorganization, was the joint decision not to pursue any avoidance causes of action.  As a result, on the Effective Date, all rights of the Debtor or its estate to pursue any avoidance causes of action shall be permanently waived.

### 8. Non-Avoidance Actions and Recoveries

The Debtor will continue to analyze whether there are any causes of action available to this estate other than avoidance actions and other than claims and causes of action against the Sony Parties, which are discussed immediately below – recognizing that at this time the Debtor is not aware of the existence of any such causes of action.  If the Debtor determines that it makes economic sense to pursue any such causes of action, and Pulser consents to the use of Estate Funds to pursue such causes actions (unless the Debtor is able to find counsel willing to do so on a full contingency basis), the Debtor will file such causes of action prior to the Effective Date.  On the Effective Date, the standing of this estate to commence any such causes of action (or to continue with the pursuit of any such pending causes of actions) shall be automatically deemed assigned and transferred to the Creditors Trust.  All fees and expenses incurred by the Creditors Trust in connection with the filing and prosecution of any such causes of action shall be funded solely from the Unsecured Creditors Fund (except for the expenses incurred by WS which will be paid out of the Estate Funds).  The Court shall retain jurisdiction over the Debtor, the Creditors Trust, the Creditors Trustee, this case and this estate to resolve or adjudicate any and all such causes of action which are filed regardless of whether such causes of action were first commenced by the Debtor before the Effective Date or first commenced by the Creditors Trustee after the Effective Date.  Any net recovery by the estate from the pursuit of

26

any such causes of action (after payment of all related fees and expenses) and reimbursement to Pulser of all Previously Advanced Funds shall be distributed to all holders of class 4 allowed claims on a pro rata basis, including Pulser on account of the Pulser Allowed Class 4 Claim, but shall be assigned by Pulser on a pro rata basis to all holders of class 4 allowed claims who affirmatively agree to become Participating Class 4 Claim Holders.

### 9. Claims Against the Sony Parties

The Debtor believes it has meritorious and valuable antitrust claims against Sony and Orchard. A detailed description of those claims is contained in the Disclosure Statement.

The Debtor reserves all rights against the Sony Parties under this Plan, including all rights to develop and expand upon the Debtor's legal theories and claims against the Sony Parties. In addition, the Debtor believes that all or a substantial portion of the claims of the Sony Parties may be equitably subordinated to all other class 4 allowed claims. The Debtor expects to further refine its legal theories in this regard as the Debtor continues to investigate the claims asserted by the Sony Parties. The Debtor is also investigating whether additional bases exist to object to the claims of the Sony Parties beyond the theories espoused above. If the Debtor determines that it makes economic sense to pursue any formal discovery and/or lawsuit, complaint for equitable subordination, or objection to the claims of the Sony Parties (collectively, "Sony Parties Actions"), and Pulser consents to the use of Estate Funds to pursue any such Sony Parties Actions (unless the Debtor is able to find counsel willing to do so on a full contingency basis), the Debtor will pursue such Sony Parties Actions prior to the Effective Date. On the Effective Date, the standing of this estate to pursue any Sony Parties Actions (or to continue with the pursuit of any such pending Sony Parties Actions) shall be automatically deemed assigned and transferred to the Creditors Trust (recognizing that, as set forth above, the Estate Representative and Pulser reserve the right to file and prosecute objections to any of the

27

claims asserted by any of the Sony Parties). The fees to be paid to WS shall be in accordance with the Debtor's amended application to employ WS (docket number 305), and all expenses incurred by WS and any experts employed in connection with such Sony Parties Actions shall be paid for out of the Estate Funds. The Creditors Trust may not agree to any settlement of any Sony Parties Action, or enter into any such related settlement agreement, which is pending on the Effective Date or which is commenced after the Effective Date without the prior written consent of Pulser (in consideration for Pulser agreeing to the funding of the Unsecured Creditors Fund). If the Creditors Trustee desires to settle or compromise any Sony Parties Action and Pulser does not provide its written consent, the Creditors Trustee shall have the right to seek the Court's approval of such proposed settlement or compromise pursuant to a motion brought pursuant to Federal Rule of Bankruptcy Procedure 9019, and the Estate Representative, Pulser and any other party in interest have the right to object to any such proposed settlement or compromise, with the Court to grant or deny any such motion pursuant to Federal Rule of Bankruptcy Procedure 9019 and the A&C Properties test.

