RON BENDER (SBN 143364)
PHILIP A. GASTEIER (SBN 130043)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; pag@lnbyb.com; kjm@lnbyb.com
Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

In re:

RDIO, INC.,

               Debtor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 15-31430

Chapter 11

**DEBTOR'S PLAN OF REORGANIZATION DATED AUGUST 18, 2016**

<u>Disclosure Statement Hearing</u>:
Date:  August 11, 2016
Time:  11:00 a.m.
Place:  U.S. Bankruptcy Court
        Courtroom 17
        450 Golden Gate Ave., 16th Floor
        San Francisco, CA 94102
Judge:  The Hon. Dennis Montali

<u>Plan Confirmation Hearing</u>:
Date:  September 27, 2016
Time:  11:00 a.m.
Place:  [Same As Above]

1

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................2

II.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................3

       A.    WHAT CREDITORS AND INTEREST HOLDERS WILL RECEIVE UNDER THIS PLAN....3

       B.    UNCLASSIFIED CLAIMS .............................................3

   1.   Administrative Expenses ...............................................3

   2.   Priority Tax Claims ...................................................5

       C.    CLASSIFIED CLAIMS AND INTERESTS .................................7

   1.   Classes of Secured Claims .............................................7

   2.   Class of Priority Unsecured Claims ....................................9

   3.   Classes of General Unsecured Claims ..................................10

   4.   Class of Interest Holders ............................................16

III.   MEANS OF EFFECTUATING THIS PLAN AND IMPLMENTATION OF THIS PLAN.....16

IV.    RELEASES .................................................................17

V.     EFFECT OF CONFIRMATION OF THIS PLAN ...............................22

       A.    DISCHARGE .......................................................22

       B.    MODIFICATION OF THIS PLAN .......................................22

       C.    POST-CONFIRMATION STATUS REPORTS ................................23

       D.    POST-CONFIRMATION CONVERSION/DISMISSAL ..........................23

       E.    FINAL DECREE ....................................................23

Case: 15-31430    Doc# 398    Filed: 08/18/16    Entered: 08/18/16 15:46:51    Page 2 of
27

# I. **INTRODUCTION**

Rdio, Inc., chapter 11 debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Debtor" or "Rdio"), is the Debtor in a pending chapter 11 bankruptcy case. The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on November 16, 2015.

This document is the Debtor's Plan of Reorganization Dated August 18, 2016 ("Plan") that is being proposed by the Debtor. This Plan includes a compromise of certain claims and controversies pursuant to section 1123 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019.

This Plan is a plan of reorganization which has been proposed by the Debtor and is supported by the Official Committee of Unsecured Creditors (the "Committee") and by the Debtor's two pre-petition secured creditors consisting of Pulser Media, Inc. ("Pulser") and Iconical Investments II LP ("Iconical II") (with Pulser and Iconical II collectively defined as the "Prepetition Secured Creditors"). This Plan is an integrated global settlement that is the result of extensive negotiations between the Debtor, the Committee, the Prepetition Secured Creditors, and the Debtor's three largest music labels (each of whom was previously a member of the Committee), all of whom support this Plan and confirmation of this Plan. The effective date of this Plan (the "Effective Date") will be the first business day which is at least fifteen days following the date of entry of the Court order confirming this Plan (the "Plan Confirmation Order") and the satisfaction or waiver by the Debtor and the Prepetition Secured Creditors of all of the following conditions to the effectiveness of this Plan: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) this Plan and all documents, instruments and agreements to be executed in connection with this Plan shall have been executed and delivered

Case: 15-31430   Doc# 398   Filed: 08/18/16   Entered: 08/18/16 15:46:51   Page 3 of
27

by all parties to such documents, instruments and agreements. All capitalized terms used in this Plan which are not defined in this Plan but which are defined in the Debtor's Disclosure Statement filed in respect of this Plan (the "Disclosure Statement") shall be deemed to have the same definitions as used in the Disclosure Statement. The Debtor following the Effective Date will be referred to herein as the "Reorganized Debtor".

## II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. What Creditors and Interest Holders Will Receive Under this Plan

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their right to priority. This Plan states whether each class of claims or interests is impaired or unimpaired. This Plan sets out the treatment each class will receive.

### B. Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following claims in a class.

### 1. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's chapter 11 case which are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid in full on the Effective Date unless a particular claimant agrees to a different treatment.

/ / /

/ / /

/ / /

/ / /

3

The following chart lists <u>all</u> of the Debtor's § 507(a)(2) administrative claims and their treatment under this Plan.[1]

| **Name** | **Amount Owed** | **Treatment** |
| --- | --- | --- |
| Clerk's Office Fees | $0 | Paid in full on the Effective Date out of the Estate Funds |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the Effective Date out of the Estate Funds |
| Levene, Neale, Bender, Yoo & Brill L.L.P. ("<u>LNBYB</u>"), bankruptcy counsel to the Debtor | $1,000,000.00 (est.), which would be in addition to the post-petition fees and expenses paid to LNBYB by the Debtor | Paid in full (or in such other amount as agreed among LNBYB, the Debtor, and the Prepetition Secured Creditors) out of the Estate Funds within the later of (i) five days following the Effective Date and (ii) five days following the date of entry of an order of the Court allowing such fees and expenses |
| Winston & Strawn LLP, special litigation counsel to the Debtor | The Debtor has paid a $100,000 post-petition retainer to WS. The balance of any fees earned by WS will be paid in the manner described in the Debtor's amended application to employ to WS (filed as docket number 305). The Debtor currently estimates this additional balance will be approximately $250,000. | Treatment will be as described in the Debtor's amended application to employ WS (filed as docket number 305). |
| Moelis & Company ("<u>Moelis</u>"), financial advisor to the Debtor | $0 (est.) as Moelis has already been paid the full amount of its allowed fees and expenses | N/A |