The Court shall retain jurisdiction over the Debtor, the Creditors Trust, the Creditors Trustee, this case and this estate to resolve or adjudicate any and all such Sony Parties Actions which are filed regardless of whether such Sony Parties Actions were first commenced by the Debtor before the Effective Date or first commenced by the Creditors Trustee after the Effective Date. Any net recoveries by the estate from the pursuit of any Sony Parties Actions shall be used first to repay Pulser for all Previously Advanced Funds, and second to be distributed to all holders of class 4 allowed claims (other than Pulser) on a pro rata basis. The Sony Parties have advised the Debtor that they deny any wrongdoing and will vigorously oppose any Sony Parties Actions asserted against them.

Case: 15-31430    Doc# 358    Filed: 07/12/16    Entered: 07/12/16 15:32:04    Page 30 of 47

### 10. Release of Pulser, Pulser Affiliates, Iconical II and Iconical Affiliates

The Estate Funds (and any ultimate recovery of the Escrowed Funds and any recoveries from the pursuit of Sony Parties Actions) are expected to be the primary source of funds to be used to fund and confirm this Plan. Since all of the Estate Funds constitute Pulser's collateral (in the absence of a successful challenge by the Committee), the Debtor would have no ability to confirm this Plan and to make the payments to non-Pulser creditors required to be made under this Plan out of the Estate Funds without Pulser's consent. Pulser has advised the Debtor that subject to all of the terms of this Plan, Pulser will vote to accept this Plan and consent to the Debtor's use of the Estate Funds to make all of the payments to non-Pulser creditors required to be made under this Plan and to fund the other Plan obligations.

#### (a) *Release by Debtor of Lender Released Parties*

In consideration of the Prepetition Secured Creditors agreement to permit the use of cash collateral and to permit the Debtor to use the Estate Funds to make all of the payments to creditors required to be made under this Plan and to fund the other Plan obligations, on the Effective Date, the Debtor on behalf of itself and all of the "Debtor Releasing Parties" (as defined in Exhibit "8" to the Disclosure Statement) releases, discharges, and acquits the Prepetition Secured Creditors and each of the "Lender Released Parties" (as defined in Exhibit "8" to the Disclosure Statement) from any and all "Released Claims" (as defined in Exhibit "8" to the Disclosure Statement) that any such releasing party ever had or claimed to have, or has or claims to have presently or at any future date, against any of the Lender Released Parties arising from or related in any way whatsoever to the Debtor.

#### (b) *Incorporation of Final DIP Order*

The admissions, stipulations, and agreements of, and release by, the Debtor set forth in

Case: 15-31430    Doc# 358    Filed: 07/12/16    Entered: 07/12/16 15:32:04    Page 31 of 47

the Final DIP Order[5] are incorporated herein by reference and shall be irrevocable and binding on the Debtor and all parties in interest in the Debtor's chapter 11 case and shall not be subject to further "Challenge" (as defined in the Final DIP Order) by the Committee or any other party in interest. For the avoidance of doubt, the Retained Claims do not include any claim of any party in interest that has been released pursuant to the Final DIP Order or the right to prosecute any "Challenge" (as defined in the Final DIP Order).