[1] The Debtor intends to pay the $14,033.82 allowed administrative claim of SoundExchange prior to the Plan confirmation hearing. In any event, the $14,033.82 allowed administrative claim of SoundExchange will be paid within five days following the Effective Date. The Debtor also intends to pay the $14,006.08 allowed administrative claim of CSI prior to the Plan confirmation hearing. In any event, the $14,006.08 allowed administrative claim of CSI will be paid within five days following the Effective Date.

Case: 15-31430   Doc# 398   Filed: 08/18/16   Entered: 08/18/16 15:46:51   Page 5 of 27

| | | |
|---|---|---|
| Pachulski Stang Ziehl & Jones LLP ("PSZJ"), bankruptcy counsel to the Committee | $500,000.00 (est.), which would be in addition to the post-petition fees and expenses already paid to PSZJ by the Debtor and those agreed to be paid from Estate Funds | Paid in full within the later of (i) five days following the Effective Date and (ii) five days following the date of entry of an order of the Court allowing such fees and expenses out of the Unsecured Creditor Funds and the Estate Funds as explained below |
| FTI Consulting ("FTI"), financial advisor to the Committee | $150,000.00 (est.), which would be in addition to the post-petition fees and expenses already paid to FTI by the Debtor | Paid in full within the later of (i) five days following the Effective Date and (ii) five days following the date of entry of an order of the Court allowing such fees and expenses out of the Unsecured Creditor Funds and the Estate Funds as explained below |
| Post-Petition Non-Professional Fee Administrative Claims | $0 (est.) as the Debtor expects that all such administrative claims will have been paid in full prior to Plan confirmation | Paid in full (or in such other amount as agreed among the administrative claimant, the Debtor, and the Prepetition Secured Creditors) out of the Estate Funds within the later of (i) five days following the Effective Date or (ii) if the Debtor and other parties disagree about the amount owed, five days following the date of entry of an order of the Court allowing such administrative claim |
| **TOTAL** | $1,900,000.00 est. | Paid in the manner described above |

Additional information about the administrative claims in this case and their treatment and a description of professional fees and expenses which were previously approved by the Court and the manner in which they will be paid is set forth in the Disclosure Statement and incorporated into this Plan.

**2.      Priority Tax Claims**

Priority tax claims include certain unsecured income, employment and other taxes

5

described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date. As set forth in the Debtor's bankruptcy schedules, the Debtor believes that it owed as of the Petition Date a total of approximately $130,326 to taxing agencies, which amounts are entitled to priority under 11 U.S.C. § 507(a)(8). A chart setting forth the identities of each of these taxing agencies and the amounts of their priority tax claims is set forth in exhibit "2" to the Disclosure Statement (the "Priority Tax Claims Chart").[2] The Debtor is continuing with its review of the scheduled and filed priority tax claims. The Debtor will file objections to any filed tax claims which the Debtor believes are not valid. The Priority Tax Claims Chart also indicates all additional priority tax claims which were asserted in timely filed proofs of claim. The Priority Tax Claims Chart also indicates all additional priority tax claims which were asserted in timely filed proofs of claim. The Debtor has included such filed tax claims in the Priority Tax Claims Chart for information purposes only. The Debtor is not agreeing to the allowance of any such filed tax claims, and the Debtor reserves all rights to file and prosecute objections to any such filed tax claims. The Debtor will pay allowed priority tax claims in full out of the Estate Funds on the Effective Date unless there is a dispute with any

---

[2] The Debtor believes that the scheduled priority claims of the San Francisco Tax Collector (in the total amount of $106,890.44), and the filed proof of claim (Claim No. 22-1) of the San Francisco Tax Collector (filed as a secured claim) have been satisfied. The Debtor is in the process of contacting the San Francisco Tax Collector in order to obtain confirmation that these claims have been satisfied. The Debtor will either enter into a stipulation with the San Francisco Tax Collector indicating that these claims have been satisfied, or the Debtor will amend its Schedules of Assets and Liabilities to reflect that no amounts are due to the San Francisco Tax Collector and the Debtor will object to the proof of claim filed by the San Francisco Tax Collector.

6

such priority tax claim. If there is a dispute, the Debtor will pay any such disputed priority tax claim within ten days following the date of entry of an order of the Court allowing such disputed priority tax claim, inclusive of interest accrued following the Effective Date at the statutory rate.

## C. Classified Claims and Interests

### 1. Classes of Secured Claims

Secured claims are claims secured by liens on property of the Debtor's estate. The following is a description of this Plan's treatment of the classes containing the Debtor's known secured claims:

Class 1 - Class 1 is comprised of the pre-petition secured claim of Iconical II, which shall be deemed allowed in the amount of $4,220,833, plus all accrued interest, fees, and other amounts due and payable thereunder (with the final class 1 allowed claim estimated to be approximately $4,500,000). The class 1 claim is secured by a first priority lien against all or substantially all of the assets of the Debtor's estate. The class 1 claim is not impaired under this Plan and is therefore not entitled to vote on this Plan. The class 1 allowed claim will be paid in full in cash from the Estate Funds on the Effective Date.