**(c)** ***Releases by Participating Class 4 Claim Holders***

In consideration of the Prepetition Secured Creditors agreement to permit the use of cash collateral and to permit the Debtor to use the Estate Funds to make all of the payments to creditors required to be made under this Plan and to fund the other Plan obligations, on the Effective Date, each Participating Class 4 Claim Holder shall be deemed on behalf of itself and its estate, affiliates, heirs, executors, administrators, successors, assigns, managers, business managers, accountants, attorneys, representatives, consultants, agents, and any and all other persons or parties claiming under or through them (collectively, the "Third Party Releasing Parties") release, discharge, and acquit the Lender Released Parties from any and all "Released Claims" (as defined in Exhibit "8" to the Disclosure Statement) that any or all such Third Party Releasing Parties ever had or claimed to have, or has or claims to have presently or at any future date, against any of the Lender Released Parties arising from or related in any way whatsoever to the Debtor.

---

[5] As used herein, "Final DIP Order" means the Final Order: (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. § 105, 362, 363, and 364; (II) Granting Liens and Superpriority Claims to Postpetition Lender Pursuant to 11 U.S.C. § 364 and 507; (III) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; and (IV) Providing Adequate Protection to Prepetition Security Parties Pursuant to 11

30

**11.** **Releases of Debtor Affiliates and Pandora By All Participating Class 4 Claim Holders**

On the Effective Date, each Participating Class 4 Claim Holder shall be deemed on behalf of itself and all Third Party Releasing Parties to release, discharge, and acquit the Debtor Affiliates and Pandora from any and all "Released Claims" (as defined in Exhibit "8" to the Disclosure Statement) that any or all such Third Party Releasing Parties ever had or claimed to have, or has or claims to have presently or at any future date, against any of the Debtor Affiliates (as defined in Exhibit "8" to the Disclosure Statement) or Pandora arising from or related in any way whatsoever to the Debtor (with such release of Pandora limited to any claim such creditor has against Pandora resulting from or related to any claim such creditor has against the Debtor or any of the Debtor Affiliates).

**12.** **Release by the Debtor Releasing Parties of Class 5 Released Parties**

On the Effective Date, the Debtor, on behalf of itself and all of the Debtor Releasing Parties (as defined in Exhibit "8" to the Disclosure Statement) hereby releases, discharges and acquits Universal and each of their respective present and former predecessors, successors, assigns, affiliates, members, partners, managers, current and former equity holders, officers, agents, employees, attorneys, affiliates, directors, direct and indirect parents, direct and indirect subsidiaries and sister companies (the "Class 5 Released Parties") from the Released Claims (as defined in Exhibit "8" to the Disclosure Statement). For purposes of class 5, the Released Claims include, without limitation, any and all claims arising (i) under any antitrust or competition laws or rules, (ii) under any consumer protection or business trade laws, or (iii) out of or relating in any way to "Most Favored Nations" clauses or provisions or practices with similar effect found in any agreement involving or with any of the Class 5 Released Parties. In addition:

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 33 of 47

(i) The Debtor Releasing Parties shall not sue any of the Class 5 Released Parties with respect to any Released Claim or to assist any third party in commencing or maintaining any Proceeding ("Proceeding" shall include any lawsuit, litigation, claim, investigation, or other similar activity in which or as a result of which legal or equitable remedies, sanctions, damages or penalties could be sought or imposed) against any of the Class 5 Released Parties related in any way to any claim released by the Debtor Releasing Parties herein.

(ii) In connection with any possible cause of action, claim, obligation, cross-claim, counterclaim, suit, demand, right, charge, liability, loss, damage, judgment, lien, or demand whatsoever that would be a Released Claim if pursued against a Class 5 Released Party, or that would constitute factual allegations supporting such a Released Claim, the Debtor Releasing Parties will not (a) disparage the Class 5 Released Parties; (b) seek any discovery from the Class 5 Released Parties, or (c) assist any third party in commencing or maintaining any Proceeding against the Class 5 Released Parties;

(iii) The Debtor Releasing Parties will not file any motion(s) pursuant to Bankruptcy Rule 2004, or any similar discovery enabling rule or procedure, seeking any documents or information from any of the Class 5 Released Parties or an examination of any of the Class 5 Released Parties, nor will they join or participate in any such motion(s).