Class 2 - Class 2 is comprised of the pre-petition secured claim of Pulser. Pursuant to the Secured Creditor Settlement, the total claim of Pulser shall be deemed allowed in the amount of $184,000,000, which is inclusive of all accrued interest, fees, and other amounts due and payable thereunder through the Petition Date. The class 2 secured claim of Pulser is secured by a second priority lien (junior only to the lien of Iconical II) against all or substantially all of the assets of the Debtor's estate. Pulser's class 2 allowed claim will be equal to all remaining Estate Funds on the Effective Date after all required Plan payments have been made plus all future recoveries by the Debtor or its bankruptcy estate from the Escrowed

Case: 15-31430    Doc# 398    Filed: 08/18/16    Entered: 08/18/16 15:46:51    Page 8 of 27

Funds.

The class 2 secured claim of Pulser is estimated to be in the amount of approximately $47,229,009 if Pulser is ultimately paid the full amount of the Escrowed Funds and there are no future recoveries from any causes of action.[3] The balance of Pulser's allowed claim, estimated to be in the amount of approximately $136,770,991 (the "Pulser Unsecured Claim"), will be included in class 4 as a class 4 allowed claim but, as part of the global resolution reached, will not receive any distribution from this estate on account of the Pulser Unsecured Claim. The class 2 claim is impaired under this Plan and is therefore entitled to vote on this Plan. On account of its class 2 secured claim, Pulser will receive all of the Estate Funds remaining on the Effective Date after all required Plan payments have been made plus all future recoveries by the Debtor or its bankruptcy estate from the Escrowed Funds.

In addition, in consideration of the Prepetition Secured Creditors permitting the Debtor to use cash collateral during the chapter 11 case and to use the remaining Estate Funds, which constitutes Pulser's collateral, to fund all payment obligations under this Plan (including, but not limited to the establishment and funding of the Unsecured Creditors Fund), on the Effective Date (i) the Debtor and the Debtor's bankruptcy estate will be permanently deemed to have released the "Lender Released Parties" (as defined in Exhibit "7" of the Disclosure Statement), which includes Pulser and all Pulser Affiliates, from any and all claims or causes of action that the Debtor or the Debtor's bankruptcy estate (or any representative of the Debtor's bankruptcy estate, including the Committee and any subsequently appointed trustee) may have against any of the Lender Released Parties, including Pulser or any of the Pulser Affiliates; (ii) the class 2 secured claim of Pulser and the liens which secure Pulser's class 2 claim shall be deemed

---

[3] Attached as Exhibit "5" to the Disclosure Statement is a computation setting forth the estimated amount of the class 2 secured claim of Pulser.

8

permanently valid and allowed; (iii) the Debtor and the Debtor's bankruptcy estate will be permanently deemed to have released Iconical II and all Iconical Affiliates from any and all claims or causes of action that the Debtor or the Debtor's bankruptcy estate (or any representative of the Debtor's bankruptcy estate, including the Committee and any subsequently appointed trustee) may have against Iconical II or any of the Iconical Affiliates; and (iv) the class 1 claim of Iconical II and the liens which secure Iconical II's class 1 claim shall be deemed permanently valid and allowed.

### 2. Class of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim. The Debtor paid all of the priority wage related claims of those employees who were still employed by the Debtor as of the Petition Date. As set forth in the Debtor's bankruptcy schedules, the Debtor believes that it owes a total of approximately $273,909 to former employees which amounts are entitled to priority under 11 U.S.C. § 507(a)(4). A chart setting forth the identities of each of these individuals and the amounts of their claims that the Debtor believes are entitled to priority is set forth in exhibit "1" to this Disclosure Statement (the "Priority Wage Claims Chart"). The claims bar date in this case was March 21, 2016. The Debtor is continuing with its review of the scheduled and filed priority wage related claims. The Debtor will file objections to any filed priority wage related claims which the Debtor believes are not valid. The Priority Wage Claims Chart also indicates all additional priority wage claims which were asserted in timely filed

Case: 15-31430   Doc# 398   Filed: 08/18/16   Entered: 08/18/16 15:46:51   Page 10 of 27

proofs of claim. All allowed non-tax priority claims will be treated as class 3 claims under this Plan. The Debtor will pay all allowed non-tax priority claims in full out of the Estate Funds on the Effective Date unless there is a dispute with any such non-tax priority claim. If there is a dispute, the Debtor will pay any such disputed non-tax priority claim within ten days following the date of entry of an order of the Court allowing such disputed non-tax priority claim.