**13.     Applicability of Releases of Unknown Claims**

On the Effective Date, all rights of the Debtor Releasing Parties, the Third Party Releasing Parties and the Participating Class 4 Claim Holders to challenge any of the releases being provided herein, whether pursuant to Section 1542 of the California Civil Code or otherwise, shall be deemed permanently waived, regardless of whether the Debtor, this estate,

Case: 15-31430    Doc# 358    Filed: 07/12/16    Entered: 07/12/16 15:32:04    Page 34 of
47

the Debtor Releasing Parties, the Third Party Releasing Parties and the Participating Class 4 Claim Holders, or any other party in interest, discovers or obtains any information in the future pertaining to matters being released herein which they did not know or have as of the Effective Date or any date prior thereto. The releases being provided herein are expressly intended to cover and include a release of any claims, demands or causes of action which arise out of, relate to, are connected with, or are incidental to any such information which may be discovered or obtained in the future. The Debtor Releasing Parties, the Third Party Releasing Parties and the Participating Class 4 Claim Holders therefore expressly waive the provisions of Section 1542 of the Civil Code of the State of California which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

### 14. Exclusions from Releases

Notwithstanding anything to the contrary in this Plan, nothing herein shall be deemed as releasing the Debtor or the Debtor's estate, any Lender Released Parties, Pandora or any Debtor Affiliates from any claims of Universal arising from the breach by any of such persons of the Sale Order, the Transition Services Agreement (as defined in the Sale Order), any obligations to Universal under the Sale Order or the Transition Services Agreement, or any administrative claim of Universal.

### 15. Continuing Confidentiality Obligations

The confidentiality obligations of the Debtor and the Debtor's estate to Universal as set forth in the agreements between Universal and the Debtor or with any of the Debtor Affiliates survive the Effective Date and remain in full force and effect. The Creditors Trust shall return to

Universal all originals and copies of the Universal agreements, and any other reports, information or other documents related to Universal, or destroy them at the option of the Creditors Trustee, within five days after the Effective Date or as otherwise provided in any settlement agreement with Universal.

### 16. Exemption from Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax. Transfers under this Plan that are exempt from taxes under section 1146(c) of the Bankruptcy Code include all transfers by the Debtor after the commencement of its chapter 11 case in contemplation of this Plan but prior to the Effective Date, and all transfers to and by the Debtor and/or the Estate Representative or the Creditors Trustee as contemplated by this Plan, including all payments made to claim holders in accordance with the terms of this Plan. The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

### 17. Employment of Professionals By the Estate Representative and Payment of Professional Fees and Expenses By the Estate Representative Incurred after the Effective Date

The Estate Representative shall have the authority to employ professionals as the Estate Representative deems appropriate and to pay the fees and expenses incurred by such professionals after the Effective Date out of the Reserve without any further order of the Court. The Debtor currently anticipates that the Estate Representative will retain LNBYB as his counsel to assist the Estate Representative to perform all of his functions as the Estate Representative, with the exception of investigating and, if appropriate, pursuing or prosecuting

34

an objection to the claims of the Sony Parties.

**18.    Establishment of the Reserve**

On the Effective Date, the Debtor or the Estate Representative (as the case may be) shall deposit the total sum of $300,000.00 from the Estate Funds into a segregated account (the "Reserve"), with such funds to be used solely to pay for (i) the post-Effective Date fees and expenses of the professionals retained by the Estate Representative, (ii) the post-Effective Date fees and costs owing to the Clerk of the Bankruptcy Court and the quarterly fees owing to the UST (which shall be paid by the Estate Representative out of the Reserve), and (iii) any post-Effective Date third-party expenses owing by the Estate Representative. The funds shall remain in the Reserve until the entry of a final decree closing this bankruptcy case. If the funds in the Reserve ultimately prove to be insufficient to pay all of fees, costs and expenses described above for which the Reserve is being established, Pulser shall have the right to supplement the Reserve with additional Estate Funds, as needed, but only with Pulser's consent in its sole discretion. If any funds remain in the Reserve upon the entry of a final decree closing this bankruptcy case, such excess funds shall be paid to Pulser.