### 3. Classes of General Unsecured Claims

General unsecured claims are pre-petition unsecured claims which are not entitled to priority under Bankruptcy Code Section 507(a). The following identifies this Plan's treatment of the classes containing all of the Debtor's non-priority general unsecured claims:

Class 4 - Class 4 is comprised of all non-priority general unsecured claims. The Class 4 Claims Chart attached as Exhibit "3" to the Disclosure Statement contains the details of all of the Debtor's scheduled class 4 claims as well as all class 4 claims asserted in timely filed proofs of claim, excluding the Pulser Unsecured Claim and excluding any claims of Universal, Warner or the Sony Parties.[4] Exclusive of the Pulser Unsecured Claim, the Debtor estimates a preliminary low case estimate of approximately $25,599,617 of class 4 claims (if no filed proofs of claim are allowed in amounts which are higher than scheduled by the Debtor), and the Debtor estimates a preliminary high case estimate of approximately $49,209,344 of class 4 claims (if every timely filed proof of claim is allowed in the amount which is higher than scheduled by the Debtor).[5] These figures include the claims of Universal, Warner and the Sony Parties which are not included in the Class 4 Claims Chart because they are all being settled. The Debtor is continuing with its review of the scheduled and filed class 4 claims and will update the Class 4 Claims Chart as appropriate. Including a claim in the Class 4 Claims Chart is not an

---

[4] The Class 4 Claims Chart may not include certain unliquidated claims.
[5] The claims bar date in this case was March 21, 2016 and has therefore passed.

10

acknowledgement by the Debtor of the validity of any class 4 claim. Except with respect to class 4 claims allowed pursuant to an order of the Court, the Debtor reserves all rights to object to any class 4 claim at any time, and the rights of all other parties in interest to object to any class 4 claim (other than the Pulser Unsecured Claim, the Sony Parties Claims, and the claims of Warner and Universal which are being settled under the Plan) at any time are strictly preserved. Class 4 claims are impaired under this Plan and are therefore entitled to vote on this Plan.

**Treatment**:

As explained in more detail below, the Sony Parties have asserted total general unsecured claims of $17,002,410 (the "Sony Parties Claims"). Pulser and the Sony Parties have reached an agreement under which Pulser will purchase all of the Sony Parties Claims on the Effective Date. Under this Plan, each holder of a class 4 allowed claim other than Warner, Universal and the Sony Parties ("Non-Label Class 4 Allowed Claims") and other than Pulser will receive a payment from the Unsecured Creditors Fund equal to its pro rata share of the Unsecured Creditors Fund remaining after payment of the Committee Professional Fees and the liquidated settlement payments (discussed immediately below) are paid to Warner and to Universal.

The form of ballot for class 4 claim holders to use is attached as Exhibit "8" to the Disclosure Statement.

Universal Settlement. The Debtor scheduled UMG Recordings, Inc., Universal Music Canada, Inc., and Universal International Music B.V. (collectively, "Universal") as having a royalty claim in the amount of $219,267.65 and a contract claim of $590,724.06 for a total claim of $809,991.71. Universal filed three proofs of claim asserting a claim in the amount of $482,496.68 for Universal International Music B.V., a claim in the amount of $629,374.16 for

Case: 15-31430   Doc# 398   Filed: 08/18/16   Entered: 08/18/16 15:46:51   Page 12 of 27

UMG Recordings, Inc., and a claim in the amount of $189,305 for Universal Music Canada, Inc. (for total claims of $1,301,175.84). The Debtor and Universal have agreed that Universal will have an allowed claim of $1,111,871. The Debtor scheduled Universal Music Group Distribution as having a claim in the amount of $590,724.06. That specific Universal entity did not file any proof of claim, but the Debtor assumes that this claim is subsumed in the three claims filed by Universal. The Debtor and Universal have reached a settlement agreement, which is supported by the Committee, under which Universal will be paid $125,000.00 from the Unsecured Creditors Fund on the Effective Date in full settlement of Universal's general unsecured claims. There will be mutual releases, discovery waivers, and related provisions. The Debtor's settlement with Universal will be the subject of a written settlement agreement (the "Universal Settlement Agreement") that will be part of a separately filed settlement motion with the Court. The Debtor intends to have the Universal Settlement Agreement approved as soon as possible, and anticipates that a hearing to approve the Universal Settlement Agreement will be held in advance of the Plan confirmation hearing. In the event of any inconsistency between the terms of this Plan and the terms of the Universal Settlement Agreement which is approved by the Court, the terms of the Universal Settlement Agreement shall govern and control, and, if there is an inconsistency, nothing in this Plan shall modify or be deemed to modify the provisions of the Universal Settlement Agreement. The class 4 claims of Universal are impaired under this Plan and are therefore entitled to vote on this Plan. The Debtor believes that the treatment of the class 4 claims of Universal is less favorable than the treatment being afforded to holders of Non-Label Class 4 Allowed Claims. By receiving $125,000 in full settlement and satisfaction of its class 4 claims, Universal is (i) receiving a payment equal to approximately 11.2% of Universal's allowed claim and (ii) providing third party releases.