**19.    Formation of the Creditors Trust and Appointment of the Creditors Trustee**

On the Effective Date, a trust will be formed (the "Creditors Trust") solely for the benefit of all class 4 claim holders and for the benefit of Universal and Warner. As explained above, on the Effective Date, the Debtor shall transfer the sum of $8,000,000 (i.e., the "Unsecured Creditors Fund") to the Creditors Trust. The Committee will file the form of the Creditors Trust agreement with the Court, and the Committee will identify the person who will serve as the Creditors Trustee, at least ten days prior to the Plan confirmation hearing.

Case: 15-31430    Doc# 358    Filed: 07/12/16    Entered: 07/12/16 15:32:04    Page 37 of 47

**20. Employment of Professionals By the Creditors Trustee and Payment of Professional Fees and Expenses By the Creditors Trustee Incurred after the Effective Date**

The Creditors Trustee shall have the authority to employ professionals as the Creditors Trustee deems appropriate and to pay the fees and expenses incurred by such professionals after the Effective Date out of the Unsecured Creditors Fund without any further order of the Court. The Debtor expects that the Creditors Trustee will retain PSZJ as his/her counsel and FTI as his/her financial advisor to assist the Creditors Trustee to perform all of his/her functions as the Creditors Trustee.

**21. Distributions to be Made Pursuant to this Plan**

All payments to be made under this Plan to class 4 claim holders and to Universal and Warner, all payments of Committee Professional Fees, and payment of any WS contingency fee which is required to be paid out of the Unsecured Creditors Fund shall be made by the Creditors Trustee out of the Unsecured Creditors Fund. All other payments to be made under this Plan shall be made by or at the direction of the Estate Representative out of the Reserve and the Estate Funds. Except as otherwise agreed to by the Estate Representative or the Creditors Trustee (as applicable) and the respective creditor in writing, all distributions to be made to holders of allowed claims pursuant to this Plan shall be delivered by or at the direction of the Estate Representative or the Creditors Trustee (as applicable) by regular mail, postage prepaid, to the address shown in the Debtor's bankruptcy schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1000, or, if a different address is stated in a proof of claim timely filed with the Bankruptcy Court, to such address. Checks issued to pay allowed claims shall be null and void (and may be voided by the Estate Representative or the Creditors Trustee (as applicable)) if not negotiated by the recipient within sixty (60) days after the date of issuance thereof.

36

## 22.    Exculpations and Releases

To the maximum extent permitted by law, neither the Debtor, the Committee or its members, the Prepetition Secured Creditors, the Estate Representative nor the Creditors Trustee, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or professionals employed or retained by any of them, shall have or incur liability to any person or entity for any act taken or omission made in good faith in connection with or related to this bankruptcy case or the formulation and implementation of this Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of this Plan, or the consummation and implementation of this Plan and the transactions contemplated therein, provided, however, that the foregoing provisions shall have no effect on the liability of any person or entity that would otherwise result from the failure to perform any obligation under this Plan or that would otherwise result from any act or omission to the extent that such act or omission is determined by a final order of the Court to have constituted negligence, gross negligence or willful misconduct (including fraud).

## 23.    Injunctions

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released or terminated pursuant to this Plan.  Except as provided in this Plan or the Plan Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is released or terminated or an interest or other right of a creditor or equity security holder that is released, terminated or extinguished pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions against the Debtor, the Committee (or its members), the Estate Representative

37

or the Creditors Trustee, or their property on account of any such released, terminated or extinguished claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; and (iv) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan. By accepting a distribution made pursuant to this Plan, each holder of an allowed claim which receives a distribution pursuant to this Plan shall be deemed to have specifically consented to the injunctions set forth in this Section.