12

Warner Settlement.  The Debtor scheduled Warner Music Inc., WEA International Inc., and Warner Music Brasil Ltda. (collectively, "Warner") as having a royalty claim in the amount of $137,500 and a contract claim of $432,909.22 for a total claim of $570,409.22.  Warner has filed a proof of claim asserting a claim in the amount of $619,796.62.  The Debtor and Warner have reached a settlement agreement, which is supported by the Committee, under which Warner will be paid $100,000.00 from the Unsecured Creditors Fund on the Effective Date in full settlement of Warner's general unsecured claims.  There will be mutual releases, discovery waivers, and related provisions.  The Debtor's settlement with Warner will be the subject of a written settlement agreement (the "Warner Settlement Agreement") that will be part of a separately filed settlement motion with the Court.  The Debtor intends to have the Warner Settlement Agreement approved as soon as possible, and anticipates that a hearing to approve the Warner Settlement Agreement will be held in advance of the Plan confirmation hearing.  In the event of any inconsistency between the terms of this Plan and the terms of the Warner Settlement Agreement which is approved by the Court, the terms of the Warner Settlement Agreement shall govern and control, and, if there is an inconsistency, nothing in this Plan shall modify or be deemed to modify the provisions of the Warner Settlement Agreement.  The class 4 claims of Warner are impaired under this Plan and are therefore entitled to vote on this Plan. The Debtor believes that the treatment of the class 4 claims of Warner is less favorable than the treatment being afforded to holders of Non-Label Class 4 Allowed Claims.  By receiving $100,000 in full settlement and satisfaction of its class 4 claims, Warner is (i) receiving a payment equal to approximately 16.1% of its asserted general unsecured claims and (ii) providing third party releases.

The Claims of the Sony Parties.  The Debtor scheduled Sony Music as having a royalty claim in the amount of $147,403.76 and a contract claim of $2,599,232.82 for a total claim of

Case: 15-31430   Doc# 398   Filed: 08/18/16   Entered: 08/18/16 15:46:51   Page 14 of 27

$2,746,636.58. The Debtor scheduled Orchard as having a claim of $493,945.89. Sony filed a proof of claim asserting a general unsecured claim in the amount of $12,419,314.00, and Orchard filed a proof of claim asserting a general unsecured claim in the amount of $4,583,096.96, for a total combined general unsecured claim of $17,002,410. As explained above, subject to execution of a settlement agreement, Pulser and the Sony Parties have reached an agreement under which Pulser will purchase all of the Sony Parties Claims on the Effective Date. There will also be mutual releases, discovery waivers, and related provisions in the settlement agreement. In the event of any inconsistency between the terms of this Plan, the Disclosure Statement and the terms of the settlement agreement with the Sony Parties, the terms of the settlement agreement shall govern and control, and, if there is an inconsistency, nothing in this Plan or the Disclosure Statement shall modify or be deemed to modify the provisions of the settlement agreement. Pulser agrees not to be paid any money from the Unsecured Creditors Fund on account of the Sony Parties Claims that Pulser will have purchased.

Assuming the Committee Professional Fees total $500,000, and after payment of the various settlement amounts to Universal and Warner, a balance of $5,000,000 will remain in the Unsecured Creditors Fund for distribution to all holders of Non-Label Class 4 Allowed Claims. As reflected in the Class 4 Claims Chart, the Debtor currently estimates that there will be a total of approximately $21,346,038-$29,574,381of Non-Label Class 4 Allowed Claims. If the final amount of Non-Label Class 4 Allowed Claims is the mid-point between the amounts scheduled by the Debtor and the amounts asserted by creditors in their filed proofs of claim, the final amount of Non-Label Class 4 Allowed Claims will be $25,460,209. If that occurs, then based upon the assumptions above, the Debtor estimates that the ultimate distribution to holders of Non-Label Class 4 Allowed Claims will be approximately 19.6% of the amounts of their Non-Label Class 4 Allowed Claims. If, on the other hand, the Non-Label Class 4 Claims are allowed

Case: 15-31430   Doc# 398   Filed: 08/18/16   Entered: 08/18/16 15:46:51   Page 15 of 27

as filed in the Court's claims register, then based upon the assumptions above, the Debtor estimates that the ultimate distribution to holders of Non-Label Class 4 Allowed Claims will be approximately 16.9%.

All of the foregoing percentage recoveries are simply estimates by the Debtor based upon the information known to the Debtor today and taking into account the various assumptions set forth above. These are not guaranteed percentage recoveries for holders of Non-Label Class 4 Allowed Claims. A change in any of the foregoing variables or assumptions would alter the final distribution percentage paid to holders of Non-Label Class 4 Allowed Claims.

### Additional Recovery from Causes of Action

In addition to the recoveries described above, each holder of a non-label class 4 allowed claim will receive its pro rata distribution of any net recovery by the estate from the pursuit of any causes of action other than avoidance causes of action. The Debtor is not currently aware of the existence of any such causes of action.

The distribution to holders of Non-Label Class 4 Allowed Claims will be made within the later of (i) thirty days following the Effective Date; and (ii) thirty days after the final disputed class 4 claim is resolved by final order (or as soon as reasonably practicable thereafter). The Creditors Trustee reserves the right to seek an order of the Court, after notice and a hearing, authorizing the Creditors Trustee to make one or more interim distributions to holders of Non-Label Class 4 Allowed Claims. As part of any such request by the Creditors Trustee to make such an interim distribution, the Creditors Trustee will seek an order of the Court, after notice and a hearing, providing for the Creditors Trustee to maintain a sufficient reserve to enable the Creditors Trustee to make a pro rata payment to holders of then disputed

15

class 4 claims in the event such disputed class 4 claims become Non-Label Class 4 Allowed Claims.