### 24. Executory Contracts and Unexpired Leases

All of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor, if any, shall be deemed to be rejected by the Debtor effective as of 11:59 PST on the Effective Date. The Debtor believes that there are at most only a very limited number of any such remaining executory contracts and unexpired leases. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL BE THIRTY DAYS AFTER THE EFFECTIVE DATE.** Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### 25. Changes in Rates Subject to Regulatory Commission Approval

The Debtor is not subject to governmental regulatory commission approval of its rates.

### 26. Retention of Jurisdiction

After confirmation of this Plan and occurrence of the Effective Date, in addition to

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 40 of 47

jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.      To resolve any and all disputes regarding the operation and interpretation of this Plan and the Plan Confirmation Order;

ii.      To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, the Estate Representative, the Creditors Trustee, or by other parties in interest with standing to bring such objection or proceeding and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

iii.      To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of its estate;

iv.      To construe and take any action to enforce this Plan, the Plan Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of this Plan, the Plan Confirmation Order and all matters referred to in this Plan and the Plan Confirmation Order, and to determine all matters that may be pending before the Court in this case on or before the Effective Date with respect to any person or entity related thereto;

v.      To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.      To determine any request for payment of administrative expenses;

vii. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 41 of 47

viii. To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this case whether before, on, or after the Effective Date including avoidance causes of action or Sony Parties Actions;

ix. To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x. To modify this Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in this Plan or to reconcile any inconsistency in this Plan so as to carry out its intent and purpose;

xi. Except as otherwise provided in this Plan or the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of this Plan or the Plan Confirmation Order;

xii. To issue such orders in aid of consummation of this Plan and the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

xiii. To enter a final decree closing this chapter 11 case.

**27. Indemnity Claims Stipulation**

It shall be a condition precedent to the Effective Date that the Debtor, the Committee, and the Prepetition Secured Creditors shall have entered into a stipulation which has been approved by the Court to the effect that: (a) the Committee shall use good faith efforts to support the stay of claims under applicable nonbankruptcy law against holders of Indemnity

40

Claims; (b) the automatic stay shall be lifted to the extent necessary to allow such holders to access available D&O insurance policies, and (c) subject to the confirmation of this Plan, the holders of Indemnity Claims shall waive any distributions otherwise available in Class 4 and shall not receive any distributions from the Unsecured Creditors Fund.

## III.    EFFECT OF CONFIRMATION OF THIS PLAN

### A.   Discharge

The Debtor will not receive a discharge under this Plan because the requirements of Section 1141 of the Bankruptcy Code necessary for the Debtor to receive a discharge are not present. Notwithstanding the foregoing, all injunctions or stays provided for in this chapter 11 case pursuant to section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the date the Plan Confirmation Order is entered, shall remain in full force and effect until a final decree and order closing the chapter 11 case is entered by the Court.

### B.   Modification of this Plan

The Debtor reserves the right to modify this Plan at any time before confirmation and seek confirmation of such modified Plan consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. The Debtor may also seek to modify this Plan at any time after confirmation of this Plan but before the Effective Date so long as (1) this Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing. Since the Debtor will cease to exist as a legal entity on the Effective Date, the Estate Representative, as the legal representative of the Debtor's estate, may seek to modify this Plan after the Effective Date. Notwithstanding the foregoing, any modification of this Plan, whether before or after confirmation, shall require the prior consent of the Prepetition Secured Creditors.

Case: 15-31430   Doc# 358   Filed: 07/12/16   Entered: 07/12/16 15:32:04   Page 43 of 47

### C. Post-Confirmation Status Reports

Until a final decree closing the Debtor's chapter 11 case is entered, the Estate Representative and/or the Creditors Trustee shall file quarterly status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan, and the Estate Representative shall pay the post-confirmation quarterly fees to the UST out of the Reserve.

### D. Post-Confirmation Conversion/Dismissal

A creditor or any other party in interest may bring a motion to convert or dismiss this case under Section 1112(b) of the Bankruptcy Code after this Plan is confirmed if there is a default in performing this Plan, with the Estate Representative and the Creditors Trustee reserving all rights to oppose any such motion. If the Court orders this case converted to chapter 7 after this Plan is confirmed, then all property that had been property of this chapter 11 estate, and that has not been disbursed pursuant to this Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case. The Plan Confirmation Order may also be revoked under very limited circumstances. The Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the date of entry of the Plan Confirmation Order.