### 4.  Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.  The following identifies this Plan's treatment of the class of interest holders:

Class 5 - Class 5 is comprised of all equity interests in the Debtor.  While class 5 interests are impaired under this Plan, holders of class 5 interests are not entitled to vote on this Plan as they are deemed not to have accepted this Plan under 11 U.S.C. §1126(g).  Class 5 interest holders will not receive any of the Estate Funds or any other distribution from this estate on account of their class 5 equity interests.

## III. MEANS OF EFFECTUATING THIS PLAN AND IMPLMENTATION OF THIS PLAN

A detailed description of the means of effectuating this Plan and the implementation of this Plan is set forth in Section VI(D) of the Disclosure Statement and is hereby incorporated into this Plan.  This includes the sections entitled (1) Funding for the Plan; (2) Post-Effective Date Management of the Reorganized Debtor and Employment of Professionals By the Reorganized Debtor; (3) Disbursing Agent; (4) Dissolution of the Committee; (5) Objections to Claims; (6) Avoidance Actions and Recoveries; (7) Non-Avoidance Actions and Recoveries; (14) Exemption from Transfer Taxes; (15) Establishment of the Reserve; (16) Formation of the Creditors Trust and Appointment of the Creditors Trustee; (17) Employment of Professionals By the Creditors Trustee and Payment of Professional Fees and Expenses By the Creditors Trustee Incurred After the Effective Date; (18) Distributions to Be Made Pursuant to the Plan; (20) Injunctions; (21) Executory Contracts and Unexpired Leases; (22) Changes in Rates

16

Subject to Regulatory Commission Approval; (23) Retention of Jurisdiction; and (24) Indemnity Claims Stipulation.

## IV. RELEASES

### Release of Pulser, Pulser Affiliates, Iconical II and Iconical Affiliates

**(a)** *Release by Debtor of Lender Released Parties and Debtor Affiliates*

In consideration of the Prepetition Secured Creditors agreement to permit the use of cash collateral and to permit the Debtor to use the Estate Funds to make all of the payments to creditors required to be made under this Plan and to fund the other Plan obligations, on the Effective Date, the Debtor on behalf of itself and all of the "Debtor Releasing Parties" (as defined in Exhibit "7" to the Disclosure Statement) releases, discharges, and acquits the Prepetition Secured Creditors and each of the "Lender Released Parties" and each of the Debtor Affiliates (as defined in Exhibit "7" to the Disclosure Statement) from any and all "Released Claims" (as defined in Exhibit "7" to the Disclosure Statement) that any such releasing party ever had or claimed to have, or has or claims to have presently or at any future date, against any of the Lender Released Parties or the Debtor Affiliates arising from or related in any way whatsoever to the Debtor.

**(b)** *Incorporation of Final DIP Order*

The admissions, stipulations, and agreements of, and release by, the Debtor set forth in the Final DIP Order[6] are incorporated herein by reference and shall be irrevocable and binding on the Debtor and all parties in interest in the Debtor's chapter 11 case and shall not be subject

---

[6] As used herein, "Final DIP Order" means the Final Order: (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. § 105, 362, 363, and 364; (II) Granting Liens and Superpriority Claims to Postpetition Lender Pursuant to 11 U.S.C. § 364 and 507; (III) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; and (IV) Providing Adequate Protection to Prepetition Security Parties Pursuant to 11

17

to further "Challenge" (as defined in the Final DIP Order) by the Committee or any other party in interest. For the avoidance of doubt, the Retained Claims do not include any claim of any party in interest that has been released pursuant to the Final DIP Order or the right to prosecute any "Challenge" (as defined in the Final DIP Order).

**Release by the Debtor Releasing Parties of Universal, Warner and the Sony Parties**

On the Effective Date, the Debtor, on behalf of itself and all of the Debtor Releasing Parties (as defined in Exhibit "7" to the Disclosure Statement) hereby releases, discharges and acquits Universal, Warner and the Sony Parties and each of their respective present and former predecessors, successors, assigns, affiliates, members, partners, managers, current and former equity holders, officers, agents, employees, attorneys, affiliates, directors, direct and indirect parents, direct and indirect subsidiaries and sister companies (the "Label Released Parties") from the Released Claims (as defined in Exhibit "7" to the Disclosure Statement). With respect to the Label Released Parties, the Released Claims include, without limitation, any and all claims arising (i) under any antitrust or competition laws or rules, (ii) under any consumer protection or business trade laws, (iii) out of or relating in any way to "Most Favored Nations" clauses or provisions or practices with similar effect found in any agreement involving or with any of the Label Released Parties, or (iv) relating in any way to the contractual relationship between the Label Released Parties and the Debtor Releasing Parties. In addition:

(i) The Debtor Releasing Parties shall not sue any of the Label Released Parties with respect to any Released Claim or to assist any third party in commencing or maintaining any Proceeding ("Proceeding" shall include any lawsuit, litigation, claim, investigation, or any other action or activity in which or as a result of which legal or equitable remedies, sanctions, damages or penalties could be sought or imposed)

18

against any of the Label Released Parties related in any way to any claim released by the Debtor Releasing Parties herein;

(ii) The Debtor Releasing Parties will not (a) disparage or denigrate in any way the Label Released Parties; (b) seek any discovery from the Label Released Parties, or (c) assist any third party in commencing or maintaining any Proceeding against the Label Released Parties (for the avoidance of doubt, this provision prohibits the Debtor Releasing Parties from making any allegations concerning the Label Released Parties in any Proceeding); and

(iii) The Debtor Releasing Parties will not file any motion(s) pursuant to Bankruptcy Rule 2004, or any similar discovery enabling rule or procedure, seeking any documents or information from any of the Label Released Parties or an examination of any of the Label Released Parties, nor will they join or participate in any such motion(s), and the Debtor shall withdraw any such pending Bankruptcy Rule 2004 motions.