### E. Final Decree

Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the Estate Representative shall file a motion with the Court to obtain a final decree to close this chapter 11 case. The Estate Representative shall be responsible for the timely payment of all

Case: 15-31430    Doc# 358    Filed: 07/12/16    Entered: 07/12/16 15:32:04    Page 44 of 47

fees incurred pursuant to 28 U.S.C. Section 1930(a)(6) and shall pay all such fees out of the

Reserve.

Dated: July 12, 2016

<u>Presented By</u>:

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.


By:___*/s/ Ron Bender*_____
        RON BENDER
        PHILIP A. GASTEIER
        KRIKOR J. MESHEFEJIAN
        Attorneys for Chapter 11
        Debtor and Plan Proponent

43

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document **DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION DATED JULY 12, 2016** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 12, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ron Bender    rb@lnbyb.com
- Kathryn M.S. Catherwood    kcatherwood@foley.com, vgoldsmith@foley.com
- Andrea Cheuk    acheuk@teslamotors.com, scastro@teslamotors.com
- Shawn M. Christianson    schristianson@buchalter.com
- David N. Crapo    dcrapo@gibbonslaw.com
- John D. Fiero    jfiero@pszjlaw.com, ocarpio@pszjlaw.com
- Stephen D. Finestone    sfinestone@pobox.com
- Donald W. Fitzgerald    dfitzgerald@ffwplaw.com, shoang@ffwplaw.com
- Philip A. Gasteier    pag@lnbrb.com
- Julie M. Glosson    julie.m.glosson@usdoj.gov
- Debra I. Grassgreen    dgrassgreen@pszjlaw.com, hphan@pszjlaw.com
- Irvin M. Gross    img@lnbyb.com
- Stephan Hornung    hornung@lsellp.com
- Lynette C. Kelly    lynette.c.kelly@usdoj.gov, ustpregion17.oa.ecf@usdoj.gov
- Monica Y. Kim    myk@lnbyb.com
- Andy S. Kong    kong.andy@arentfox.com
- Paul J. Laurin    plaurin@btlaw.com, slmoore@btlaw.com
- Annie Li    annie.li@skadden.com, Brigitte.Travaglini@skadden.com
- John William Lucas    jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- Thor D. McLaughlin    tmclaughlin@allenmatkins.com
- Krikor J. Meshefejian    kjm@lnbyb.com
- Office of the U.S. Trustee / SF    USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com
- Paul J. Pascuzzi    ppascuzzi@ffwplaw.com, JNiemann@ffwplaw.com
- Valerie Bantner Peo    vbantnerpeo@buchalter.com
- J. Alexandra Rhim    arhim@hrhlaw.com
- Richard A. Rogan    rrogan@jmbm.com, jb8@jmbm.com
- Jason Rosell    jrosell@pszjlaw.com, sshoemaker@pszjlaw.com
- Jane K. Springwater    jspringwater@friedmanspring.com
- Michael St. James    ecf@stjames-law.com
- Sabrina L. Streusand    streusand@slollp.com, prentice@slollp.com
- Bennett G. Young    byoung@jmbm.com, jb8@jmbm.com

**2. SERVED BY UNITED STATES MAIL**: On **July 12, 2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    F 9013-3.1.PROOF.SERVICE

| | |
|---|---|
| 1 | ☐ *Service information continued on attached page* |
| 2 | **3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMIAL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, |
| 3 | on **July 12, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or |
| 4 | email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed. |

*Served by Overnight Mail*
The Hon. Dennis Montali
U.S Bankruptcy Court
450 Golden Gate Avenue, 16th Floor
Courtroom 17
San Francisco, CA 94102

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 12, 2016 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
**F 9013-3.1 PROOF SERVICE**