**Applicability of Releases of Unknown Claims**

On the Effective Date, all rights of the Debtor Releasing Parties to challenge any of the releases being provided herein, whether pursuant to Section 1542 of the California Civil Code or otherwise, shall be deemed permanently waived, regardless of whether the Debtor, this estate, the Debtor Releasing Parties, or any other party in interest, discovers or obtains any information in the future pertaining to matters being released herein which they did not know or have as of the Effective Date or any date prior thereto. The releases being provided herein are expressly intended to cover and include a release of any claims, demands or causes of action which arise out of, relate to, are connected with, or are incidental to any such information which may be discovered or obtained in the future. The Debtor Releasing Parties therefore expressly

Case: 15-31430    Doc# 398    Filed: 08/18/16    Entered: 08/18/16 15:46:51    Page 20 of 27

waive the provisions of Section 1542 of the Civil Code of the State of California which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

**Exclusions from Releases**

Notwithstanding anything to the contrary in this Plan, nothing herein shall be deemed as releasing the Debtor or the Debtor's estate, any Lender Released Parties, Pandora or any Debtor Affiliates from any claims of Universal arising from the breach by any of such persons of the Sale Order, the Transitional Services Agreement dated December 23, 2015 entered into between the Debtor and Pandora (the "Transitional Services Agreement), any obligations to Universal under the Sale Order or the Transitional Services Agreement, or any administrative claim of Universal.

**Continuing Confidentiality Obligations/Non Disparagement**

The confidentiality obligations of the Debtor and the Debtor's estate to Universal and to the Sony Parties as set forth in the agreements between Universal or the Sony Parties and the Debtor or with any of the Debtor Affiliates survive the Effective Date and remain in full force and effect. The Creditors Trust shall return to Universal and to the Sony Parties (as applicable) all originals and copies of the Universal and Sony Parties agreements, and any other reports, information or other documents related to Universal or the Sony Parties, or destroy them at the option of the Creditors Trustee, within five days after the Effective Date or as otherwise provided in any settlement agreement with Universal or with the Sony Parties.The Debtor and any of the Debtor Releasing Parties with knowledge of the terms of the settlement agreement

among the Sony Parties, Pulser and other parties (the "Sony Settlement Agreement") shall maintain the confidentiality of the Sony Settlement Agreement and shall not disclose the terms of the Sony Settlement Agreement to any third party except (i) as required by law; or (ii) as required by any Court or other governmental agency with authority to require such disclosure or otherwise compelled by judicial process, including subpoena (provided that written notice of any such perceived requirement of law under clause (i) or demand, subpoena or order under clause (ii) is promptly provided to the Sony Parties sufficiently prior to disclosure of any information to allow the Sony Parties a reasonable opportunity to seek relief from the requirement, demand, subpoena or order or to obtain an appropriate protective order). The Debtor Releasing Parties shall not make, or induce or cause another person or entity to make (including by the exercise or control of such other person or entity by contract or otherwise), any communication of any form to anyone that denigrates, disparages, criticizes, defames or is derogatory of any Sony Released Party with respect to the Debtor. To the extent the foregoing paragraph conflicts with the terms of the Sony Settlement Agreement, the Sony Settlement Agreement controls as to the parties thereto.

The Sony Parties shall not make, or induce or cause another person or entity to make (including by the exercise or control of such other person or entity by contract or otherwise), any communication of any form to anyone that denigrates, disparages, criticizes, defames or is derogatory of any of the Debtor Releasing Parties with respect to the Debtor.

**Exculpations and Releases**

To the maximum extent permitted by law, neither the Debtor, the Committee or its members, the Prepetition Secured Creditors, the Reorganized Debtor nor the Creditors Trustee, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or professionals employed or retained by any of them, shall have or incur liability to any person

Case: 15-31430   Doc# 398   Filed: 08/18/16   Entered: 08/18/16 15:46:51   Page 22 of 27

or entity for any act taken or omission made in good faith in connection with or related to this bankruptcy case or the formulation and implementation of this Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of this Plan, or the consummation and implementation of this Plan and the transactions contemplated therein, provided, however, that the foregoing provisions shall have no effect on the liability of any person or entity that would otherwise result from the failure to perform any obligation under this Plan or that would otherwise result from any act or omission to the extent that such act or omission is determined by a final order of the Court to have constituted negligence, gross negligence or willful misconduct (including fraud).

## V. <u>EFFECT OF CONFIRMATION OF THIS PLAN</u>

**A.      Discharge**

The Debtor will not receive a discharge under this Plan because the requirements of Section 1141 of the Bankruptcy Code necessary for the Debtor to receive a discharge are not present.

**B.      Modification of this Plan**

The Debtor reserves the right to modify this Plan at any time before confirmation and seek confirmation of such modified Plan consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. The Debtor may also seek to modify this Plan at any time after confirmation of this Plan but before the Effective Date so long as (1) this Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing. The Reorganized Debtor may seek to modify this Plan after the Effective Date. Notwithstanding the foregoing, any modification of this Plan, whether before or after confirmation, shall require the prior consent of the Prepetition Secured Creditors,

Case: 15-31430    Doc# 398    Filed: 08/18/16    Entered: 08/18/16 15:46:51    Page 23 of 27

and any modification of the Plan that adversely affects the Sony Parties shall require the consent of the Sony Parties.

**C.     Post-Confirmation Status Reports**

Until a final decree closing the Debtor's chapter 11 case is entered, the Reorganized Debtor and/or the Creditors Trustee shall file quarterly status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan, and the Reorganized Debtor shall pay the post-confirmation quarterly fees to the UST out of the Reserve.

**D.     Post-Confirmation Conversion/Dismissal**

A creditor or any other party in interest may bring a motion to convert or dismiss this case under Section 1112(b) of the Bankruptcy Code after this Plan is confirmed if there is a default in performing this Plan, with the Reorganized Debtor and the Creditors Trustee reserving all rights to oppose any such motion.  If the Court orders this case converted to chapter 7 after this Plan is confirmed, then all property that had been property of this chapter 11 estate, and that has not been disbursed pursuant to this Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.  The Plan Confirmation Order may also be revoked under very limited circumstances.  The Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the date of entry of the Plan Confirmation Order.

**E.     Final Decree**

Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close this chapter 11 case.  The Reorganized Debtor shall be responsible for the timely payment of all

Case: 15-31430    Doc# 398    Filed: 08/18/16    Entered: 08/18/16 15:46:51    Page 24 of 27

fees incurred pursuant to 28 U.S.C. Section 1930(a)(6) and shall pay all such fees out of the

Reserve.

Dated: August 18, 2016

Presented By:

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.


By:    /s/ Ron Bender
       RON BENDER
       PHILIP A. GASTEIER
       KRIKOR J. MESHEFEJIAN
       Attorneys for Chapter 11
       Debtor and Plan Proponent

RDIO, INC.


By:    /s/ Elliott Peters
       ELLIOTT PETERS
Its: Senior Vice President and General Counsel


RDIO, INC.


By:    /s/ Anthony Bay
       ANTHONY BAY
Its: President and Chief Executive Officer

24

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document **DEBTOR'S PLAN OF REORGANIZATION DATED AUGUST 18, 2016** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 18, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ron Bender    rb@lnbyb.com
- Kathryn M.S. Catherwood    kcatherwood@foley.com, vgoldsmith@foley.com
- Andrea Cheuk    acheuk@teslamotors.com, scastro@teslamotors.com
- Shawn M. Christianson    schristianson@buchalter.com
- David N. Crapo    dcrapo@gibbonslaw.com
- John D. Fiero    jfiero@pszjlaw.com, ocarpio@pszjlaw.com
- Stephen D. Finestone    sfinestone@pobox.com
- Donald W. Fitzgerald    dfitzgerald@ffwplaw.com, shoang@ffwplaw.com
- Philip A. Gasteier    pag@lnbrb.com
- Julie M. Glosson    julie.m.glosson@usdoj.gov
- Debra I. Grassgreen    dgrassgreen@pszjlaw.com, hphan@pszjlaw.com
- Irvin M. Gross    img@lnbyb.com
- Stephan Hornung    hornung@lsellp.com
- Lynette C. Kelly    lynette.c.kelly@usdoj.gov, ustpregion17.oa.ecf@usdoj.gov
- Monica Y. Kim    myk@lnbyb.com
- Andy S. Kong    kong.andy@arentfox.com
- Paul J. Laurin    plaurin@btlaw.com, slmoore@btlaw.com
- Annie Li    annie.li@skadden.com, Brigitte.Travaglini@skadden.com
- John William Lucas    jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- Thor D. McLaughlin    tmclaughlin@allenmatkins.com
- Krikor J. Meshefejian    kjm@lnbyb.com
- Office of the U.S. Trustee / SF    USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com
- Paul J. Pascuzzi    ppascuzzi@ffwplaw.com, JNiemann@ffwplaw.com
- Valerie Bantner Peo    vbantnerpeo@buchalter.com
- J. Alexandra Rhim    arhim@hrhlaw.com
- Richard A. Rogan    rrogan@jmbm.com, jb8@jmbm.com
- Jason Rosell    jrosell@pszjlaw.com, sshoemaker@pszjlaw.com
- Jane K. Springwater    jspringwater@friedmanspring.com
- Michael St. James    ecf@stjames-law.com
- Sabrina L. Streusand    streusand@slollp.com, prentice@slollp.com
- Bennett G. Young    byoung@jmbm.com, jb8@jmbm.com

**2.  SERVED BY UNITED STATES MAIL**: On **August 18, 2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                 **F 9013-3.1 PROOF.SERVICE**

☐ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 18, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

***Served by Overnight Mail***
The Hon. Dennis Montali
U.S Bankruptcy Court
450 Golden Gate Avenue, 16th Floor
Courtroom 17
San Francisco, CA 94102

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 18, 2016 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1 PROOF SERVICE**

Case: 15-31430   Doc# 398   Filed: 08/18/16   Entered: 08/18/16 15:46:51   Page 27 of 27